## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| WESTWIND MANOR RESORT ASSOCIATION, INC., *et al.*,[1] | Case No. 19-50026 (DRJ) |
| Debtors. | Joint Administration Requested |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) MODIFYING THE AUTOMATIC STAY; (IV) AUTHORIZING THE DEBTORS TO ENTER INTO AGREEMENTS WITH WARRIOR GOLF LOAN INVESTORS, LLC; (V) SCHEDULING A FINAL HEARING AND (VI) GRANTING RELATED RELIEF

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MOTION ON MARCH 6, 2019 AT 12:30 P.M. IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Westwind Manor Resort Association, Inc. (7533); Warrior ATV Golf, LLC (3420); Warrior Acquisitions, LLC (9919); Warrior Golf Development, LLC (5741); Warrior Golf Management, LLC (7882); Warrior Golf Assets LLC (1639); Warrior Golf Venture, LLC (7752); Warrior Premium Properties, LLC (0220); Warrior Golf, LLC (4207); and Warrior Custom Golf, Inc. (2941).  The address of the Debtors' corporate headquarters is 15 Mason, Suite A, Irvine, California 92618.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") move (the "Motion") (a) for entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "DIP Orders") (i) authorizing the Debtors to obtain post-petition secured financing (the "DIP Financing"); (ii) granting security interests and superiority administrative expense status; (iii) modifying the automatic stay; (iv) authorizing the Debtors to enter into agreements with Warrior Golf Loan Investors, LLC (the "DIP Lender"); (vi) scheduling a final hearing and (vii) granting related relief.  In support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code, 11 U.S.C. § § 101-1532 (the "Bankruptcy Code"), Bankruptcy Rules 2002 and 4001, and rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

**A**     **General Background**

3.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

4.      A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' Chapter 11 proceedings are set forth in the *Declaration of Jeremy Rosenthal in Support of Debtors' Chapter 11 Petitions and First Day Relief.*  Those facts are incorporated herein by reference.

**B**     **Summary of the Debtors' Capital Structure[2]**

Warrior Custom Golf

5.      Warrior Custom Golf, Inc. ("Warrior Custom Golf") does not have any funded secured debt obligations.  Warrior Custom Golf utilizes a broad range of vendors to provide materials to manufacture golf clubs and otherwise operate its manufacturing business.  Based on results of initial lien searches, Warrior Custom Golf may have financed certain equipment that is secured by a lien on that equipment.  As of the Petition Date, the Warrior Custom Golf's aggregate accounts payable to vendors is approximately $630,000.

6.      Warrior Custom Golf is a guarantor of the $40 million of Pro Rata Promissory Notes.  It appears that based on its status as a guarantor of the Pro Rata Promissory Notes a

---

[2] The Debtors do not concede that any liens (contractual, common law, statutory or otherwise) described in this Declaration are valid, and the Debtors expressly reserve the right to contest the extent, validity, perfection, or possible avoidance of all alleged liens.

59217/0001-16985576v9

default judgment in the amount of $1.3 million in favor of Cecil Mellinger was entered in Florida against Warrior Custom Golf on December 19, 2018 (the "Default Judgment").  Additionally, Warrior Custom Golf is an obligor on three (3) Lump Sum Payment Promissory Notes in favor of Anthony Ivankovich in the aggregate principal amount of $2 million.

Golf Course Management Business

7.      The majority of the Debtors' golf courses are unencumbered.[3]  Six (6) of the golf courses, however, are encumbered with liens and/or an assignment of rents as follows:

| Property/ Debtors | Lender | Principal | Security/Collateral | Balance |
|---|---|---|---|---|
| Broadmoor Golf Links<br><br>(Warrior Golf Management, LLC) | Broadmoor Group, Inc., Albert Ronald Smoak and Zoe Anne Smoak | $2,000,000 | i)    Deed of Trust | $1,300,000 |
| Cimarron Golf Resort<br><br>(Warrior Golf Equities, LLC and Warrior Golf LLC, as borrowers, Warrior Acquisitions, LLC, as guarantor) | Citizen Business Bank | $2,000,000 | i)    Deed of Trust, Assignment of Rents and Hazardous Substances Certificate and Indemnity Agreement;<br><br>ii)    All personal property including but not limited to all equipment, fixtures and other articles of personal property owned by Debtor or attached/affixed to the property located at 67603 30th Ave., Cathedral City, CA 92334; all records of any kind relating to any of the foregoing." as to Warrior Golf, LLC. | $2,000,000 |
| Lakota Canyon Ranch Golf Club<br><br>(Warrior Golf Assets, LLC, Warrior | ANB Bank | $1,500,000 | i)    Deed of Trust, concerning vacant land, New Castle, Co. 81647<br><br>ii)    Deed of Trust, concerning 1000 Clubhouse Dr., New Castle, CO | $1,500,000 |

_____

[3] As set forth below, certain golf courses have various encumbrances, including, but not limited to, deeds of trust, mortgages, and assignments of rents.  The Debtors have reviewed various UCC statements, financing and security documents related to those encumbrances.  Based on preliminary review, the Debtors have determined that the operation of their golf course businesses in the ordinary course will not result in their use of any lender's cash collateral.  More specifically, the Debtors have not located any documents, including any deposit control agreements, that would indicate there is a perfected lien on any cash the Debtors will use during the chapter 11 cases.  Accordingly, the Debtors do not believe it is necessary to seek authority to use cash collateral of any prepetition secured party.

| Acquisitions) | | | 81647<br><br>iii)   Collateral Assignment, concerning Colorado River Water Supply Contract No. CW03003, as amended<br><br>iv)   All goods now or in the future affixed or attached to real estate. | |
| --- | --- | --- | --- | --- |
| Huntington Golf Club[4]<br><br>Marion Oaks Golf Club<br><br>(Warrior Acquisitions, LLC) | Marion Oaks Country Club Inc. | $625,000 for each property | i)      Mortgage Deed | $509,906 for each |
| Bos Landen Golf Club | Leighton State Bank | $450,000 | i)  Mortgage on the Bos Landen Golf Course | Approximately $262,2000 as of Petition Date |

8.      The balance of the debt owed in connection with the golf course ownership and management business is unsecured.  As of the Petition Date, the aggregate accounts payable to vendors is approximately $1,390,000.   Additionally, Warrior Golf, LLC is the borrower under the $40 million of Pro Rata Promissory Notes and is also subject to the Default Judgment.

9.      Finally, in 2016 and 2017, Warrior Acquisitions, LLC raised an additional $5.5 million from investors through the issuance of Convertible Promissory Notes (the "Convertible Notes").  The capital raised through the issuance of the Convertible Notes initially was intended to fund efforts to become a publicly traded company.  Those efforts, however, were abandoned in 2017.  As of the Petition Date, $5.5 million remains outstanding on the Convertible Notes.   The Convertible Notes provide that they are convertible into equity of Warrior

---

[4] While the Debtors are unable to locate copies of the Huntington Golf Club loan or lien documents, upon information and belief, the form of such documents are substantially similar to those for Marion Oaks Golf Club.

5

Acquisition LLC or its successor in April 2019.  Warrior Acquisition LLC is evaluating the ramifications of this conversion feature.

**C**      **Negotiations Regarding DIP Financing**

10.      Before the Petition Date, the Debtors conduced a search to identify potential lenders to provide DIP financing to the Debtors.  Force 10 LLC ("Force 10"), the Debtors' financial advisor, reached out to over 10 potential lenders that might be interested in providing DIP financing of between $1.5 million and $5 million.  Force 10 had lengthy calls with five different interested potential DIP lenders to discuss the Debtors' needs, anticipated timing for a chapter 11 filing, the Debtors' business operations and their asset base.  After this search, the Debtors concluded that no other party could provide financing on more favorable terms than those provided by the DIP Lender.

<u>**RELIEF REQUESTED**</u>

11.      The Debtors seek entry of the DIP Orders:

(a)      authorizing the Debtors to obtain senior secured post-petition financing pursuant to that certain Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement attached hereto as **Exhibit A** (the "DIP Credit Agreement")

(b)      granting liens and providing superpriority claims (the "DIP Superpriority Claims") with respect to such postpetition financing;

(c)      modifying the automatic stay imposed by Bankruptcy Code Section 362 to the extent necessary to implement and effectuate the terms and provisions of the DIP Orders;

(d)      scheduling a final hearing (the "Final Hearing") as soon as reasonably practicable and within thirty (30) days of entry of the Interim Order for this Court to consider and enter the Final Order; and

(e)      granting certain related relief.

**CONCISE STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(B)**

12.     As required by Bankruptcy Rule 4001(b), the following is a summary of the material terms of the Proposed Interim and Final Orders

**A      Summary of DIP Financing**

13.     The Debtors require immediate access to liquidity to ensure that they are able to continue operating during these chapter 11 cases and preserve the value of their estates for the benefit of all parties in interest.  As of the Petition Date, the Debtors' total cash available is insufficient to operate their businesses and continue paying their debts as they come due. Without prompt access to postpetition financing, the Debtors will be unable to pay wages for their employees, pay vendors to supply necessary goods and services, preserve and maximize the value of their estates, and administer these chapter 11 cases, causing immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.

14.      The Debtors are not able to obtain post-petition financing on an unsecured basis. After negotiation, the Debtors have reached an agreement with the DIP Lender to provide the DIP Financing.  The Debtors negotiated the DIP Financing at arm's-length and have determined that it is the best proposal under the circumstances.  The principal terms of the DIP Financing are as follows:

| | |
|---|---|
| **Borrowers:** | All Debtors |
| **Lender** | Warrior Golf Loan Investors, LLC, an affiliate of Serene Asset Management, LLC |
| **Amount of DIP Loan** | Up to $2,550,000. |
| **Maturity Date** | Maturity Date means the earliest of: (i) March 4, 2020 (as it may be extended pursuant to the terms of the DIP Credit Agreement; (ii) the effective date of a plan of reorganization; (iii) if the Final Order |

| | |
|---|---|
| | has not been entered by the Bankruptcy Court, the date that is one day after the Final Hearing (as defined in the Interim Order); (iv) entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissing the Chapter 11 Case; (v) the closing of Sale of substantially all of the assets; and (vi) the acceleration of the outstanding Obligations or termination of the Commitments, including, without limitation, as a result of the occurrence and continuation of an Event of Default. |
| **Interest Rate on DIP** | 11% per annum |
| **Default Interest Rate on DIP** | 18% per annum |
| **Commitment Fee** | 2.00% of the amount of the Facility, which shall be earned and payable upon entry of the Interim Order and which shall be paid to the DIP Lender on the Closing Date from the proceeds of the Facility. |
| **Exit Fee** | 1.00%, as applicable (i) of the principal amount of any Advance that is prepaid pursuant to the terms of the DIP Credit Agreement or (ii) without duplication of any amounts paid pursuant to clause (i), of the amount of the Commitment on the Maturity Date. |
| **Work Fee and Advance** | Work fee of $50,000 to be paid to DIP Lender's counsel for due diligence and legal services rendered.

Lender may, in its sole discretion, advance additional funds to pay attorney's fees of Lender up to $100,000 (exclusive of the Work Fee paid upon entry of the Interim Order), and such advances shall be added to the Obligations as additional outstanding principal. |
| **Method of Funding:** | The Debtors shall have an Initial Advance of $800,000 upon entry of the Interim Order and an additional Initial Advance of $750,000 upon entry of the Final Order.

In the event that (i) the existing liens on the real property and personal property in connection with the Cimarron golf course (such real and personal property, collectively, the "Cimarron Property") are released or the existing secured creditor consents to the Lender obtaining a valid and perfected first priority Lien on the Cimarron Property, or the Borrowers are otherwise able |

8

| | |
|---|---|
| | to grant Lender a valid and perfected first priority Lien on the Cimarron Property and, (ii) Warrior Golf, LLC grants Lender a valid and perfected first priority Lien on the Cimarron Property, whether existing at such time or thereafter acquired, Borrower may request an additional advance in the principal amount of $700,000 (the "Cimarron Advance").<br><br>In the event that (i) the existing liens on the real property and personal property in connection with the Broadmoor golf course (such real and personal property, collectively, the "Broadmoor Property") are released or the existing secured creditor consents to the Lender obtaining a valid and perfected first priority Lien on the Broadmoor Property, or the Borrowers are otherwise able to grant Lender a valid and perfected first priority Lien on the Broadmoor Property and (ii) Warrior Golf, LLC or Warrior Golf Management, LLC grants Lender a valid and perfected first priority Lien on the Broadmoor Property, whether existing at such time or thereafter acquired, Borrower may request an additional advance in the principal amount of $300,000 (the "Broadmoor Advance", and together with the Initial Advances and the Cimarron Advance, the "Advances"). |
| **Use of Proceeds:** | The proceeds of the DIP Financing will be used to (a) fund the post-petition working capital needs of the Debtors during the pendency of the Chapter 11 Cases, (b) pay fees, costs and expenses of the DIP Facility on the terms and conditions described in the DIP Loan Documents, and (c) pay the allowed administrative costs and expenses of the Chapter 11 Cases, in each case, solely in accordance with the DIP Loan Documents, the Interim Order and the Final Order. |
| **Security:** | Subject to the Carve Out:<br><br>(i) pursuant to 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in the Cimarron Property and the Broadmoor Property to the extent the conditions set forth in Section 2.1 of the DIP Credit Agreement are satisfied; and |

9

(ii) pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to the Prepetition Real Estate Liens and the Existing Prepetition Liens; and

The Collateral includes: all prepetition and postpetition real property and all tangible and intangible personal property of each Borrower to the extent such assets were not encumbered by any prepetition valid, perfected, unavoidable and enforceable liens encumbrances, wherever located and whether now owned or hereafter acquired, including but not limited to all accounts, contracts rights, chattel paper, cash, general intangibles, investment property, machinery, equipment, goods, inventory, furniture, fixtures, letter of credit rights, books and records, deposit accounts, documents, instruments, commercial tort claims, and rents, together with all proceeds of each of the foregoing, including insurance proceeds (as each such term above is defined in the UCC, as applicable) but excluding prepetition tort claims and Avoidance Actions.

The Debtors are granting the Lenders a first priority lien on the following golf courses and all personal property that is not subject to a valid prepetition lien.

**Golf Courses:**

 **Asheboro Country Club (Asheboro, NC)**

 **Heddles Hideaway Country Club (Spartanburg, SC)**

 **Reems Creek Golf Club (Weavervill, NC)**

 **Baneberry Golf and Resort (Baneberry, TN)**

 **King's Creek Golf Club (Spring Hill, TN)**

 **Royal St. Augustine Gold and Country Club (St. Augustine, FL)**

| | |
|---|---|
| | **The Golf Club at Rio Vista (Rio Vista, CA)** |
| | **Limestone Springs Golf Club (Oneonta, AL)** |
| | **Whispering Woods Golf Club (Whispering Pines, NC)** |
| | **Ole Still Golf Club (Hickory, NC)** |
| | **Wolf Creek Golf Club (Atlanta, GA)** |
| | In the event that the conditions in Section 2.1(b) of the Credit Agreement are satisfied and pursuant to 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in the Cimarron Property; |
| | and |
| | In the event that the conditions in Section 2.1(c) of the Credit Agreement are satisfied and pursuant to 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in the Broadmoor Property; and |
| | Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected junior liens on and security interests in all Collateral (other than as set forth in the DIP Credit Agreement). |
| **Carve-Out** | The Carve- Out includes: all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. §1930(a) and section 3717 of title 31 of the United States Code; (ii) the reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) until the occurrence of an Event of Default the aggregate amount of unpaid fees and expenses of the Debtors' professionals and the Committee's professionals retained by the Court (the "Case Professionals") (including Force 10 Partners), to the extent such fees and expenses are allowed and payable pursuant to an order of the Court, whether entered prior or subsequent to a Carve-Out Trigger Notice (as defined below), and which order has not been reversed, vacated or stayed ("Allowed Case Professional Fees"), and the |

59217/0001-16985576v9

| | |
|---|---|
| | reimbursement of out-of-pocket expenses allowed by the Court and incurred by the members of the Committee in the performance of their duties (but excluding fees and expenses of third party professionals employed by such members) ("Committee Expenses"), which Carve-Out amounts under this clause shall be payable from the any unused proceeds of draws made under the DIP Facility and the estates' entitlement to disposition proceeds pursuant to Sections 2.3 and 6.4 of the DIP Credit Agreement, all notwithstanding any priority or remedies that otherwise would be available to the DIP Lender upon the occurrence of an Event of Default and/or acceleration of the DIP Obligations under the DIP Loan Documents (collectively, "Carve-Out Sources"), that such Carve-Out Sources exclude the DIP Lender's Cash Collateral, including without limitation, cash from operations, *plus* (y) $75,000 for Allowed Case Professional Fees and Committee Expenses incurred from and after the delivery of the Carve-Out Trigger Notice. |
| **Section 506(c) Waiver** | Subject to entry of a Final Order, without limiting the Carve-Out, the Debtors waive and shall be prohibited from asserting (i) any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender upon the DIP Collateral and no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against the DIP Lender or its claims or liens (including any claims or liens granted pursuant to the Interim Order) |
| **DIP Super-Priority Administrative Expense** | Without limiting the Carve-Out, the DIP Lender will have a super-priority over administrative expense claims for payment of all obligations under the DIP Facility |
| **Priming of Liens** | For the avoidance of doubt, no priming liens or security interests pursuant to Section 364(d)(1) of the Bankruptcy Code in the Cimarron Property and the Broadmoor Property in accordance with to the conditions in Section 2.1 of the DIP Credit Agreement are being granted pursuant to the Interim Order. If, in order to satisfy the conditions of Section 2.1 of the DIP Credit Agreement, the |

| | |
|---|---|
| | Debtors are required to seek a priming lien pursuant to Section 364(d)(1) of the Bankruptcy Code over the objection of any prepetition creditor, the Debtors will supplement the Motion with such necessary evidentiary support for such request at a later date and seek an additional hearing from the Court. |
| **Event of Default** | Any one or more of the following events shall constitute an event of default following giving of any applicable notice and the expiration of the applicable cure period (each, an "Event of Default") under the Agreement:<br><br>(a) Any of the Borrowers shall fail to pay any Obligations to the Lender when due, including, but not limited to, the payment of any fees or costs due to the Lender under this Agreement or any Loan Document;<br><br>(b) Other than as set forth in any other sub-section of this Section 8.1, any Borrower, as applicable, shall fail to perform, or otherwise breach, any of their respective covenants (including the covenants listed in Sections 5, 6, 7, 9 and 10) or obligations contained in this Agreement, which failure or breach shall continue for ten (10) Business Days after the date upon which the relevant Borrower has received a written notice of such failure or breach from the Lender; provided, however, that such ten (10) Business Day period shall be automatically extended for an additional ten (10) Business Day period if Borrowers are diligently pursuing the cure of same;<br><br>(c) Any representation or warranty made by any Borrower in this Agreement or in any agreement, certificate, instrument or financial statement or other statement delivered to the Lender pursuant to or in connection with this Agreement shall prove to have been incorrect in any material respect when made or deemed made, which failure or breach shall continue for ten (10) Business Days after the date upon which the relevant Borrower has received a written notice of such failure or breach from the Lender; provided, however, that such ten (10) Business Day period shall be automatically extended for an additional ten (10) Business Day period if Borrowers are diligently pursuing the cure of same; |

13

(d) Except upon the Lender's prior written request or with the Lender's express prior written consent (and no such consent shall be implied from any other action, inaction, or acquiescence of the Lender), any Borrower shall file a motion with the Bankruptcy Court or any other court with jurisdiction in the matter seeking an order, or an order is otherwise entered, modifying, reversing, revoking, staying, rescinding, vacating, or amending the Final Order or any of the Loan Documents;

(e) Any Borrower shall file or obtain Bankruptcy Court approval of a disclosure statement for a plan of reorganization that fails to indefeasibly and finally pay in full in cash all Obligations on the effective date of said plan;

(f) Any Borrower shall file any motion or application, or the Bankruptcy Court allows the motion or application of any other Person, which seeks approval for or allowance of any claim, lien, security interest ranking equal or senior in priority to the claims, liens and security interests granted to the Lender under the Interim Order or the Final Order, as applicable, with respect to the Collateral or any such equal or prior claim, lien, or security interest shall be established in any manner, except, in any case, as expressly permitted under the Interim Order or the Final Order, as applicable;

(g) The Interim Order or the Final Order, as applicable, shall cease to be in full force and effect from and after the date of entry thereof by the Bankruptcy Court;

(h) The occurrence of any default or event of default under the Interim Order or the Final Order, as applicable;

(i) The entry of an order which provides relief from the automatic stay otherwise imposed pursuant to Section 362 of the Bankruptcy Code, which order permits any creditor, other than the Lender, to realize upon, or to exercise any right or remedy with respect to, the Collateral;

(j) Conversion of the Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code, or dismissal of the Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily

14

| | |
|---|---|
| | and the Obligations are not simultaneously paid in full; |
| | (k) The Interim Order or the Final Order, as applicable, is modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of Lender (and no such consent shall be implied from any other authorization or acquiescence by Lender); |
| | (l) A trustee or an examiner with special powers is appointed pursuant to Section 1104 of the Bankruptcy Code; |
| | (m) A chapter 11 plan is confirmed that does not provide for the payment in full in cash of all Obligations on the effective date thereof, together with releases, exculpations, waivers and indemnifications for the Lender and Lender Related Persons. |
| | (n) The occurrence of a Change of Control. |
| **Liens on Avoidance Actions** | The DIP Lender will not have a lien on Avoidance Actions.  In accordance with section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall constitute allowed senior administrative expense claims against each Debtor and their estates (the "DIP Superpriority Claims") with priority in payment over any and all administrative expenses and shall be subject to and subordinate to only the Carve-Out.  Only upon entry of the Final Order, the DIP Superpriority Claims shall have recourse to and be payable from any and all avoidance power claims or causes of action under sections 544, 545, 547, 548 through 551 and 553(b) of the Bankruptcy Code (the "Avoidance Actions") or the proceeds thereof.  If a lien is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, the DIP Liens shall attach to such property that was encumbered by such lien. |
| **Roll-Up** | Not applicable |
| **Indemnification** | Each Borrower shall pay, indemnify, defend, and hold the Lender Related Persons (each, an "Indemnified Person") harmless (to the fullest |

| | |
|---|---|
| | extent permitted by law) from and against any and all claims, demands, suits, actions, investigations, proceedings, liabilities, fines, costs, penalties, and actual damages, and all reasonable and documented out-of-pocket fees and disbursements of attorneys, experts, or consultants and all other costs and expenses actually incurred in connection therewith or in connection with the enforcement of this indemnification (as and when they are incurred and irrespective of whether suit is brought), at any time asserted against, imposed upon, or incurred by any of them (a) in connection with or as a result of or related to the execution and delivery, enforcement, performance, or administration (including any restructuring or workout with respect hereto) of this Agreement, any of the other Loan Documents, or the transactions contemplated hereby or thereby or the monitoring of the Borrowers' compliance with the terms of the Loan Documents, (b) with respect to any investigation, litigation, or proceeding related to this Agreement, any other Loan Document, or the use of the proceeds of the credit provided hereunder (irrespective of whether any Indemnified Person is a party thereto), or any act, omission, event, or circumstance in any manner related thereto, and (c) in connection with or arising out of any presence or release of Hazardous Materials at, on, under, to or from any Collateral or any Environmental Actions, Environmental Liabilities or Remedial Actions related in any way to any Collateral (each and all of the foregoing, the "Indemnified Liabilities").  Notwithstanding, the Borrowers shall have no obligation to any Indemnified Person under  Section 10.3  of the Credit Agreement with respect to any Indemnified Liability that a court of competent jurisdiction finally determines to have resulted from the gross negligence, bad faith or willful misconduct of such Indemnified Person or its officers, directors, employees, attorneys, or agents. |
| **Milestones** | Not applicable |
| **Release Price** | The may sell any of the assets set forth on Schedule 6.4 of the Credit Agreement as long as the purchase price for the relevant asset is at least the amount set forth on Schedule 6.4.  Any proceeds of disposed Collateral shall be used to satisfy the Obligations consistent with Section 2.3(d) of the Credit Agreement. |

16

**Basis for Relief and Applicable Authority**

15.     Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business, and (c) obtaining credit with specialized priority or with security.  If a debtor in possession cannot obtain postpetition credit on an unsecured basis, pursuant to section 364(c) of the Bankruptcy Code, a court may authorize the obtaining of credit or the incurring of debt, repayment of which is entitled to superpriority administrative expense status or is secured by a senior lien on unencumbered property or a junior lien on encumbered property, or a combination of the foregoing.

16.     Specifically, section 364(c) of the Bankruptcy Code provides, in pertinent part, that the Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

- with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code;

- secured by a lien on property of the estate that is not otherwise subject to a lien; or

- secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).  Thus, pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain adequate unsecured credit, and the proposed borrowing is in the best interests of its estate. *See, e.g., Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985) (Indeed, "more exacting scrutiny [of the debtor's business decisions] would slow the administration of the

17

debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially"); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *see also* 3 Collier on Bankruptcy ¶ 364.03 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

17.     The statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor in possession is "unable to obtain unsecured credit allowable under § 503(b)(l) of [the Bankruptcy Code] as an administrative expense." *See Ames Dep't Stores*, 115 B.R. at 37–39 (a debtor must show it has made a reasonable effort to seek other sources of financing under Bankruptcy Code §§ 364(a) and (b)); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under Bankruptcy Code § 364(c) must prove it was unable to obtain unsecured credit pursuant to Bankruptcy Code § 364(b)).

18.     Courts have articulated a three-part test to determine whether a debtor may obtain financing under section 364(c):

- the debtor is unable to obtain unsecured credit solely under section 364(b) (*i.e.*, by granting a lender administrative expense priority);

- the credit transaction is necessary to preserve the assets of the estate; and

- the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*See, e.g., In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011); *In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test and holding that

59217/0001-16985576v9

"[o]btaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated by credit, but also because the credit acquired is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the debtor to obtain comparable credit elsewhere"); *Ames Dep't Stores*, 115 B.R. at 37-39.

19.     To show financing required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c).  *Bray v. Shenandoah Fed. Savs. & Loan Ass'n* (*In re Snowshoe Co.*), 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also Ames Dep't Stores*, 115 B.R. at 40 (approving financing facility and holding the debtor made reasonable efforts to satisfy the standards of section 364(c) where it approached four lending institutions, was rejected by two, and selected the most favorable of the two offers it received).

20.     The Debtors attempted to secure financing on more favorable terms, but they were unable to do so.  The Debtors have been unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense; (b) credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a lien; or (c) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien, in each case, on more favorable terms and conditions than those

19

provided in the DIP Financing.  The DIP Facility, in the Debtors' judgment, met the Debtors' requirements to obtain a reliable source of funding.  The DIP Financing will be used by the Debtors to fund reasonable and necessary business expenses – expenses that will allow the Debtors to continue business operations and preserve value for creditors.

21.     For these reasons, the Debtors believe that entry into the DIP Credit Agreement is in the best interest of the Debtors' estates, is necessary to preserve the value of estate assets and is an exercise of the Debtors' sound and reasonable business judgment.

### (i)     The Terms of the DIP Financing Are Fair, Reasonable, and Appropriate

22.     The proposed DIP Financing provides generally that the security interests and superpriority administrative expense claims granted to the DIP Lender are subject to the Carve-Out described above.   The DIP Lender requires that the Debtors grant the liens and superpriority claims contemplated by the Final Order and the DIP Credit Agreement.   Those liens and superpriority claims will be subject to the Carve Out, which includes estate professional fees, and amounts payable to the United States Trustee.  Such carve outs generally "preserve the adversary system" by ensuring that the Debtors' estates are adequately assisted by counsel.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (noting that courts generally "insist on a carve out" for professional fees, and that "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").   Additionally, the Carve-Out protects against administrative insolvency during the course of the Chapter 11 Cases by ensuring that some assets remain for the payment of United States Trustee fees and certain professional fees of the Debtors, notwithstanding the grant of superpriority and administrative liens and claims under the DIP Financing.

23.     The Debtors believe the fees and other charges required by the DIP Lender under the DIP Facility are reasonable and appropriate under the circumstances.

59217/0001-16985576v9

24.     The Debtors are unable to obtain alternate credit sources on more favorable terms, the terms of the DIP Facility have been negotiated at arm's-length and are not principally for the benefit of a creditor to the detriment of other parties in interest, and the Debtors' believe, in their sound business judgment, the DIP Facility is in the best interest of all parties involved.  The terms of the DIP Facility are in the realm of the incentives contemplated by section 364 to induce potential lenders to undertake the risks involved in providing postpetition financing to a bankruptcy estate, and should be approved.

### (ii)     Application of the Business Judgment Standard

25.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under the circumstances specified therein. Provided that an agreement to obtain secured credit does not undermine the policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in the exercise of its sound business judgment in obtaining such credit. *See, e.g.*, *In re Ames Dept. Stores, Inc.*, 115 B.R. at 40 ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *Trans World Airlines, Inc. v. Travelers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment").  Thus, the "normal function in reviewing requests for post-petition financing is to defer to a debtor's own business judgment so long as a request for financing does not leverage the bankruptcy process and unfairly cede control of the reorganization to one party in interest." *In re Barbara K Enters., Inc.*, No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008).

21

26.     To determine whether this standard is met, the Court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (noting courts should not second guess a debtor's business decision when the decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code") (internal citation omitted).

27.     Courts recognize that a debtor is entitled (if not required), in exercise of its business judgment, to consider non-economic benefits offered by a proposed postpetition facility:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including noneconomic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization.

*In re ION Media Networks, Inc.*, No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. Jul. 6, 2009).  After evaluating all options, the Debtors concluded the DIP Facility provides the best alternative available in the circumstances of these cases.  Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious.  *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting the interim loan, receivables facility, and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors").  In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's

22

estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

28.      The Debtors' determination to move forward with the DIP Facility is an exercise of their sound business judgment.  Specifically, the Debtors and their advisors undertook an analysis of the Debtors' projected financing needs and determined the Debtors would require significant postpetition financing to support their operational and restructuring activities, with terms that would provide flexibility in the event that the Debtors' experience a delay in their receipt of revenues in the ordinary course.  Accordingly, the Debtors negotiated the DIP Credit Agreement with the DIP Lender in good faith, at arm's-length, and with the assistance of their advisors.  The DIP Facility provides the Debtors with the capital necessary to meet the working capital needed to fund the Debtors' operations.

**B**      **The Automatic Stay Should be Modified on a Limited Basis**

29.      The proposed Interim Order and the DIP Loan Documents contemplate  that section 362(a) of the Bankruptcy Code be modified as necessary to permit the DIP Lender to exercise all rights and remedies provided for in the DIP Loan Documents and take any and all actions provided therein, in each case, without further notice, application to, order of or hearing before this Court.

30.      Stay modification provisions of this sort are ordinary features of postpetition financing arrangements, and, in the Debtors' business judgment, are reasonable under the circumstances. See, *e.g., In re Fieldwood Energy, LLC, et al.*, Case No. 18-30648, Docket No. 201, (Bankr. S.D. Tex. 2018) (DRJ); *In re Offshore Specialty Fabricators, LLC*, Case No. 17-35623, Docket No. 317 (Bankr. S.D. Tex. 2017) (MI); *In re Emas Chiyoda Subsea Limited, et*

*al.*, Case No. 17-31146, Docket No. 453, (Bankr. S.D. Tex. 2017) (MI); In re Linc USA GP, et

al., Case No. 16-32689, Docket No. 196 (Bankr. S.D. Tex. 2018) (DRJ).

**C      The DIP Lender Should Be Deemed a Good Faith Lender Under Section 364(e)**

31.      Section 364(e) of the Bankruptcy Code protects a good faith lender's right to

collect on loans extended to a debtor, and its rights in any lien or security interest securing those

loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed

or modified on appeal. Section 364(e) provides as follows:

> The reversal or modification on appeal of an authorization under
> this Section [364 of the Bankruptcy Code] to obtain credit or incur
> debt, or of a grant under this Section of a priority or a lien, does
> not affect the validity of any debt so incurred, or any priority or
> lien so granted, to an entity that extended such credit in good faith,
> whether or not such entity knew of the pendency of the appeal,
> unless such authorization and the incurring of such debt, or the
> granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

32.      As explained in detail herein, the DIP Facility is the result of the Debtors'

reasonable and informed determination that the DIP Lender offered the most favorable terms on

which to obtain needed postpetition financing, and of extended arm's-length, good faith

negotiations between and among the Debtors and the DIP Lender.  The terms and conditions of

the DIP Facility are fair and reasonable, and the proceeds of the DIP Facility will be used only

for purposes that are permissible under the Bankruptcy Code.  Further, no consideration is being

provided to any party to the DIP Facility other than as described herein.  Accordingly, the Court

should find the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the

Bankruptcy Code, and are entitled to all of the protections afforded thereby.

59217/0001-16985576v9

## Emergency Consideration

33.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.   Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases could severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## The Requirements of Bankruptcy Rule 6003 are Satisfied

34.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 25 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, granting the relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 25 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have

59217/0001-16985576v9

satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

35.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

36.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

37.     The Debtors will provide notice of this Motion to the following parties or their respective counsel (collectively, the "Notice   Parties"): (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 40 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel for the lender under the proposed

59217/0001-16985576v9

debtor-in-possession financing facility, Attn: Beth Brownstein, Arent Fox LLP, 1301 Avenue of the Americas, 42nd Fl., New York, NY 10019-6040 Beth.brownstein@arentfox.com; (d)  the lender under the proposed debtor-in-possession financing facility, Attn: Adam Phillips, Warrior Golf Loan Investors, LLC, 1121 40th Street Apt. 1401; Emeryville, CA 94608; (f) any statutory committee appointed in these cases; (f) all known secured creditors; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the offices of the attorneys general for the states in which the Debtors operate;  (j) the Securities and Exchange Commission; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

38.      No prior request for the relief sought in this motion has been made to this or any other court.


WHEREFORE, The Debtors respectfully request that the Court (a) enter an Interim Order granting the relief requested in this Motion on an interim basis, (b) schedule a final hearing on this Motion within 30 (thirty) days of the Petition Date, or as soon as is otherwise practicable thereafter, to consider entry of the Final Order, and (c) grant such other and further relief as may be just and proper.

59217/0001-16985576v9

Dated:  March 5, 2019

Respectfully submitted,

By:  */s/ Michael D. Warner*

Michael D. Warner (TX Bar No. 00792304)
Cole Schotz P.C.
301 Commerce Street, Suite 1700
Ft. Worth, TX 76102
(817) 810-5250
(817) 810-5255 (fax)
mwarner@coleschotz.com

*Proposed Counsel for the Debtors*

59217/0001-16985576v9

# EXHIBIT A

**$2,550,000**

**SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION
LOAN AND SECURITY AGREEMENT**

**by and among**

**the Borrowers party hereto**

**and**

**Warrior Golf Loan Investors, LLC
as Lender**

**Dated as of March 6, 2019**

## TABLE OF CONTENTS

1.      DEFINITIONS AND CONSTRUCTION ................................................................................... 1

    1.1     Definitions .................................................................................................................... 1

    1.2     Accounting Terms ....................................................................................................... 11

    1.3     UCC ........................................................................................................................... 11

    1.4     Construction .............................................................................................................. 11

    1.5     Schedules and Exhibits ............................................................................................. 12

2.      LOAN AND TERMS OF PAYMENT ................................................................................ 12

    2.1     Agreement to Lend; Delayed Draw; Security Documents and Loan Documents .......... 12

    2.2     Borrowing Procedures ............................................................................................... 13

    2.3     Payments; Reductions of Commitments; Prepayments .............................................. 13

    2.4     Interest Rates and Rates, Payments and Calculations ................................................ 16

    2.5     Crediting Payments; Clearance Charge ..................................................................... 17

    2.6     Designated Account ................................................................................................... 18

    2.7     Maintenance of Loan Account; Statements of Obligations ......................................... 18

    2.8     Fees .......................................................................................................................... 18

3.      CONDITIONS; TERM OF AGREEMENT ...................................................................... 18

    3.1     Conditions Precedent to Advances of Facility Amount .............................................. 18

    3.2     Conditions Precedent to all Extensions of Credit ...................................................... 19

    3.3     Maturity .................................................................................................................... 20

    3.4     Effect of Maturity ..................................................................................................... 20

4.      REPRESENTATIONS AND WARRANTIES .................................................................... 21

    4.1     Due Organization and Qualification .......................................................................... 21

    4.2     Due Authorization ..................................................................................................... 21

    4.3     Binding Obligations .................................................................................................. 21

    4.4     Existing Prepetition Liens ......................................................................................... 21

    4.5     Jurisdiction of Formation; Location of Chief Executive Office; Organizational; Identification Number ............................................................................................... 21

    4.6     Litigation .................................................................................................................. 22

    4.7     Fraudulent Transfer .................................................................................................. 22

    4.8     Indebtedness ............................................................................................................. 22

5.      AFFIRMATIVE COVENANTS ........................................................................................ 22

    5.1     Financial Statements ................................................................................................. 22

    5.2     Reports, Certificates .................................................................................................. 23

i

|  | 5.3 | Existence | 24 |
|--|-----|-----------|-----|
|  | 5.4 | Maintenance of Properties; Permits | 24 |
|  | 5.5 | Taxes | 24 |
|  | 5.6 | Insurance | 24 |
|  | 5.7 | Inspection | 25 |
|  | 5.8 | Environmental | 25 |
|  | 5.9 | Compliance with Laws | 26 |
|  | 5.10 | Disclosure Updates | 26 |
|  | 5.11 | Formation of Subsidiaries | 26 |
|  | 5.12 | Further Assurances | 26 |
|  | 5.13 | Staffing | 26 |
| 6. | | NEGATIVE COVENANTS | 26 |
|  | 6.1 | Indebtedness | 27 |
|  | 6.2 | Liens | 27 |
|  | 6.3 | Restrictions on Fundamental Changes | 27 |
|  | 6.4 | Disposal of Assets | 27 |
|  | 6.5 | Change Name | 27 |
|  | 6.6 | Nature of Business | 27 |
|  | 6.7 | Prepayments and Amendments | 27 |
|  | 6.8 | Change of Control | 28 |
|  | 6.9 | Accounting Methods | 28 |
|  | 6.10 | Transactions with Affiliates | 28 |
|  | 6.11 | Use of Advances | 28 |
|  | 6.12 | Limitation on Capital Expenditures | 28 |
|  | 6.13 | Chapter 11 Case | 28 |
|  | 6.14 | Plan | 28 |
| 7. | | INTENTIONALLY OMITTED | 28 |
| 8. | | EVENTS OF DEFAULT | 28 |
|  | 8.1 | Event of Default | 28 |
|  | 8.2 | Rights and Remedies | 30 |
|  | 8.3 | Application of Proceeds upon Event of Default | 31 |
|  | 8.4 | Remedies Cumulative | 31 |
| 9. | | PRIORITY AND COLLATERAL SECURITY | 32 |
|  | 9.1 | Superpriority Claims; Subordination in favor of Lender Liens | 32 |
|  | 9.2 | Grant of Security Interest in the Collateral | 32 |

| | | | |
|---|---|---|---|
| | 9.3 | Representations and Warranties in Connection with Security Interest | 33 |
| | 9.4 | Covenants with Respect to Collateral | 33 |
| | 9.5 | Lender's Ability to Perform Obligations on Behalf of Borrowers with Respect to the Collateral | 34 |
| | 9.6 | Filing of Financing Statements | 34 |
| | 9.7 | No Discharge; Survival of Claims | 34 |
| 10. | | WAIVERS; INDEMNIFICATION | 35 |
| | 10.1 | Demand; Protest; etc | 35 |
| | 10.2 | Lender's Liability for Collateral | 35 |
| | 10.3 | Indemnification | 35 |
| 11. | | NOTICES | 36 |
| 12. | | CHOICE OF LAW AND VENUE; JURY TRIAL WAIVER | 37 |
| 13. | | AMENDMENTS; WAIVERS; SUCCESSORS; INDEMNIFICATION | 38 |
| | 13.1 | Amendments and Waivers | 38 |
| | 13.2 | No Waivers; Cumulative Remedies | 38 |
| | 13.3 | Successors | 38 |
| 14. | | GENERAL PROVISIONS | 38 |
| | 14.1 | Effectiveness | 38 |
| | 14.2 | Section Headings | 38 |
| | 14.3 | Interpretation | 38 |
| | 14.4 | Severability of Provisions | 39 |
| | 14.5 | Debtor-Creditor Relationship | 39 |
| | 14.6 | Counterparts; Electronic Execution | 39 |
| | 14.7 | Revival and Reinstatement of Obligations | 39 |
| | 14.8 | Lender Expenses | 39 |
| | 14.9 | Integration | 39 |
| 15. | | JOINT AND SEVERAL LIABILITY | 39 |
| | 15.1 | Inducement | 40 |
| | 15.2 | Combined Liability | 40 |
| | 15.3 | Separate Exercise of Remedies | 40 |

Exhibits

Exhibit A – Compliance Certificate

Exhibit B – Request for Advance

<u>Schedules</u>

Schedule A-1 – Loan Account

Schedule A-2 – Authorized Persons

Schedule D-1 – Designated Account and Designated Account Bank

Schedule 4.1(b) – Ownership of Borrowers and Golf Courses Subject to Security Interest

Schedule 4.4 – Existing Prepetition Liens

Schedule 4.5 – Legal Names, Jurisdictions, Chief Executive Offices

Schedule 4.6 – Litigation

Schedule 4.8 – Existing Indebtedness

Schedule 4.9 – Taxes

Schedule 5.4 – Maintenance of Properties; Permits

Schedule 6.4 – Release Prices

Schedule 9.4(e) – Collateral Locations

### SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT

**THIS SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT** (this "Agreement"), is entered into as of March 6, 2019 (the "Effective Date"), by and among the borrowers set forth on the signature pages hereto (each, a "Borrower" and collectively, the "Borrowers") and Warrior Golf Loan Investors, LLC as lender (together with its successors and assigns, the "Lender").

**WHEREAS**, on March 4, 2019 (the "Petition Date"), the Borrowers commenced a voluntary bankruptcy proceeding, under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas, Laredo Division (the "Bankruptcy Court"), which case is pending as Case No. ____ (the "Chapter 11 Case").

**WHEREAS**, the Borrowers remain in possession of their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, Borrowers have requested that Lender provide financing to Borrowers consisting of a senior secured super priority term loan in a principal amount of up to $2,550,000 (the "Facility") pursuant to Sections 105, 363, 364(c) and 364(d) of the Bankruptcy Code;

**WHEREAS**, Lender has indicated its willingness to agree to extend the Facility to Borrowers, all on terms and conditions set forth herein and in the other Loan Documents and in accordance with Sections 105, 363, 364(c) and 364(d) of the Bankruptcy Code, so long as the Obligations are (i) secured by Liens on the Collateral granted by the Borrowers as hereinafter provided, and (ii) given superpriority status as provided in the Interim Order and Final Order as applicable; and

**WHEREAS**, Borrowers have agreed to provide the Collateral and the grant of Superiority Claims, as applicable and as set forth in this Agreement, the Interim Order and the Final Order, subject to the approval of the Bankruptcy Court.

**NOW, THEREFORE**, in consideration of the premises and of the mutual covenants and agreements contained herein, the parties hereto hereby agree as follows:

## 1. DEFINITIONS AND CONSTRUCTION.

**1.1 Definitions**. As used in this Agreement, the following terms shall having the meanings specified below:

"Additional Documents" has the meaning specified in Section 5.12.

"Advances" has the meaning specified in Section 2.1(a).

"Affiliate" means, as to any Person, any other Person (a) that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Person, (b) who is a director or officer (i) of such Person, (ii) of any Subsidiary of such Person, or (iii) of any Person described in clause (a) above with respect to such Person, or (c) which, directly or indirectly through one or more intermediaries, is the beneficial or record owner (as defined in Rule 13d-3 of the Securities Exchange Act of 1934, as amended, as the same is in effect on the date hereof) of twenty-four percent (24%) or more of any class of the outstanding voting equity interests, securities or other equity or ownership interests of such Person. For purposes of this definition, the term "control" (and the correlative terms, "controlled by" and "under common control with") shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies, whether through ownership of securities or other interests, by contract or otherwise.  Notwithstanding the foregoing, it is acknowledged and agreed that neither Force Ten Partners LLC nor Jeremy Rosenthal shall be deemed an Affiliate of Borrowers.

"Authorized Person" means any one of the individuals identified on Schedule A-2, as such schedule is updated from time to time by written notice from Borrowers to Lender.

 "Bankruptcy Code" has the meaning specified in the recitals hereto.

"Bankruptcy Court" has the meaning specified in the recitals hereto.

"Borrowers" has the meaning set forth in the preamble to the Agreement.

"Broadmoor Advance" has the meaning specified in Section 2.1(a).

"Broadmoor Property" has the meaning specified in Section 2.1(a).

"Business Day" means any day that is not a Saturday, Sunday, or other day on which banks are authorized or required to close in the State of New York.

"Capital Expenditures" means, with respect to any Person for any period, the aggregate of all expenditures by such Person during such period that are capital expenditures as determined in accordance with GAAP, whether such expenditures are paid in cash or financed.

"Capital Lease" means a lease that is required to be capitalized for financial reporting purposes in accordance with GAAP.

"Carve-Out" has the meaning ascribed to it in the Interim Order and Final Order, as applicable.

"Cash Collateral" has the meaning ascribed to it in the Interim Order and Final Order, as applicable.

"Change of Control" means, except with respect to the consummation of a Sale, whether under a plan of reorganization or under Section 363 of the Bankruptcy Code, or as otherwise approved by Lender:

(i)       if any Borrower is a corporation, any merger, consolidation, sale, transfer or pledge of such Borrower's equity interests or the creation or issuance of new stock;

(ii)      if any Borrower is a limited liability company, (w) any merger or consolidation, (x) unless Borrower has obtained the prior written consent of Lender, the change, removal, resignation or addition of a managing member or non-member manager (or if no managing member, any member), or (y) the sale, transfer or pledge of the membership interest of a managing member (or if no managing member, any member), or (z) the sale or transfer of more than fifty percent (50%) of non-managing membership interests or the issuance of new non-managing membership interests equaling more than fifty percent (50%) of such Borrower's membership interests;

(iii)     if without the Lender's prior consent, in its sole discretion, (i) any Borrower voluntarily removes or replaces an independent director, if any, of any Borrower, except in connection with the death or incapacity of an individual, in which case the relevant Borrower shall promptly notify Lender of the death of the relevant individual, and the replacement of such individual shall be subject to Lender's consent; (ii) the current chief restructuring officer of any Borrower is removed or replaced, except in connection with the death or incapacity of such individual, in which case the relevant Borrower shall promptly notify Lender of the death of such officer, and the replacement of such officer shall be subject to Lender's consent; or (iii) a majority of current board of directors of any Borrower is removed or replaced.

"Chapter 11 Case" has the meaning specified in the recitals hereto.

"Chapter 11 Plan" means a chapter 11 plan that provides for, *inter alia*, payment in full in cash of all Obligations on the effective date thereof, together with releases, exculpations, waivers and indemnification to the extent acceptable to Lender, in its reasonable discretion.

"Cimarron Advance" has the meaning specified in Section 2.1(a).

"Cimarron Property" has the meaning specified in Section 2.1(a).

"Closing Date" means the date upon which the first Advance is made under Section 2.1.

"Collateral" means, collectively, all pre-petition and post-petition real property and all pre-petition and post-petition tangible and intangible personal property of each Borrower, in each case wherever located and whether now owned or hereafter acquired, including but not limited to all accounts, contracts rights, chattel paper, cash, general intangibles, investment property, machinery, equipment, goods, inventory, furniture, fixtures, letter of credit rights, books and records, deposit accounts, documents, instruments, commercial tort claims, leases and leaseholds and rents, together with all proceeds of each of the foregoing, including insurance proceeds (as each such term above is defined in the UCC, to the extent applicable) but excluding prepetition commercial tort claims and avoidance actions.

"Commitment" means the maximum principal amount of Lender's obligation to make Advances to Borrowers pursuant to Section 2 hereof.  As of the Closing Date, the Commitment is $2,550,000 and upon entry of the Final Order, the Commitment shall be $2,550,000.

3

"Commitment Fee" means the fee of 2.00% of the amount of the Facility, which shall be earned and payable upon entry of the Interim Order and which shall be paid to the Lender on the Closing Date from the proceeds of the Facility.

"Compliance Certificate" means a certificate substantially in the form of Exhibit A delivered by the Authorized Person of Borrowers to Lender.

"Control Agreement" means, with respect to each Deposit Account of a Borrower, an agreement in form and substance reasonably satisfactory to the Lender, pursuant to which the depository institution maintaining such Deposit Account agrees to comply with the Lender's instructions with respect to disposition of funds in such Deposit Account without further consent by the relevant Borrower.

"Daily Balance" means, as of any date of determination and with respect to any fixed monetary Obligations, the amount of such Obligations owed at the end of such day.

"Default" means an event, condition, or default that, with the giving of notice, the passage of time, or both, would be an Event of Default.

"Default Rate" has the meaning specified in Section 2.4(b).

"Deposit Account" means any deposit account, as that term is defined in the UCC.

"Designated Account" means the Deposit Account of Borrowers identified on Schedule D-1.

"Designated Account Bank" has the meaning specified in Schedule D-1.

"Dissolved Borrowers" shall mean Warrior ATV Golf LLC, Warrior Golf Development LLC, Warrior Golf Venture LLC and Warrior Premium Properties LLC, each a California limited liability company.

"Dollars" or "$" means United States dollars.

"Environmental Action" means any written complaint, summons, citation, notice, directive, order, claim, litigation, investigation, judicial or administrative proceeding, judgment, letter, or other written communication from any Governmental Authority, or any third party involving violations of Environmental Laws or releases of Hazardous Materials (a) from any Collateral; (b) from adjoining properties or businesses of any real property that constitutes Collateral, or (c) from or onto any facilities, with respect to the Collateral, which received Hazardous Materials generated by any Borrower.

"Environmental Law" means any applicable federal, state, provincial, foreign or local statute, law, rule, regulation, ordinance, code, binding and enforceable guideline, binding and enforceable written policy, or rule of common law now or hereafter in effect and in each case as amended, or any judicial or administrative interpretation thereof, including any judicial or administrative order, consent decree or judgment, in each case, to the extent binding on the Borrowers, relating to the environment, the effect of the environment on employee health, or Hazardous Materials, in each case as amended from time to time.

4

"Environmental Liabilities" means all liabilities, monetary obligations, losses, damages, costs and expenses (including all reasonable fees, disbursements and expenses of counsel, experts, or consultants, and costs of investigation and feasibility studies), fines, penalties, sanctions, and interest incurred as a result of any claim or demand, or Remedial Action required, by any Governmental Authority or any third party, and which relate to any Environmental Action.

"Environmental Lien" means any Lien in favor of any Governmental Authority for Environmental Liabilities.

"Event of Default" has the meaning specified in Section 8.1.

"Existing Prepetition Liens" has the meaning set forth in the Interim Order or the Final Order, as applicable.

"Exit Fee" means the fee of 1.00%, as applicable (i) of any outstanding principal amount hereunder that is prepaid pursuant to Section 2.3(c) or (d), or (ii) without duplication of any amounts paid pursuant to clause (i), of the amount of the Commitment on the Maturity Date, in each case to be repaid in cash and without further order of the Bankruptcy Court.

"Extension Fee" means the fee of 1.00% of the amount of the Facility in connection with Lender's extension of the Stated Maturity Date in accordance with Section 3.3(b).

"Facility" has the meaning specified in the recitals to the Agreement.

"Fees" means all fees due to the Lender under this Agreement, any Loan Document or the Interim Order or Final Order, as applicable, including the Commitment Fee, the Exit Fee, the Extension Fee and the Work Fee.

"Final Order" means a final order of the Bankruptcy Court authorizing and approving the Borrowers' entry into this Agreement and the other Loan Documents, in form and substance satisfactory to Lender, in its sole discretion, Borrowers, and their respective counsel, on a final basis and entered following a final hearing.

"Governmental Authority" means any federal, state, local, or other governmental or administrative body, instrumentality, board, department, or agency or any court, tribunal, administrative hearing body, arbitration panel, commission, or other similar dispute-resolving panel or body.

"Hazardous Materials" means (a) substances that are defined or listed in, or otherwise classified pursuant to, any applicable laws or regulations as "hazardous substances," "hazardous materials," "hazardous wastes," "toxic substances," or any other formulation intended to define, list, or classify substances by reason of deleterious properties such as ignitability, corrosivity, reactivity, carcinogenicity, reproductive toxicity, or "EP toxicity", (b) oil, petroleum, or petroleum derived substances, natural gas, natural gas liquids, synthetic gas, drilling fluids, produced waters, and other wastes associated with the exploration, development, or production of crude oil, natural gas, or geothermal resources, (c) any flammable substances or explosives or any radioactive materials, and (d) asbestos in any form or electrical equipment that contains any

oil or dielectric fluid containing levels of polychlorinated biphenyls in excess of 50 parts per million.

"Indebtedness" means (a) all obligations for borrowed money, including, without limitation, the Obligations, (b) all obligations evidenced by bonds, debentures, notes, or other similar instruments and all reimbursement or other obligations in respect of letters of credit, bankers acceptances, or other financial products, (c) all obligations as a lessee under Capital Leases, (d) all obligations or liabilities of others secured by a Lien on any asset of such Person, irrespective of whether such obligation or liability is assumed, (e) all payment obligations to pay the deferred purchase price of assets (other than trade payables incurred in the ordinary course of business and repayable in accordance with customary trade practices), (f) all indebtedness created or arising under any conditional sale or other title retention agreement, or incurred as financing, in either case with respect to property acquired by such Person, (g) the principal balance outstanding under any synthetic lease, off-balance sheet loan or similar off balance sheet financing products, or (h) any obligation guaranteeing or intended to guarantee (whether directly or indirectly guaranteed, endorsed, co-made, discounted, or sold with recourse) any obligation of any other Person that constitutes Indebtedness under any of clauses (a) through (h) above.  For purposes of this definition, (i) the amount of any Indebtedness represented by a guaranty or other similar instrument shall be the lesser of the principal amount of the obligations guaranteed and still outstanding and the maximum amount for which the guaranteeing Person may be liable pursuant to the terms of the instrument embodying such Indebtedness, and (ii) the amount of any Indebtedness described in clause (d) above shall be the lower of the amount of the obligation and the fair market value of the assets of such Person securing such obligation.

"Indemnified Liabilities" has the meaning specified in Section 10.3.

"Indemnified Person" has the meaning specified in Section 10.3.

"Initial Advances" has the meaning specified in Section 2.1(a).

"Interim Order" means that interim order entered by the Bankruptcy Court authorizing and approving the Borrowers' entry into this Agreement and the other Loan Documents, in form and substance satisfactory to the Lender, in its sole discretion, the Borrowers in their sole discretion, and their respective counsel.

"IRC" means the Internal Revenue Code of 1986, as in effect from time to time.

"Lead Borrower" means Warrior Golf, LLC, a Delaware limited liability company.

"Lender" has the meaning set forth in the preamble to the Agreement.

"Lender Expenses" means all (a) costs or expenses (including taxes, and insurance premiums) required to be paid by the Borrowers under any of the Loan Documents that are paid, advanced, or incurred by Lender, including but not limited to the Work Fee owed to Lender's counsel pursuant to the Interim Order, (b) reasonable and actual out-of-pocket fees or charges paid or incurred by Lender in connection with its transactions with the Borrowers under any of the Loan Documents, including, fees or charges for photocopying, notarization, couriers and messengers, telecommunication, public record searches (including tax lien, litigation, and UCC

searches and including searches with the patent and trademark office, the copyright office, or the department of motor vehicles), filing, recording, publication, appraisal (including periodic collateral appraisals or business valuations to the extent of the fees and charges (and up to the amount of any limitation) contained in the Agreement), real estate surveys, real estate title policies and endorsements, and environmental audits, (c) reasonable and actual out-of-pocket costs and expenses incurred by Lender in the disbursement of funds to Borrowers (by wire transfer or otherwise), (d) out-of-pocket charges paid or incurred by Lender resulting from the dishonor of checks payable by or to any Borrower, (e) reasonable and actual out-of-pocket costs, fees (including reasonable attorneys' fees) and expenses paid or incurred by Lender to correct any default or enforce any provision of the Loan Documents, or during the continuance of an Event of Default, in gaining possession of, maintaining, handling, preserving, storing, shipping, selling, preparing for sale, or advertising to sell the Collateral, or any portion thereof, irrespective of whether a sale is consummated, (f) reasonable out-of-pocket audit fees and expenses of Lender (including travel, meals, and lodging) related to any inspections or audits, (g) reasonable and actual out-of-pocket costs and expenses of third party claims or any other suit paid or incurred by Lender in enforcing or defending the Loan Documents or in connection with the transactions contemplated by the Loan Documents or Lender's relationship with the Borrowers, (h) Lender's reasonable and actual out-of-pocket costs and expenses (including reasonable attorneys' fees) incurred in advising, structuring, drafting, reviewing, administering (including travel, meals, and lodging), or amending the Loan Documents, and (i) Lender's reasonable costs and expenses (including reasonable and actual attorneys, accountants, consultants, and other advisors fees and expenses) incurred in terminating, enforcing (including attorneys, accountants, consultants, and other advisors fees and expenses incurred in connection with a "workout," a "restructuring," or an insolvency proceeding concerning any Borrower or in exercising rights or remedies under the Loan Documents), or defending the Loan Documents, irrespective of whether suit is brought, or in taking any Remedial Action concerning the Collateral.

"Lender Related Person" means, Lender, together with Lender's Affiliates, officers, directors, employees, attorneys, and agents.

"Lender's Liens" means the Liens granted by Borrowers in and to the Collateral in favor of Lender.

"Lien" means any pledge, hypothecation, assignment (which is intended as security), charge, deposit arrangement (which is intended as security), encumbrance, lien (statutory or other), security interest, or other security arrangement and any other preference, priority, or preferential arrangement of any kind or nature whatsoever (which is intended as security), including any conditional sale contract or other title retention agreement, the interest of a lessor under a Capital Lease, and any synthetic or other financing lease having substantially the same economic effect as any of the foregoing.

"Loan Account" means the Deposit Account of Lender identified on Schedule A-1.

"Loan Documents" means the Agreement, the Interim Order, the Final Order, the Control Agreements, the Additional Documents and any other notes, account control agreements, or mortgages executed by Borrowers in connection with the Agreement and payable to Lender, any other agreement entered into, now or in the future, by the Borrowers or Lender in connection

with the Agreement, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing.

"Material Adverse Change" means, (a) except as a result of the commencement of the Chapter 11 Case, a material adverse change in the business, operations, results of operations, assets, liabilities or financial condition of the Borrowers with respect to the Collateral (b) a material impairment of the Borrowers' ability to perform their respective obligations with respect to the Collateral under the Loan Documents or of Lender's ability to enforce the Obligations or realize upon the Collateral or (c) a material impairment of the enforceability or priority of Lender's Liens with respect to a material portion the Collateral as a result of an action or failure to act on the part of the Borrowers, all determined at the Lender's discretion.

"Maturity Date" means the earliest of (i) the Stated Maturity Date (as it may be extended pursuant to Section 3.3(b)); (ii) the effective date of a plan of reorganization; (iii) if the Final Order has not been entered by the Bankruptcy Court, the date that is one day after the Final Hearing (as defined in the Interim Order); (iv) entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissing the Chapter 11 Case; (v) the closing of a Sale of all, or substantially all, the assets of all Borrowers and (vi) the acceleration of the outstanding Obligations or termination of the Commitments as a result of the occurrence and continuation of an Event of Default.

"Net Cash Proceeds" means with respect to any sale or disposition of Collateral by any Borrower, the amount of cash proceeds received (directly or indirectly) from time to time (whether as initial consideration or through the payment of deferred consideration) by or on behalf of such Borrower, in connection therewith, after deducting therefrom only (i) reasonable fees, commissions, and expenses related thereto and required to be paid by such Borrower in connection with such sale or disposition and (ii) taxes paid or payable to any taxing authorities by such Borrower in connection with such sale or disposition, in each case to the extent, but only to the extent, that the amounts so deducted are payable to a Person that is not an Affiliate of such Borrower, and are properly attributable to such transaction; provided however for the avoidance of doubt, that such reasonable fees, commissions and expenses shall exclude fees and expenses of estate professionals.

"Non-Permitted Lien" means, other than as set forth in Schedule 4.4(1), any Existing Prepetition Lien that adversely effects in any material manner a material portion of the Collateral, as determined by the Lender in its sole discretion.

"Obligations" means all loans, Advances, debts, principal, interest, contingent reimbursement or indemnification obligations, premiums, liabilities (including all amounts charged to the Loan Account pursuant to the Agreement), obligations (including indemnification obligations), Fees (including, without limitation the Commitment Fee, Work Fee, Extension Fee and Exit Fee), Lender Expenses, guaranties, covenants, and duties of any kind and description owing by any Borrower, to the Lender pursuant to or evidenced by the Loan Documents and/or pursuant to or in connection with any one or more documents, instruments or agreements described in clause (i) of the definition of Lender Expenses and, in each case, irrespective of whether for the payment of money, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and including all interest not paid when due and all other expenses or other amounts that Borrowers are required to pay or reimburse by the Loan

Documents or by law or otherwise in connection with the Loan Documents, including without limitation in connection with the collection or enforcement of or preservation of rights under the Loan Documents.

"Ordinary Course" shall mean, in respect of any Person, the ordinary course and reasonable requirements of such Person's business, as conducted in accordance with past practices, and undertaken in good faith.

"Organizational Documents" means (a) for any corporation, the certificate or articles of incorporation, the bylaws, any certificate of designation or other instrument relating to the rights of preferred shareholders or stockholders of such corporation, any shareholder rights agreement and all applicable resolutions of the board of directors (or any committee thereof) of such corporation, (b) for any partnership, the partnership agreement and, if applicable, the certificate of limited partnership, (c) for any limited liability company, the operating agreement and articles or certificate of formation or organization and all applicable resolutions of any managing member of such limited liability company, and (d) any agreement between any Borrower and its shareholders, members, partners or its equity owners, or among any of the foregoing.

"Permits" means any license, lease, power, permit, franchise, certificate, authorization or approval issued by a Governmental Authority.

"Permitted Indebtedness" means:

(a)     Indebtedness evidenced by the Agreement and the other Loan Documents;

(b)     Indebtedness outstanding as of the date of this Agreement; and

(c)     Indebtedness, including any unsecured guarantees, incurred in the Ordinary Course with respect to surety and appeal bonds, performance bonds, bid bonds, appeal bonds, statutory bonds, completion guarantees and similar obligations.

"Permitted Protest" means the right of any Borrower to protest any Lien (other than any Lien that secures the Obligations), taxes (other than payroll taxes or taxes that are the subject of a United States federal tax lien), or rental payment, provided that (a) a reserve with respect to such obligation is established on such Borrower's books and records in such amount as is required under GAAP, (b) any such protest is instituted promptly and prosecuted diligently by such Borrower in good faith and (c) Lender is reasonably satisfied that, while any such protest is pending, there will be no impairment of the enforceability, validity, or priority of any of Lender's Liens.

"Person" means natural persons, corporations, limited liability companies, limited partnerships, general partnerships, limited liability partnerships, joint ventures, trusts, land trusts, business trusts, or other organizations, irrespective of whether they are legal entities, and governments and agencies and political subdivisions thereof.

"Petition Date" means March 4, 2019.

"Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

"Release Price" means the amounts set forth on Schedule 6.4 as "release prices."

"Remedial Action" means all actions taken to (a) clean up, remove, remediate, contain, treat, monitor, assess, evaluate, or in any way address Hazardous Materials in the indoor or outdoor environment, (b) prevent or minimize a release or threatened release of Hazardous Materials so they do not migrate or endanger or threaten to endanger public health or welfare or the indoor or outdoor environment, (c) restore or reclaim natural resources or the environment, (d) perform any pre-remedial studies, investigations, or post-remedial operation and maintenance activities, or (e) conduct any other actions with respect to Hazardous Materials required by Environmental Laws.

"Required Lien Priority" has the meaning set forth in Section 9.2.

"Sale" means the sale of all or substantially all of any of the assets of any Borrower or any subsidiary thereof (including any Collateral transferred to another Borrower), to any party, including the Lender, pursuant to the provisions of Section 363 of the Bankruptcy Code.

"Sale Deposit" has the meaning specified in Section 9.1(a)(i).

"Schedules" means those certain schedules annexed hereto and made a part hereof.

"Security Documents" means (i) all UCC financing statements, or amendments or continuations thereof, and (ii) any other documents or filings in connection with the perfection of the Liens hereunder.

"Stated Maturity Date" means March 6, 2020.

"Subsidiary" means, with respect to any Person, any corporation, partnership, limited liability company, association or other business entity of which more than fifty percent (50%) of the total voting power of shares of stock (or equivalent ownership or controlling interest) entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers, governors or trustees thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof.

"Superpriority Claim" has the meaning specified in Section 9.1(a)(i).

"UCC" means the Uniform Commercial Code as in effect in the State of California; provided that, if perfection or the effect of perfection or non-perfection or the priority of any security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of California, "UCC" means the Uniform Commercial Code as in effect from time to time in such other jurisdiction for purposes of the provisions hereof relating to such perfection, effect of perfection or non-perfection or priority.

"United States" means the United States of America.

"Work Fee" means a non-refundable fee in the amount of $50,000, to be paid to Lender's counsel for due diligence and legal services rendered.

**1.2    Accounting Terms.** All accounting terms not specifically defined herein shall be construed in accordance with GAAP; provided, that if Borrowers notify Lender that Borrowers requests an amendment to any provision hereof to eliminate the effect of any change occurring after the Closing Date in GAAP or in the application thereof on the operation of such provision (or if Lender notifies Borrowers that Lender requests an amendment to any provision hereof for such purpose), regardless of whether any such notice is given before or after such change in GAAP or in the application thereof, then Lender and Borrowers agree that they will negotiate in good faith amendments to the provisions of this Agreement that are directly affected by such change in GAAP with the intent of having the respective positions of Lender and Borrowers after such change in GAAP conform as nearly as possible to their respective positions as of the date of this Agreement and, until any such amendments have been agreed upon, the provisions in this Agreement shall be interpreted on the basis of GAAP as in effect and applied immediately before such change shall have become effective. When used herein, the term "financial statements" shall include the notes and schedules thereto. Whenever the term "Borrowers" is used in respect of a financial covenant or a related definition, it shall be understood to mean Borrowers on a consolidated basis, unless the context clearly requires otherwise.

**1.3    UCC.** Any terms used in this Agreement that are defined in the UCC shall be construed and defined as set forth in the UCC unless otherwise defined herein; provided, that to the extent that the UCC is used to define any term herein and such term is defined differently in different Articles of the UCC, the definition of such term contained in Article 9 of the UCC shall govern.

**1.4    Construction.** Unless the context of this Agreement or any other Loan Document clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, the terms "includes" and "including" are not limiting, and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Agreement or any other Loan Document refer to this Agreement or such other Loan Document, as the case may be, as a whole and not to any particular provision of this Agreement or such other Loan Document, as the case may be. Section, subsection, clause, schedule, and exhibit references herein are to this Agreement unless otherwise specified. Any reference in this Agreement or in any other Loan Document to any agreement, instrument, or document shall include all alterations, amendments, changes, extensions, modifications, renewals, replacements, substitutions, joinders, and supplements, thereto and thereof, as applicable (subject to any restrictions on such alterations, amendments, changes, extensions, modifications, renewals, replacements, substitutions, joinders, and supplements set forth herein). The words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts, and contract rights. Any reference herein or in any other Loan Document to the satisfaction, repayment, or payment in full of the Obligations shall mean the repayment in full in cash of all Obligations other than unasserted contingent indemnification Obligations (with all such Obligations consisting of monetary or payment Obligations having been paid in full in cash). Any reference herein to any Person shall be construed to include such Person's successors and assigns. Any requirement of a writing

contained herein or in any other Loan Document shall be satisfied by the transmission of a Record.

     **1.5**    **Schedules and Exhibits.** All of the schedules and exhibits attached to this Agreement shall be deemed incorporated herein by reference.

**2.**    **LOAN AND TERMS OF PAYMENT.**

     **2.1**    **Agreement to Lend; Delayed Draw; Security Documents and Loan Documents**.

         (a)    Subject to the terms and conditions of this Agreement, Lender agrees, that after entry of the Interim Order or the Final Order, as applicable, and subject to the satisfaction or waiver of the conditions precedent in Section 3, to make one or more advances to Borrowers up to an aggregate principal amount of $1,550,000 (the "Initial Advances"). Notwithstanding anything to the contrary herein, the Borrowers shall be limited to one Initial Advance upon the entry of the Interim Order in the principal amount of $800,000, and an additional Initial Advance upon the entry of the Final Order in the principal amount of $750,000.

         (b)    Subject to the terms and conditions of this Agreement, in the event that (i) the existing liens on the real property and personal property in connection with the Cimarron golf course (such real and personal property, collectively, the "Cimarron Property") are released, or the existing secured creditor consents to the Lender obtaining a valid and perfected first priority Lien on the Cimarron Property, or the Borrowers are otherwise able to grant Lender a valid and perfected first priority Lien on the Cimarron Property, and (ii) Warrior Golf, LLC grants Lender a valid and perfected first priority Lien on the Cimarron Property, whether existing at such time or thereafter acquired, Borrower may request an additional advance in the principal amount of $700,000 (the "Cimarron Advance").

         (c)    Subject to the terms and conditions of this Agreement, in the event that (i) the existing liens on the real property and personal property in connection with the Broadmoor golf course (such real and personal property, collectively, the "Broadmoor Property") are released, or the existing secured creditor consents to the Lender obtaining a valid and perfected first priority Lien on the Broadmoor Property, or the Borrowers are otherwise able to grant Lender a valid and perfected first priority Lien on the Broadmoor Property and (ii) Warrior Golf, LLC or Warrior Golf Management, LLC grants Lender a valid and perfected first priority Lien on the Broadmoor Property, whether existing at such time or thereafter acquired, Borrower may request an additional advance in the principal amount of $300,000 (the "Broadmoor Advance", and together with the Initial Advances and the Cimarron Advance, the "Advances").

         (d)    The Advances shall be secured by the Collateral as set forth in this Agreement, the Interim Order, the Final Order, and the other Loan Documents.  Any Advance, or portion thereof, that is repaid or prepaid (whether as an optional prepayment or a mandatory prepayment) cannot be reborrowed.

(e)      Each Borrower agrees that it is jointly and severally liable for the prompt payment and performance of, all Obligations under the Loan Documents. Borrowers promise to pay the Obligations (including principal, interest, fees, costs, and expenses) in Dollars in full (including the Exit Fee) on the Maturity Date.

(f)      Lender may, in its sole discretion, advance additional funds to pay attorneys' fees of Lender up to $100,000 (exclusive of the Work Fee paid upon entry of the Interim Order), and such advances shall be added to the Obligations as additional outstanding principal and shall be in excess of the Commitment (for the avoidance of doubt, any such advance in excess of the Commitment shall not constitute a Default or Event of Default hereunder).  In no event shall anything herein relieve Borrower of its obligation to pay for Lender's attorneys' fees as a Lender Expense in accordance with Section 14.8, whether any such fees are paid as a protective advance hereunder or otherwise.

**2.2**      **Borrowing Procedures**.  Each Advance under Section 2.1 shall be made by a written request substantially in the form of the Request for Advance attached hereto as Exhibit B executed by an Authorized Person of the Lead Borrower and delivered to the Lender no later than two (2) Business Days prior to the requested funding date (or such shorter period as the Lender may permit in its sole discretion); provided, that (i) Lead Borrower shall submit such requests only after approval of the Interim Order or the Final Order, or the conditions satisfied in Section 2.1(b) or Section 2.1(c) are satisfied, to the extent applicable for the relevant Advance, and (ii) the aggregate amount of all such Advances shall not exceed $2,550,000 (other than pursuant to Section 2.1(f)).  Upon satisfaction or waiver of the conditions precedent specified herein, Lender shall make the proceeds of the relevant Advance available to the Borrowers on the requested funding date by causing the principal amount of the relevant Advance to be credited to the Designated Account.

**2.3**      **Payments; Reductions of Commitments; Prepayments.**

(a)      **Payments by Borrowers**.  Except as otherwise expressly provided herein, all payments by Borrowers shall be made to the Loan Account for the account of Lender and shall be made in immediately available funds, no later than 4:00 p.m. (Eastern time) on the date specified herein. Any payment received by Lender later than 4:00 p.m. (Eastern time) shall be deemed to have been received on the following Business Day and any applicable interest or fee shall continue to accrue until such following Business Day.

(b)      **Apportionment and Application**. All payments remitted to Lender and all proceeds of Collateral received by Lender shall be applied as follows (unless otherwise directed by Lender):

(i)      first, to pay any Lender Expenses (including cost or expense reimbursements, such as reasonable attorneys' fees in excess of the Work Fee, but excluding any attorneys' fees have been paid as a protective advance pursuant to Section 2.1(f), in which case such fees shall have been added to the Obligations as additional principal) then owed to the Lender or Lender Related Persons in accordance with the Interim Order or the Final Order, as applicable, or indemnities then due to Lender under the Loan Documents, until paid in full;

(ii)     second, to pay any Fees then due to Lender under the Loan Documents until paid in full;

(iii)     third, to pay the principal of all Advances until paid in full (including, without limitation, any interest that has been paid in kind and added to the principal amount of the Obligations);

(iv)     fourth, to pay any other Obligations until paid in full; and

(v)     fifth, to Borrowers (to be wired to the Designated Account) or as otherwise required by applicable law.

In the event of a direct conflict between the priority provisions of this Section 2.3(b) and any other provision contained in any other Loan Document (except for the Interim Order or Final Order, as applicable), it is the intention of the parties hereto that such provisions be read together and construed, to the fullest extent possible, to be in concert with each other. In the event of any actual, irreconcilable conflict that cannot be resolved as aforesaid, the terms and provisions of this Section 2.3(b) shall control and govern.  Notwithstanding the foregoing, to the extent there is a conflict between the Interim Order or the Final Order, as applicable, and any other Loan Document, the Interim Order or the Final Order, as applicable, shall control and govern.

(c)     **Optional Prepayments.** Upon three Business Days' prior notice to Lender, Borrowers may prepay any Advance, in whole or in part, at any time, provided that (i) the principal amount being prepaid shall be an amount not less than $500,000 and (ii) Borrowers shall also pay all accrued and unpaid interest on such principal amount and the Exit Fee as applied to the principal amount that was prepaid.

(d)     **Mandatory Prepayments**.

(i)     **Dispositions**. In accordance with the applicable provisions of the Interim Order (and any corresponding paragraph in the Final Order):

(A)  upon any voluntary or involuntary sale of either all or substantially all of the assets of Warrior Custom Golf, LLC or a sale of 50% or more of the equity interests in Warrior Custom Golf, LLC, Borrowers shall prepay such portion of the outstanding amount of the Obligations, in accordance with Section 2.3(b), in an amount equal to 100% of the Net Cash Proceeds received from such sale, plus the Exit Fee as applied to the amount of such prepayment.

(B)  other than with respect to the Cimarron Property and the Broadmoor Property, upon any voluntary or involuntary sale of either all or substantially all of the assets of any entity set forth on Schedule 6.4, or a sale of 50% or more of the equity interests in any such entity, Borrowers shall prepay such portion of the outstanding amount of the Obligations, in accordance with

Section 2.3(b), in an amount equal to the sum of (x) 100% of the Net Cash Proceeds received from such sale up to the Release Price set forth for the relevant entity on Schedule 6.4 and (y) with respect to Net Cash Proceeds from such sale in excess of such Release Price, 50% of such excess Net Cash Proceeds, plus the Exit Fee as applied to the amount of such prepayment.  Any remaining Net Cash Proceeds from such sale may be retained by Borrowers as operating capital.

(C)     If (1) Warrior Golf, LLC has not granted Lender a lien over the Cimarron Property in accordance with Section 2.1(b), or (2) Warrior Golf, LLC has granted a lien over the Cimarron Property in accordance with Section 2.1(b) and Lender has not made any portion of the Cimarron Advance, upon any voluntary or involuntary sale of all or substantially all of the Cimarron Property, Borrowers shall (i) prepay such portion of the outstanding amount of the Obligations, in accordance with Section 2.3(b), in an amount equal to 50% of the Net Cash Proceeds received from such sale up to the Release Price set forth on Schedule 6.4, plus the Exit Fee as applied to the amount of such prepayment and (ii) retain the remaining Net Cash Proceeds from such sale as operating capital.

(D)     If Warrior Golf, LLC has granted Lender a lien over the Cimarron Property in accordance with Section 2.1(b) and Lender has made any portion of the Cimarron Advance, then upon any voluntary or involuntary sale of all or substantially all of the Cimarron Property, notwithstanding the provisions of Section 2.3(b), Borrowers shall prepay such portion of the outstanding amount of the Obligations equal to (x) the amount of the Cimarron Advance, including, without limitation, all accrued and unpaid interest thereon that has been added to the principal amount on account of the Cimarron Advance, (y) the Exit Fee as applied to the amount of such prepayment and (z) all Lender Expenses incurred in connection with the Cimarron Advance.

(E)     If (1) Warrior Golf, LLC has not granted Lender a lien over the Broadmoor Property in accordance with Section 2.1(c), or (2) Warrior Golf, LLC has granted a lien over the Broadmoor Property in accordance with Section 2.1(c) and Lender has not made any portion of the Broadmoor Advance, upon any voluntary or involuntary sale of all or substantially all of the Broadmoor Property, Borrowers shall (i) prepay such portion of the outstanding amount of the Obligations, in accordance with Section 2.3(b), in an amount equal to 50% of the Net Cash Proceeds received from such sale up to the Release Price set forth on Schedule 6.4, plus the Exit Fee as applied to the amount of such prepayment and (ii) retain the remaining Net Cash Proceeds from such sale as operating capital.

(F)     If Warrior Golf, LLC has granted Lender a lien over the Broadmoor Property in accordance with Section 2.1(c) and Lender has made any portion of the Broadmoor Advance, then upon any voluntary or involuntary sale of all or substantially all of the Broadmoor Property, notwithstanding the provisions of Section 2.3(b), Borrowers shall prepay such portion of the outstanding amount of the Obligations equal to (x) the amount of the Broadmoor Advance, including, without limitation, all accrued and unpaid interest thereon

15

that has been added to the principal amount on account of the Broadmoor Advance, (y) the Exit Fee as applied to such prepayment and (z) all Lender Expenses in connection with the Broadmoor Advance.

(G)  other than (x) as set forth above in sub-clauses (A) – (F) and without duplication, and (y) with respect to any asset on Schedule 6.4 for which no Release Price is specified, within one (1) Business Day of the date of receipt by any Borrower of the Net Cash Proceeds of any disposition (whether through a voluntary or involuntary sale, the loss, destruction or damage thereof or any actual condemnation, confiscation, requisition, seizure or taking thereof or otherwise) of Collateral (other than sales in the Ordinary Course), such Borrower shall prepay such portion of the outstanding amount of the Obligations in accordance with Section 2.3(b) in an amount equal to 100% of the Net Cash Proceeds (including insurance proceeds, condemnation awards, and payments in lieu thereof) received in connection with such sales or dispositions, plus the Exit Fee as applied to the amount of such prepayment.  For the avoidance of doubt, the disbursement of the Net Cash Proceeds of any real property set forth on Schedule 6.4 shall be as set forth in subsection (B) and the provisions of this subsection (G) shall not apply in such instance.

Nothing contained in this Section 2.3(d)(i) shall permit any Borrower to sell any Collateral other than in accordance with Section 6.4.  In no event shall any amount paid to Lender under this Section 2.3(d) exceed the outstanding amount of the Obligations.

(ii)  **Indebtedness**.  Within one (1) Business Day of the date of incurrence by any Borrower of any Indebtedness (other than Permitted Indebtedness), such Borrower shall prepay the outstanding principal amount of the Obligations in accordance with Section 2.3(b) in an amount equal to 100% of the Net Cash Proceeds received by such Person in connection with the incurrence of such Indebtedness plus the Exit Fee as applied to the principal amount of such prepayment.  The provisions of this Section 2.3(d)(ii) shall not be deemed to be implied consent to any such incurrence otherwise prohibited by the terms and conditions of this Agreement.   In the event that Borrowers intend to incur Indebtedness to pay off all Advances in full and refinance the Facility with another lender, Borrowers shall promptly provide written notice to Lender of the terms of any such alternate financing, and Lender shall have the right, for a period of ten (10) Business Days following such written notice to Lender, to provide such financing upon the same terms and conditions as those offered by the prospective third party lender.

**2.4**    **Interest Rates and Rates, Payments and Calculations.**

(a)    **Interest Rate.**  Except as provided in Section 2.4(b), all Advances shall bear interest on the Daily Balance thereof at a rate equal to 11.00% per annum.  Interest on the aggregate outstanding principal amount of the Advances shall be paid, in arrears, on the first day of each month by addition of such interest to the aggregate outstanding principal amount of the

Advances (which amount shall, for the avoidance of doubt, include any interest that has previously been added to the outstanding principal amount).

(b)   **Default Rate.** Upon the occurrence and during the continuation of an Event of Default, all Obligations shall bear interest on the Daily Balance thereof at a per annum rate equal to 18% (the "<u>Default Rate</u>"), without any notice from Lender or any other Person, and shall continue to be added to the aggregate outstanding principal amount of the Advances.

(c)   **Payment.** Except to the extent provided to the contrary herein, all Fees payable hereunder or under any of the other Loan Documents, and all costs, expenses, and Lender Expenses payable hereunder or under any of the other Loan Documents shall be due and payable, in arrears, on the first day of each month at any time that Obligations or Commitments are outstanding. Borrowers hereby authorize Lender, from time to time, upon prior notice to Borrowers, to charge all Fees payable hereunder or under any of the other Loan Documents (in each case, as and when due and payable), all costs, expenses, and Lender Expenses payable hereunder or under any of the other Loan Documents (in each case, as and when due and payable), all Fees provided for in <u>Section 2.8</u> (in each case, as and when due and payable), and all other payments (other than interest which shall be paid in accordance with <u>Section 2.4(a)</u>) as and when due and payable under any Loan Document to the Loan Account, which amounts thereafter shall constitute Obligations hereunder and, if not paid within two (2) Business Days when due, shall accrue interest at the rate then applicable to Obligations.

(d)   **Computation**. All interest and fees chargeable under the Loan Documents shall be computed on the basis of a 360 day year, in each case, for the actual number of days elapsed in the period during which the interest or fees accrue.

(e)   **Intent to Limit Charges to Maximum Lawful Rate**. In no event shall the interest rate or rates payable under this Agreement, plus any other amounts paid in connection herewith, exceed the highest rate permissible under any law that a court of competent jurisdiction shall, in a final determination, deem applicable. Borrowers and Lender, in executing and delivering this Agreement, intend legally to agree upon the rate or rates of interest and manner of payment stated within it; <u>provided</u>, that, anything contained herein to the contrary notwithstanding, if said rate or rates of interest or manner of payment exceeds the maximum allowable under applicable law, then, *ipso facto*, as of the date of this Agreement, Borrowers is and shall be liable only for the payment of such maximum as allowed by law, and payment received from Borrowers in excess of such legal maximum, whenever received, shall be applied to reduce the principal balance of the Obligations to the extent of such excess.

2.5   <u>**Crediting Payments; Clearance Charge**</u>. The receipt of any payment item by Lender shall not be considered a payment on account unless such payment item is a wire transfer of immediately available federal funds made to the Loan Account or unless and until such payment item is honored when presented for payment. Should any payment item not be honored when presented for payment, then Borrowers shall be deemed not to have made such payment and interest shall be calculated accordingly. Anything to the contrary contained herein notwithstanding, any payment item shall be deemed received by Lender only if it is received into the Loan Account on a Business Day on or before 4:00 p.m. (Eastern time). If any payment item

is received into the Loan Account on a non-Business Day or after 4:00 p.m. (Eastern time) on a Business Day, it shall be deemed to have been received by Lender as of the opening of business on the immediately following Business Day.

      2.6    **Designated Account.**

      (a)    Borrowers agree to establish and maintain the Designated Account with the Designated Account Bank and to receive the proceeds of the Advances requested by Borrowers and made by Lender hereunder in such Designated Account.

      (b)    Borrowers agree to deposit all net proceeds of sales of the Collateral into the Designated Account.

      2.7    **Maintenance of Loan Account; Statements of Obligations.** Lender shall maintain true, correct and complete electronic or written records evidencing the Indebtedness and other Obligations owed by the Borrowers to Lender, in which Lender will record (i) the amount of all Advances made under this Agreement, (ii) the amount of any principal and/or interest due and payable and/or to become due and payable from the Borrowers to the Lender under this Agreement and (iii) all amounts received by Lender under this Agreement from any Borrower.

      2.8    **Fees.** Upon entry of the Interim Order, Borrowers shall pay from the proceeds of the Facility (i) to the Lender, the Commitment Fee as set forth in the Interim Order and (ii) to the Lender (or Lender's counsel, Arent Fox LLP, at the direction of the Lender) the Work Fee (less the portion of the Work Fee paid prior to the Effective Date), against which accrued but unpaid attorneys' fees and expenses shall be credited, whether or not incurred as of the date of the Interim Order or thereafter; <u>provided</u> that attorneys' fees in excess of the Work Fee shall be Lender Expenses payable by Borrowers (whether added to the Obligations as a protective advance pursuant to <u>Section 2.1(f)</u> or otherwise). All such fees shall be non-refundable and non-avoidable obligations of the Borrowers and shall be paid by the Borrowers in cash.

3.      **CONDITIONS; TERM OF AGREEMENT.**

      3.1    **Conditions Precedent to Advances of Facility Amount**. Lender shall not be required to make any Advances unless and until all of the conditions specified below shall have been satisfied or waived by Lender in its sole discretion (the making of any Advance by Lender being conclusively deemed to be its satisfaction or waiver of the conditions precedent contained in this <u>Section 3.1</u>).

      (a)    (i) With respect to the extension of the first Initial Advance, the Bankruptcy Court shall have entered the Interim Order in form and substance satisfactory to Lender, in its sole discretion, (ii) with respect to the extension of the second Initial Advance, the Bankruptcy Court shall have entered the Final Order, (iii) with respect to the extension of the Cimarron Advance, the relevant conditions in <u>Section 2.1(b)</u> shall have been satisfied and the Interim Order or the Final Order, as applicable, shall be in full force and effect and shall not have been modified or amended (unless otherwise approved by Lender), reversed, stayed or subject to a motion for re-argument or reconsideration, or appealed and (iv) with respect to the

extension of the Broadmoor Advance, the relevant conditions in <u>Section 2.1(c)</u> shall have been satisfied and the Interim Order or the Final Order, as applicable, shall be in full force and effect and shall not have been modified or amended (unless otherwise approved by Lender), reversed, stayed or subject to a motion for re-argument or reconsideration, or appealed.  Borrowers and Lender shall be entitled to rely in good faith upon the Interim Order or the Final Order, as applicable, and shall be permitted and required to perform their respective obligations in compliance with this Agreement notwithstanding any such objections thereto, unless the relevant order has been stayed by a court of competent jurisdiction.

(b)     Lender shall have received (i) evidence, in form and substance reasonably acceptable to Lender, that Borrowers have made all necessary filings and recordations necessary to provide Lender with a valid, perfected first lien security interest in the Collateral, or (ii) to the extent such filings and recordations cannot be made until the effectiveness of this Agreement, final drafts of such filings and recordations, to be filed or recorded, as applicable, promptly upon the Effective Date; provided that any mortgages required by Lender shall be recorded as promptly as possible by Borrowers following the Effective Date.

(c)     All fees required to be paid on the Closing Date under this Agreement shall have been paid (including, without limitation, the Work Fee).

(d)     All other documents in connection with the transactions contemplated by this Agreement shall have been delivered, executed, or recorded and shall be in form and substance reasonably satisfactory to Lender.

**3.2     <u>Conditions Precedent to all Extensions of Credit.</u>**

The obligation of Lender to make any Advances hereunder (or to extend any other credit hereunder), at any time shall be subject to the satisfaction (or waiver by Lender in its sole discretion) of the following additional conditions precedent (the making of any Advance or other extension of credit by Lender being conclusively deemed to be its satisfaction or waiver of the conditions precedent with respect to such Advance):

(a)     Borrowers shall be in compliance with the conditions precedent set forth in <u>Section 3.1</u> of this Agreement.

(b)     The representations and warranties of Borrowers contained in this Agreement or in the other Loan Documents shall be true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) on and as of the date of such extension of credit, as though made on and as of such date (except to the extent that such representations and warranties relate solely to an earlier date).

(c)     No Default or Event of Default shall have occurred and be continuing on the date of such extension of credit, nor shall either result from the making thereof.

(d)     The Interim Order or the Final Order, as applicable, shall have been entered by the Bankruptcy Court in form and substance satisfactory to Lender in its sole discretion, and shall be in full force and effect and shall not have been modified or amended (unless otherwise approved by the Lender), reversed, stayed or subject to a motion for re-argument or reconsideration, or appealed.

(e)     No injunction, writ, restraining order, or other order of any nature restricting or prohibiting, directly or indirectly, the extending of such credit shall have been issued and remain in force by any Governmental Authority against any Borrower or Lender; and

(f)     No action, proceeding, investigation, regulation or legislation shall have been instituted or threatened before any Governmental Authority to enjoin, restrain or prohibit, or to obtain damages in respect of, or which is related to or arises out of this Agreement or any of the other Loan Documents or the consummation of the transactions contemplated hereby and thereby and which, in Lender's reasonable judgment, would make it inadvisable to consummate the transactions contemplated by this Agreement or any of the other Loan Documents.

### 3.3     **Maturity.**

(a)     This Agreement shall continue in full force and effect until the Maturity Date.  All Obligations, including without limitation the outstanding unpaid principal balance and all accrued and unpaid interest on the Advances shall be due and payable on the Maturity Date.

(b)     Upon at least (10) Business Days' written notice to Lender and payment of the Extension Fee to Lender, Borrower may extend the Stated Maturity Date until September 6, 2020.  The Extension Fee shall be fully earned and payable upon the date Borrowers submit a request to Lender to extend the Stated Maturity Date.

(c)     Notwithstanding anything to the contrary herein, Lender may terminate its obligations to extend additional Advances under this Agreement immediately upon the occurrence and during the continuation of an Event of Default.

### 3.4     **Effect of Maturity.**     On the Maturity Date, the Commitment of Lender to provide any additional credit hereunder shall automatically be terminated and all Obligations immediately shall become due and payable without notice or demand. No termination of the obligations of Lender (other than payment in full of the Obligations and termination of the Commitments) shall relieve or discharge any Borrower of its duties, Obligations, or covenants hereunder or under any other Loan Document and Lender's Liens in the Collateral shall continue to secure the Obligations and shall remain in effect until all Obligations have been paid in full and the Commitments have been terminated. When all of the Obligations have been indefeasibly paid in full in immediately available funds and Lender's obligations to provide additional Advances under the Loan Documents have been terminated, Lender will, at the Borrowers' expense, execute and deliver any termination statements, lien releases, discharges of security interests, and other similar discharge or release documents (and, if applicable, in recordable form) as are reasonably necessary to release, as of record, Lender's Liens and all notices of security interests and Liens previously filed by Lender with respect to the Obligations.

4.     **REPRESENTATIONS AND WARRANTIES.**

In order to induce Lender to enter into this Agreement, each Borrower makes the following representations and warranties to Lender.  The Borrowers further represent that such representations and warranties shall be true, correct, and complete, in all material respects, as of the Closing Date, and shall be true, correct, and complete, in all material respects, as of the date of the making of each Advance (or other extension of credit) made thereafter, as though made on and as of the date of such Advance (or other extension of credit) (except to the extent that such representations and warranties relate solely to an earlier date) and such representations and warranties shall survive the execution and delivery of this Agreement:

4.1     **Due Organization and Qualification.**

(a)     Other than with respect to the Dissolved Borrowers, each Borrower (i) is duly formed and existing and in good standing under the laws of the jurisdiction of its formation, (ii) where the ownership of Collateral requires such qualification, is qualified to do business in any state where the failure to be so qualified could reasonably be expected to result in a Material Adverse Change, and (iii) subject to the Bankruptcy Court's entry of the Interim Order or the Final Order, as applicable, and any limitation under the Bankruptcy Code or other debtor relief law, has all requisite power and authority to own and operate its properties, to carry on its business as now conducted and as proposed to be conducted, to enter into the Loan Documents to which it is a party and to carry out the transactions contemplated thereby.

(b)     Schedule 4.1(b) sets forth the complete and accurate ownership of each Borrower, and of the assets set forth on Schedule 6.4.

4.2     **Due Authorization**.  Subject to the Bankruptcy Court's entry of the Interim Order or Final Order, as applicable, as to each Borrower, the execution, delivery, and performance by such Borrower of the Loan Documents to which it is a party have been duly authorized by all necessary action or pursuant to the Interim Order or the Final Order, as applicable, on the part of such Borrower.

4.3     **Binding Obligations**.  Each Loan Document has been duly executed and delivered by each Borrower that is a party thereto and, subject to the Bankruptcy Court's entry of the Interim Order or Final Order, as applicable, with respect to the Dissolved Borrowers, is the legally valid and binding obligation of such Borrower pursuant to the Final Order, enforceable against such Borrower in accordance with its respective terms, except as enforcement may be limited by equitable principles or by bankruptcy, insolvency, reorganization, moratorium, or similar laws relating to or limiting creditors' rights generally (regardless of whether such enforceability is considered in a proceeding at law or in equity).

4.4     **Existing Prepetition Liens.**  To the best of Borrowers' knowledge, set forth on Schedule 4.4 are all Existing Prepetition Liens.

4.5     **Jurisdiction of Formation; Location of Chief Executive Office; Organizational; Identification Number.**

(a)     The name (within the meaning of Section 9-503 of the UCC) and jurisdiction of formation of each Borrower is set forth on Schedule 4.5 (as such Schedule may be updated from time to time by notice from such Borrower to Lender).

(b)     The chief executive office of each Borrower is located at the address indicated on Schedule 4.5 (as such Schedule may be updated from time to time by notice from such Borrower to Lender).

(c)     The tax identification numbers and organizational identification numbers, if any, of each Borrower are as set forth in that certain letter dated May 15, 2018 provided by Borrowers to Lender.

4.6    **Litigation.**  There are no actions, suits, proceedings, claims or disputes pending or, to the knowledge of Borrowers, threatened or contemplated, at law, in equity, in arbitration or before any Governmental Authority, by or against any Borrower or against any of its properties or revenues that (a) purport to affect or pertain to this Agreement or any other Loan Document, or any of the transactions contemplated hereby, or (b) except as set forth on Schedule 4.6, either individually or in the aggregate, if determined adversely, could reasonably be expected to have a Material Adverse Change.

4.7    **Fraudulent Transfer**. No transfer of property is being made by a Borrower and no obligation is being incurred by a Borrower in connection with the transactions contemplated by this Agreement or the Loan Documents with the intent to hinder, delay or defraud either present or future creditors of any Borrower.

4.8    **Indebtedness.** Set forth on Schedule 4.8 is a true and complete list of all Indebtedness of each Borrower outstanding immediately prior to the Closing Date and such Schedule accurately sets forth the aggregate principal amount of such Indebtedness as of the Closing Date.

4.9    **Payment of Taxes**.  Except as provided on Schedule 4.9, all United States federal, state and other material tax returns and reports of each Borrower required to be filed by any of them with respect to the Collateral have been timely filed, and all taxes due with respect to the period covered by such tax returns and all material assessments, fees and other governmental charges upon any Collateral that are due and payable have been paid when due and payable, other than taxes that are the subject of a Permitted Protest.  With respect to the Collateral, the Borrowers are not aware of any proposed tax assessment against a Borrower with respect to United States federal, state or municipal taxes.

5.    **AFFIRMATIVE COVENANTS.**

Each Borrower covenants and agrees that, until termination of all of the Commitments and payment in full of the Obligations, it shall comply with each of the following:

5.1    **Financial Statements**.  Deliver to Lender:

22

(a)     as soon as available, but in any event within 120 days after the end of the fiscal year of Borrowers, a consolidated balance sheet of Borrowers as at the end of such fiscal year, and the related consolidated statements of income or operations, members' equity and cash flows for such fiscal year, all in reasonable detail and prepared in accordance with GAAP by the Borrowers' regular public accounting firm or another public accounting firm of nationally recognized standing reasonably acceptable to Lender;

(b)     as soon as available, but in any event within 90 days after the end of each fiscal quarter of Borrowers, a consolidated balance sheet of Borrowers as at the end of such fiscal quarter, and the related consolidated statements of income or operations, members' equity and cash flows for such fiscal quarter and for the portion of Borrowers' fiscal year then ended, all in reasonable detail, and certified by Lead Borrower as fairly presenting the financial condition, results of operations, members' equity and cash flows of Borrowers as of the end of such fiscal quarter in accordance with GAAP;

(c)     as soon as available, but in any event within forty-five (45) calendar days after the end of each calendar month, unaudited financial statements of Borrowers consisting of a balance sheet and statements of income, cash flow, retained earnings, and such other statements from time to time reasonably requested by Lender in writing;

(d)     concurrently with the delivery of the financial statements referred to in Sections 5.1(a) and 5.1(b) (commencing with the delivery of the financial statements for the fiscal quarter ended March 31, 2019), a duly completed Compliance Certificate signed by Lead Borrower;

(e)     commencing on the first Friday to occur after the entry of the Interim Order and on the Friday of each week thereafter, a report showing actual cash receipts and disbursements of Borrowers for the preceding Saturday through Friday certified in writing by an Authorized Person of Lead Borrower as being true and accurate in all material respects; and

(f)     any additional reports and/or financial statements reasonably requested by Lender.

**5.2    Reports, Certificates.** Each Borrower shall deliver to Lender (a) promptly upon becoming aware of any material default (other than the filing of the Chapter 11 Case) under any contract to which Borrower is a party, notice of such defaults, (b) promptly upon becoming aware of any pending or threatened litigation, notice of such litigation; (c) promptly upon becoming aware of any material event not covered in clauses (a) or (b) above, notice of such material event; (d) promptly notify Lender upon any offer by a third party to purchase substantially all of the assets of the Borrowers, or to purchase the equity of the Borrowers or to refinance the Loan, (e) at the time of a request for any Advance, a Compliance Certificate.  If requested by Lender, the chief restructuring officer of the Borrowers and the chief financial officer of the Borrowers shall participate in a conference call with Lender (as long as no Event of Default has occurred and is continuing, such call shall be no more often than weekly), following the Petition Date regarding management issues and other matters.

5.3     **Existence.** Except with respect to the Dissolved Borrowers and as otherwise permitted under Section 6.3 or Section 6.4, at all times, each Borrower shall (a) maintain and preserve in full force and effect its existence (including being in good standing in its jurisdiction of formation) and (b) maintain all its rights and franchises, licenses and permits, except where the failure to maintain any such rights and franchises, or licenses and permits, could not reasonably be expected to result in a Material Adverse Change.

5.4     **Maintenance of Properties; Permits.**

(a)     Except where the failure to do so could not be expected to result in a Material Adverse Change, each Borrower shall (i) maintain and preserve the Collateral, that is necessary to the proper conduct of its business in good working order and condition, ordinary wear, tear, and casualty excepted, (ii) other than with respect to the Dissolved Borrowers, comply with the material provisions of all material leases related to the Collateral, so as to prevent the loss or forfeiture thereof, unless such provisions are the subject of a Permitted Protest; and (iii) other than with respect to the Dissolved Borrowers, maintain, comply with and keep in full force and effect its Permits with respect to the Collateral, except as could not be expected to result in a Material Adverse Change. Except for the Dissolved Borrowers and as set forth on Schedule 5.4, each Borrower is in material compliance with, and has, all Permits required for the operation of its business as it relates to the Collateral, and for the execution, delivery and performance by, and enforcement against, such Borrower of each Loan Document. Except for the Dissolved Borrowers as set forth in Schedule 5.4, no Borrower is in material breach of or default under the provisions of any such Permit, nor is there any event, fact, condition or circumstance which, with notice or passage of time or both, would constitute or result in any of the foregoing.

(b)     In the event that any Non-Permitted Lien exists, then within seven (7) Business Days of the written request of the Lender, the relevant Borrowers shall use best efforts to defend the Collateral against such Lien (including seeking to avoid any such Lien) and shall either (i) cause such Lien to be released or (ii) have obtained an order from the Bankruptcy Court declaring such Lien to be subordinated to the Obligations, or invalid, avoided or otherwise unenforceable.

5.5     **Taxes.** Each Borrower shall cause all assessments and taxes imposed, levied, or assessed  after the Petition Date against any Collateral to be paid in full, before delinquency or before the expiration of any extension period.

5.6     **Insurance.** At the relevant Borrower's expense, other than with respect to the Dissolved Borrowers, each Borrower shall maintain insurance with respect to the Collateral in which such Borrower has any right, interest or title, covering loss or damage by fire, theft, explosion, and all other hazards and risks as ordinarily are insured against by other Persons engaged in the same or similar businesses. Other than with respect to the Dissolved Borrowers, each Borrower shall maintain business interruption, general liability, product liability insurance, director's and officer's liability insurance, fiduciary liability insurance, employment practices liability insurance, title insurance as well as insurance against larceny, embezzlement, and criminal misappropriation. All such policies of insurance shall be with responsible and reputable insurance companies and in such amounts as is carried generally in accordance with sound

24

business practice by companies in similar businesses similarly situated and located and in any event in amount, adequacy and scope reasonably satisfactory to Lender. All property insurance policies and title insurance policies covering the Collateral are to be made payable to Lender for the benefit of Lender, in case of loss, pursuant to a standard loss payable endorsement with a standard non-contributory "lender" or "secured party" clause and are to contain such other provisions as Lender may reasonably require to fully protect Lender's interest in the Collateral and to any payments to be made under such policies. All certificates of property and general liability insurance are to be delivered to Lender, with the loss payable (but only in respect of Collateral) and additional insured endorsements in favor of Lender and shall provide for not less than 30 days (10 days in the case of non-payment) prior written notice to Lender of the exercise of any right of cancellation. If any Borrower fails to maintain the insurance required by this Section 5.6, Lender may arrange for such insurance, but at such Borrower's expense and without any responsibility on Lender's part for obtaining the insurance, the solvency of the insurance companies, the adequacy of the coverage, or the collection of claims.  Each relevant Borrower shall give Lender prompt notice of any loss covered by its casualty or business interruption insurance. Upon the occurrence and during the continuance of an Event of Default, Lender shall have the sole right to file claims under any property and general liability insurance policies in respect of the Collateral, to receive, receipt and give acquittance for any payments that may be payable thereunder, and to execute any and all endorsements, receipts, releases, assignments, reassignments or other documents that may be necessary to effect the collection, compromise or settlement of any claims under any such insurance policies.

       **5.7**    **Inspection.**  Each Borrower shall permit Lender and each of its duly authorized representatives or agent to visit any of its properties and inspect any of its Collateral or books and records, to conduct appraisals and valuations, to examine and make copies of its books and records, and to discuss its affairs, finances, and accounts with, and to be advised as to the same by, its officers (including, for the avoidance of doubt, the chief restructuring officer of the Borrowers) and employees at such reasonable times and intervals as Lender may reasonably require and, so long as no Event of Default exists, with reasonable prior notice to the applicable Borrower.

       **5.8**    **Environmental**.  Each Borrower shall:

       (a)    Keep the Collateral owned or operated by any Borrower free of any Environmental Liens,

       (b)    Comply, in all material respects, with all applicable Environmental Laws,

       (c)    Promptly notify Lender of any release of which such Borrower has actual knowledge of a Hazardous Material in any reportable quantity from or onto property owned or operated by any Borrower that could reasonably be expected to result in a Material Adverse Change, and

       (d)    Promptly, but in any event within five (5) Business Days of its receipt thereof, provide Lender with written notice of any of the following: (i) written notice that an Environmental Lien has been filed against any of the Collateral, (ii) commencement of any Environmental Action or written

notice that an Environmental Action will be filed against any Borrower, and (iii) written notice of a violation, citation, or other administrative order from a Governmental Authority.

5.9 **Compliance with Laws.** Each Borrower shall comply with the requirements of all applicable laws, rules, regulations, and orders of any Governmental Authority, other than laws, rules, regulations, and orders the non-compliance with which, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Change.

5.10 **Disclosure Updates.** Each Borrower shall promptly and in no event later than three (3) Business Days after obtaining actual knowledge thereof, notify Lender if any written information, exhibit, or report (other than materials marked as drafts and forward-looking information and projections and information of a general economic nature and general information about such Borrower's industry) furnished to Lender contained, at the time it was furnished, any untrue statement of a material fact or omitted to state any material fact necessary to make the statements contained therein (taken as a whole) not misleading in light of the circumstances in which made. The foregoing to the contrary notwithstanding, any notification pursuant to the foregoing provision will not cure or remedy the effect of the prior untrue statement of a material fact or omission of any material fact nor shall any such notification have the effect of amending or modifying this Agreement or any of the Schedules hereto.

5.11 **Formation of Subsidiaries**. No Borrower may form any direct or indirect Subsidiary or acquire any direct or indirect Subsidiary after the Closing Date without the consent of Lender, in its sole discretion. Any Subsidiary that is formed after the Closing Date shall be considered a Borrower and execute any documentation reasonably requested by Lender.

5.12 **Further Assurances**. At any time upon the reasonable request of Lender, each Borrower shall execute or deliver to Lender any and all financing statements, fixture filings, security agreements, pledges, assignments, endorsements of certificates of title, mortgages, deeds of trust, and all other documents (collectively, the "Additional Documents") that Lender may reasonably request in form and substance reasonably satisfactory to Lender, to create, perfect, and continue perfected or to better perfect Lender's Liens in all the Collateral (whether now owned or hereafter arising or acquired, tangible or intangible, real or personal).

5.13 **Staffing**. Each Borrower shall maintain at all times an appropriate and necessary staff to carry out its business with respect to the Collateral in compliance with all other applicable laws, except where the failure to maintain such staff could not, after taking into account any formal or informal compliance deadline extensions granted by applicable regulatory authorities in effect, reasonably be expected to result in a Material Adverse Change.

6. **NEGATIVE COVENANTS.**

Each Borrower, covenants and agrees that, and without the prior consent of Lender in its sole discretion, until termination of all of the Commitments and payment in full of the Obligations, such Borrower will not do any of the following:

**6.1     Indebtedness.** Except for the Obligations hereunder and as set forth in Schedule 4.8, create, incur, assume, suffer to exist, guarantee, or otherwise become or remain, directly or indirectly, liable with respect to any Indebtedness with respect to the Collateral other than in the Ordinary Course.

**6.2     Liens.** Create, incur, or assume, on or after the date of this Agreement, directly or indirectly, any Lien on or with respect to any of the Collateral, of any kind, whether now owned or hereafter acquired, or any income or profits therefrom, except for Liens (a) created by the Loan Documents, (b) set forth on Schedule 4.4 (to the extent that such Liens do not constitute Non-Permitted Liens) and (c) any other Lien that is the subject of a Permitted Protest.

**6.3     Restrictions on Fundamental Changes.** Except in connection with a plan of reorganization or a Sale or Sales approved by the Bankruptcy Court or otherwise with the prior written consent of Lender, such Borrower shall not:

(a)     Enter into any merger, consolidation, reorganization, or recapitalization, or reclassify its equity interests,

(b)     Except for the Dissolved Borrowers, liquidate, wind up, or dissolve itself (or suffer any liquidation or dissolution), or

(c)     Suspend or close a substantial portion of the business of the Borrowers.

**6.4     Disposal of Assets.** Except for the transfer of Collateral from a Dissolved Borrower to another Borrower, convey, sell, lease, license, assign, transfer, or otherwise dispose of (or enter into an agreement to convey, sell, lease, license, assign, transfer, or otherwise dispose of) any Collateral held by any Borrower, other than in the Ordinary Course; provided that, Borrowers may sell any of the assets set forth on Schedule 6.4 (and, in the event of such sale, Lender agrees to release its Liens on the assets subject to such sale) as long as, other than with respect to any asset for which no Release Price is specified in Schedule 6.4, (a) the purchase price for the relevant asset is at least the amount set forth on Schedule 6.4 and (b) such sale is for all, or substantially all, of such asset.  For the avoidance of doubt, any proceeds of disposed Collateral shall be used to satisfy the Obligations consistent with Section 2.3(d).

**6.5     Change Name.** Change any Borrower's name, state of organization, organizational identity or, to the extent applicable, organizational identification number.

**6.6     Nature of Business.** Make any change in the nature of any Borrower's business or acquire any properties or assets that are not reasonably related to the conduct of such business activities; provided, that the foregoing shall not prevent any Borrower from (i) engaging in any business that is reasonably related or ancillary to its or their business, or (ii) complying with any requirement of the Bankruptcy Code.

**6.7     Prepayments and Amendments**. Change or modify the material terms of any material lease or contract in connection with Collateral or materially alter any Organizational Documents, except, in each case, with the prior written consent of Lender.

**6.8**     **Change of Control.**  Cause, permit, or suffer, directly or indirectly, any Change of Control.

**6.9**     **Accounting Methods.** Modify or change its fiscal year or its method of accounting (other than as may be required to conform to GAAP).

**6.10**     **Transactions with Affiliates.**  Directly or indirectly enter into or permit to exist any transaction with any other Borrower or any Affiliate of any Borrower, except for transfers of assets from a Dissolved Borrower to another Borrower and transactions that are in the Ordinary Course of such Borrower's business, including intercompany transactions among Borrowers and their Affiliates.

**6.11**     **Use of Advances.**  Use the proceeds of the Advances for any purpose other than to pay (i) the Fees and Lender's Expenses, and (ii) such other expenses and fees for the Borrowers' conduct of business and operations and other post-Petition Date expenses, including the fees and expenses of the administration of the Borrowers' Chapter 11 Cases.

**6.12**     **Limitation on Capital Expenditures.**  Make or incur any Capital Expenditure.

**6.13**     **Chapter 11 Case**. Seek, consent or suffer to exist (i) any modification, stay, vacation or amendment to the Interim Order or the Final Order, as applicable; (ii) in connection with the Collateral, a priority claim for any administrative expense or unsecured claim against any Borrower (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of any kind specified in Section 503(b), 506(b) or (c) or 507(b) of the Bankruptcy Code) equal to or superior to the priority claim of Lender in respect to the Collateral; and (iii) any Lien on Collateral having a priority equal or superior to the Liens in favor of Lender in respect of the Obligations, other than as required under a purchase agreement with respect to the good faith deposit thereunder.

**6.14**     **Plan**. Propose and/or support any plan or reorganization that fails to indefeasibly and finally pay in full in cash all Obligations on the effective date of said plan.

**7.**     **INTENTIONALLY OMITTED.**

**8.**     **EVENTS OF DEFAULT.**

**8.1**     **Event of Default.**  Any one or more of the following events shall constitute an event of default following giving of any applicable notice and the expiration of the applicable cure period (each, an "Event of Default") under this Agreement:

     (a)     Any of the Borrowers shall fail to pay any Obligations to the Lender when due, including, but not limited to, the payment of any fees or costs due to the Lender under this Agreement or any Loan Document;

     (b)     Any of the Borrowers shall fail to comply with its obligations under Section 5.4(b), Section 6, Section 9 and/or Section 10.3.

28

(c)     Other than as set forth in any other sub-section of this <u>Section 8.1</u>, any Borrower, as applicable, shall fail to perform, or otherwise breach, any of its respective covenants or obligations contained in this Agreement, which failure or breach shall continue for ten (10) Business Days after the date upon which the relevant Borrower has received a written notice of such failure or breach from the Lender; provided, however, that Lender may, in its sole discretion, extend such ten (10) Business Day period for an additional ten (10) Business Day period if Borrowers are diligently pursuing the cure of same;

(d)     Any representation or warranty made by any Borrower in this Agreement or in any agreement, certificate, instrument or financial statement or other statement delivered to the Lender pursuant to or in connection with this Agreement shall prove to have been incorrect in any material respect when made or deemed made, which failure or breach shall continue for ten (10) Business Days after the date upon which the relevant Borrower has received a written notice of such failure or breach from the Lender; provided, however, that Lender may, in its sole discretion, extend such ten (10) Business Day period for an additional ten (10) Business Day period if Borrowers are diligently pursuing the cure of same;

(e)     Except upon the Lender's prior written request or with the Lender's express prior written consent (and no such consent shall be implied from any other action, inaction, or acquiescence of the Lender), any Borrower shall file a motion with the Bankruptcy Court or any other court with jurisdiction in the matter seeking an order, or an order is otherwise entered, modifying, reversing, revoking, staying, rescinding, vacating, or amending the Final Order or any of the Loan Documents;

(f)     Any Borrower shall file or obtain Bankruptcy Court approval of a disclosure statement for a plan of reorganization that fails to indefeasibly and finally pay in full in cash all Obligations on the effective date of said plan;

(g)     Any Borrower shall file any motion or application, or the Bankruptcy Court allows the motion or application of any other Person, which seeks approval for or allowance of any claim, lien, security interest ranking equal or senior in priority to the claims, liens and security interests granted to the Lender under the Interim Order or the Final Order, as applicable, with respect to the Collateral or any such equal or prior claim, lien, or security interest shall be established in any manner, except, in any case, as expressly permitted under the Interim Order or the Final Order, as applicable;

(h)     The Interim Order or the Final Order, as applicable, shall cease to be in full force and effect from and after the date of entry thereof by the Bankruptcy Court;

(i)     The occurrence of any default or event of default under the Interim Order or the Final Order, as applicable;

(j)     The entry of an order which provides relief from the automatic stay otherwise imposed pursuant to Section 362 of the Bankruptcy Code, which order permits any creditor, other than the Lender, to realize upon, or to exercise any right or remedy with respect to, the Collateral;

(k)　Conversion of the Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code, or dismissal of the Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily and the Obligations are not simultaneously paid in full;

(l)　The Interim Order or the Final Order, as applicable, is modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of Lender (and no such consent shall be implied from any other authorization or acquiescence by Lender);

(m)　A trustee or an examiner with special powers is appointed pursuant to Section 1104 of the Bankruptcy Code;

(n)　A chapter 11 plan is confirmed that does not provide for the payment in full in cash of all Obligations on the effective date thereof, together with releases, exculpations, waivers and indemnifications for the Lender and Lender Related Persons.

(o)　The occurrence of a Change of Control.

**8.2**　**Rights and Remedies.**

(a)　Upon the occurrence and during the continuance of an Event of Default, and notwithstanding section 362 of the Bankruptcy Code and without further order of the Bankruptcy Court or any other court or the initiation of any further proceeding with Borrowers, in addition to any other rights or remedies provided for hereunder or under any other Loan Document (including the Interim Order or the Final Order, as applicable) or by the UCC or any other applicable law, the Lender may do any one or more of the following:

(i)　declare the Obligations, whether evidenced by this Agreement or by any of the other Loan Documents immediately due and payable, whereupon the same shall become and be immediately due and payable, without presentment, demand, protest, or further notice or other requirements of any kind, all of which are hereby expressly waived by Borrowers;

(ii)　terminate Borrowers' ability to access the Facility or use Cash Collateral;

(iii)　upon five (5) days' prior written notice (which period shall be deemed to be reasonable notice) to Borrowers, their lead bankruptcy counsel and the United States Trustee and lead counsel for any creditors' committee, obtain and liquidate all or any personal property of the Borrowers constituting Collateral. If notice of disposition of such Collateral is required by law, ten (10) days prior notice by the Lender to the Borrowers designating the time and place of any public sale or the time after which any private sale or other intended disposition of such Collateral is to be made, shall be deemed to be reasonable notice thereof and shall constitute "authenticated notice of disposition" within the meaning of Section 9-611 of the UCC, and the Borrowers waive any other notice. The Lender may bid for and purchase all or any personal property of the Borrowers constituting Collateral at any public sale.

The Lender may bid and purchase all or any personal property of the Borrowers constituting Collateral at a private sale if the Collateral in question has a readily ascertainable market value.

(iv)     require the applicable Borrower to assemble all of the Collateral constituting personal property without judicial process pursuant to Section 9-609 of the UCC;

(v)     upon 10 days' prior written notice (which period shall be deemed to be reasonable notice) to the Borrowers and their lead bankruptcy counsel and the United States Trustee and lead counsel for any creditors' committee, take possession of all Collateral constituting tangible personal property without judicial process pursuant to Section 9-609 of the UCC; and

(vi)     exercise any of its other rights under the Loan Documents, any rights granted under the Interim Order or Final Order, as applicable, and applicable law.

(b)     If permitted by the Final Order, to the extent an Event of Default occurs as a result of the Borrowers' failure to indefeasibly satisfy the Obligations in full by the Stated Maturity Date, Borrowers waive any right to (a) the five (5) day notice period set forth in Section 8.2(iii) and (b) to challenge (i) whether or not the Maturity Date or an Event of Default has occurred, (ii) Lender's exercise of its rights and remedies against the Collateral, including without limitation, any foreclosure through a state court proceeding, and/or (iii) the applicability of the Default Rate.

**8.3**     **Application of Proceeds upon Event of Default**.  Lender shall apply the cash proceeds actually received from any foreclosure sale, other disposition of the Collateral upon an Event of Default as follows: (i) first, to reasonable attorneys' fees and all expenses (including, but not limited to, court costs, advertising expenses, auctioneer's fees, premiums for any required bonds, auditor's fees, amounts advanced for taxes and other expenses, but excluding attorneys' fees that have been paid as a protective advance pursuant to Section 2.1(f), in which case such fees shall have been added to the Obligations as additional principal) actually incurred by the Lender in attempting to enforce this Agreement or in the prosecution or defense of any action or proceeding related to the subject matter of this Agreement; (ii) second, to the discharge of any accrued but unpaid interest on the Obligations, (iii) third, to the outstanding principal balance of any Obligations, (iv) fourth, to the satisfaction of the other security interests and liens of record which are inferior to the security interest created by this Agreement, in order of their priority; and (v) fifth, to pay any remaining surplus to the Borrower.

**8.4**     **Remedies Cumulative.** The rights and remedies of Lender under this Agreement, the other Loan Documents, and all other agreements shall be cumulative.  Lender shall have all other rights and remedies not inconsistent herewith as provided under the UCC, by law, or in equity. No exercise by Lender of one right or remedy shall be deemed an election, and no waiver by Lender of any Event of Default shall be deemed a continuing waiver. No delay by Lender shall constitute a waiver, election, or acquiescence by it.

**9.      PRIORITY AND COLLATERAL SECURITY**

**9.1      Superpriority Claims; Subordination in favor of Lender Liens.**

(a)      Each Borrower warrants and covenants that, except as otherwise expressly provided in this paragraph, upon the entry of the Interim Order or the Final Order, as applicable, the Obligations of any Borrower under the Loan Documents:

(i)      shall at all times constitute a claim against the Borrowers and their estates in the Chapter 11 Case, which is an administrative expense claim having priority, pursuant to Section 364(c)(1) and 507(b) of the Bankruptcy Code, over any and all allowed administrative expenses, and unsecured claims now existing or hereafter arising, including, without limitation, administrative expenses of the kind specified in Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(b) and (c), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 or 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code (such claim, a "Superpriority Claim").  Such Superpriority Claim shall have recourse to and be payable from all prepetition and postpetition property and assets of Borrowers and their respective estates, all  Collateral and all proceeds thereof, and (i) prepetition commercial tort claims, including claims against the Debtors' current and former directors and officers (if any) and the proceeds thereof; and (ii) any deposit in connection with a proposed sale (whether terminated or otherwise) that becomes property of the Debtors' estates (a "Sale Deposit") subject, however, only to the senior lien rights of a stalking horse purchaser and such stalking horse bid protections as may be approved by the Bankruptcy Court; and

(ii)      shall be secured by valid, enforceable, non-avoidable and perfected Liens on and security interests in favor of the Lender in all Collateral in which any Borrower has any right, title or interest, in accordance with the Required Lien Priority.

(b)      In the event any of the Collateral is transferred to any Borrower, such transfer shall be subject in all respects to the Lender's Liens;

(c)      The Superpriority Claims referred to in this Section 9.1 shall be senior in priority to (i) all claims against any Borrower in the Chapter 11 Case; and (ii) all other Liens on the Collateral as and to the extent described in Section 9.1(a)(i).

**9.2      Grant of Security Interest in the Collateral**.  To secure the payment and performance of the Obligations, each Borrower hereby grants, collaterally pledges and assigns to Lender the following, in each case subject to the Carve-Out:

(a)      In the event that the conditions in Section 2.1(b) are satisfied and pursuant to 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in the Cimarron Property;

(b)      In the event that the conditions in Section 2.1(c) are satisfied and pursuant to 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in the Broadmoor Property;

(c)     pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all Collateral that is not otherwise subject to Existing Prepetition Liens; and

(d)     pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable automatically and fully perfected junior liens on and security interests in all Collateral (other than as set forth in clauses (a) through (c) above).

The Lien priorities set forth above shall be referred to as the "Required Lien Priorities".

**9.3     Representations and Warranties in Connection with Security Interest**. Each Borrower represents and warrants to the Lender as follows:

(a)     Subject to the approval of the Bankruptcy Court with respect to the Dissolved Borrowers, such Borrower has full right and power to grant to the Lender a perfected, security interest and Lien, in accordance with the Required Lien Priority, on such Borrower's respective interests in the Collateral pursuant to this Agreement and the other Loan Documents, upon entry of the Interim Order.

(b)     Upon the execution and delivery of this Agreement, and upon the filing of the necessary financing statements and other appropriate filings or recordations and/or delivery of any necessary certificates, as applicable, upon entry of the Interim Order, the Lender will have a good, valid and perfected Lien and security interest in the Collateral granted by such Borrower, in accordance with the Required Lien Priority, subject to no transfer or other restrictions or Liens of any kind in favor of any other Person.

(c)     As of the Closing Date, no financing statement, mortgage or any other evidence of lien relating to any of the Collateral granted by such Borrower is on file in any public office except those on behalf of the Lender, other than the filings made by the Borrowers' pre-Petition Date lenders as referenced in Schedule 4.4.

(d)     As of the Closing Date, such Borrower is not party or otherwise subject to any agreement, document or instrument that conflicts with this Section 9.3.

**9.4     Covenants with Respect to Collateral**.  As long as any Obligations are outstanding, each Borrower covenants and agrees as follows:

(a)     Such Borrower shall not sell, transfer, give, assign or in any other manner dispose of all or any portion of, or any interest in, any of the Collateral, except to the extent permitted by this Agreement.  Such Borrower shall not permit or suffer to exist any liens or security interests encumbering any of the Collateral, other than the filings made by the Borrowers' pre-Petition Date lenders as referenced in Schedule 4.4.

(b)     Such Borrower shall inform the Lender of any default or event of default under any agreement in connection with the Collateral as soon as practicable upon becoming aware of any such default or event of default, and shall exercise remedies thereunder at the instruction of, or with the prior written consent of, the Lender.

(c)     Except with respect to the Dissolved Borrowers, such Borrower shall not consolidate with or merge with or into any other corporation, or liquidate or dissolve, without the prior written consent of the Lender.  Such Borrower shall not sell all or substantially all of its assets, except in connection with terms of this Agreement or otherwise with the prior written consent of the Lender.

(d)     Such Borrower shall not change the jurisdiction of its formation without the prior written consent of the Lender.  Such Borrower shall not change its name or the location of its principal executive office without giving the Lender thirty (30) days' prior written notice.

(e)     The Collateral shall be kept only at the locations set forth on <u>Schedule 9.4(e)</u> and shall not be moved from such locations without the prior consent of the Lender.

(f)     With respect to any Deposit Account of a Borrower, the relevant Borrower shall cause the depositary institution maintaining such account to enter into a Control Agreement in favor of the Lender.

**9.5     <u>Lender's Ability to Perform Obligations on Behalf of Borrowers with Respect to the Collateral</u>**.  Upon and during the continuance of an Event of Default, Lender shall have the right, but not the obligation, to perform on such Borrower's behalf any or all of such Borrower's obligations under this Agreement with respect to the Collateral, when such obligations are due, at the expense, for the account and at the sole risk of the applicable Borrower.

**9.6     <u>Filing of Financing Statements</u>**.  Each Borrower irrevocably authorizes the Lender to prepare and file financing statements provided for by the UCC, including, without limitation, describing such property as "all assets, whether now owned or hereafter acquired, developed or created" or words of similar effect, to perfect the Lender's security interest in the Collateral, in all jurisdictions in which the Lender believes in its sole opinion that such filing is appropriate.  Each Borrower also irrevocably authorizes the Lender to file such continuation statements and amendments and to take such other action as may be required or appropriate, in either case in Lender's sole judgment, in order to perfect and to continue the perfection of Lender's security interests in the Collateral, unless prohibited by law.

**9.7     <u>No Discharge; Survival of Claims</u>**. Pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Borrowers hereby waive any discharge of the Obligations with respect to any plan of reorganization that shall not provide for the indefeasible payment in full in cash of the Obligations under this Agreement.

10.    **WAIVERS; INDEMNIFICATION.**

10.1    **Demand; Protest; etc.**  To the extent permitted by applicable law or as expressly required pursuant to the terms of this Agreement, each Borrower waives demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, nonpayment at maturity, release, compromise, settlement, extension, or renewal of documents, instruments, chattel paper, and guarantees at any time held by Lender on which such Borrower may in any way be liable.

10.2    **Lender's Liability for Collateral.**  As long as Lender complies with its obligations, if any, under the UCC, Lender shall not in any way or manner be liable or responsible for: (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, warehouseman, bailee, forwarding agency, or other Person.  All risk of loss, damage, or destruction of the Collateral shall be borne by the Borrowers, except any thereof resulting from the fraud, gross negligence, bad faith or willful misconduct of Lender as finally determined by a court of competent jurisdiction.

10.3    **Indemnification.**  Each Borrower shall pay, indemnify, defend, and hold the Lender Related Persons (each, an "Indemnified Person") harmless (to the fullest extent permitted by law) from and against any and all claims, demands, suits, actions, investigations, proceedings, liabilities, fines, costs, penalties, and actual damages, and all reasonable and documented out-of-pocket fees and disbursements of attorneys, experts, or consultants and all other costs and expenses actually incurred in connection therewith or in connection with the enforcement of this indemnification (as and when they are incurred and irrespective of whether suit is brought), at any time asserted against, imposed upon, or incurred by any of them (a) in connection with or as a result of or related to the execution and delivery, enforcement, performance, or administration (including any restructuring or workout with respect hereto) of this Agreement, any of the other Loan Documents, or the transactions contemplated hereby or thereby or the monitoring of the Borrowers' compliance with the terms of the Loan Documents, (b) with respect to any investigation, litigation, or proceeding related to this Agreement, any other Loan Document, or the use of the proceeds of the credit provided hereunder (irrespective of whether any Indemnified Person is a party thereto), or any act, omission, event, or circumstance in any manner related thereto, and (c) in connection with or arising out of any presence or release of Hazardous Materials at, on, under, to or from any Collateral or any Environmental Actions, Environmental Liabilities or Remedial Actions related in any way to any Collateral (each and all of the foregoing, the "Indemnified Liabilities"). The foregoing to the contrary notwithstanding, the Borrowers shall have no obligation to any Indemnified Person under this Section 10.3 with respect to any Indemnified Liability that a court of competent jurisdiction finally determines to have resulted from the fraud, gross negligence, bad faith or willful misconduct of such Indemnified Person or its officers, directors, employees, attorneys, or agents. This provision shall survive the termination of this Agreement and the repayment of the Obligations. If any Indemnified Person makes any payment to any other Indemnified Person with respect to an Indemnified Liability as to which any Borrower was required to indemnify the Indemnified Person receiving such payment, the Indemnified Person making such payment is entitled to be indemnified and reimbursed by such Borrower with respect thereto. **WITHOUT LIMITATION, THE FOREGOING INDEMNITY SHALL APPLY TO EACH**

INDEMNIFIED PERSON WITH RESPECT TO INDEMNIFIED LIABILITIES WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF ANY NEGLIGENT ACT OR OMISSION OF SUCH INDEMNIFIED PERSON OR OF ANY OTHER PERSON.

**11.     NOTICES.**

All notices or demands relating to this Agreement or any other Loan Document shall be in writing and shall be personally delivered or sent by registered or certified mail (postage prepaid, return receipt requested), overnight courier, or electronic mail (at such email addresses as a party may designate in accordance herewith). In the case of notices or demands to any party hereunder or any service of process to any party hereunder, they shall be sent to the respective addresses set forth below:

If to any Borrower:

c/o Force 10 Partners
10100 Venice Boulevard
Culver City, California 90232
Attn:  Jeremy Rosenthal, Chief Restructuring Officer
Email: jrosenthal@force10partners.com

With a copy, which shall not constitute notice to:

Cole Schotz P.C.
301 Commerce Street, Suite 1700
Fort Worth, Texas 76102
Attn: Michael D. Warner
Telephone: (817) 810-5265
Email: mwarner@coleschotz.com

If to Lender:

Warrior Golf Loan Investors, LLC
2148 Jimmy Durante Blvd, Suite B
Del Mar, CA 92014
Attn: Adam Phillips
Telephone: (707) 227-5821
Email: adam.phillips@366development.com

with copies to:

Arent Fox LLP
1301 Avenue of the Americas, 42nd Fl.
New York, NY 10019-6040
Telephone:
Attn: Beth Brownstein
Telephone: (212) 457-5415
Email: Beth.brownstein@arentfox.com

Any party hereto may change the address at which they are to receive notices hereunder, by notice in writing in the foregoing manner given to the other party. All notices or demands sent in accordance with this <u>Section 11,</u> shall be deemed received on the earlier of the date of actual receipt or three (3) Business Days after the deposit thereof in the mail; <u>provided</u>, <u>that</u> (a) notices sent by overnight courier service shall be deemed to have been given when received, and (b) notices by electronic mail shall be deemed received when sent upon confirmation of transmission as evidenced by a delivery receipt or similar electronic mail function. If any notice, disclosure, or report is required to be delivered pursuant to the terms of this Agreement on a day that is not a Business Day, such notice, disclosure, or report shall be deemed to have been required to be delivered on the immediately following Business Day.

## 12.    CHOICE OF LAW AND VENUE; JURY TRIAL WAIVER.

(a)    THE VALIDITY OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS (UNLESS EXPRESSLY PROVIDED TO THE CONTRARY IN ANOTHER LOAN DOCUMENT IN RESPECT OF SUCH OTHER LOAN DOCUMENT), THE CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT HEREOF AND THEREOF, AND THE RIGHTS OF THE PARTIES HERETO AND THERETO WITH RESPECT TO ALL MATTERS ARISING HEREUNDER OR THEREUNDER OR RELATED HERETO OR THERETO SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

(b)    THE PARTIES AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE TRIED AND LITIGATED ONLY IN THE BANKRUPTCY COURT AND, TO THE EXTENT REQUIRED BY APPLICABLE LAW, FEDERAL COURTS LOCATED IN TEXAS; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT ANY SUIT SEEKING ENFORCEMENT AGAINST ANY COLLATERAL OR OTHER PROPERTY MAY BE BROUGHT, AT LENDER'S OPTION, IN THE COURTS OF ANY JURISDICTION WHERE LENDER ELECTS TO BRING SUCH ACTION OR WHERE SUCH COLLATERAL OR OTHER PROPERTY MAY BE FOUND. EACH BORROWER AND LENDER WAIVE, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT EACH MAY HAVE TO ASSERT THE DOCTRINE OF <u>FORUM NON CONVENIENS</u> OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS <u>SECTION 12(b); PROVIDED</u>, <u>FURTHER</u>, <u>HOWEVER</u>, THAT ALL PARTIES HEREBY AGREE THAT THEY HAVE CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT AND THAT THE BANKRUPTCY COURT WILL RETAIN EXCLUSIVE JURSIDICTION WITH RESPECT TO ALL DISPUTES SO LONG AS THE CHAPTER 11 CASE REMAINS PENDING.

(c)    TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BORROWERS AND LENDER HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF ANY OF THE LOAN DOCUMENTS OR ANY OF THE TRANSACTIONS CONTEMPLATED THEREIN, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS. EACH BORROWER AND LENDER REPRESENT THAT EACH SUCH PARTY

HAS REVIEWED THIS WAIVER AND EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, A COPY OF THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**13.** **AMENDMENTS; WAIVERS; SUCCESSORS; INDEMNIFICATION.**

**13.1** **Amendments and Waivers.** No amendment, waiver or other modification of any provision of this Agreement or any other Loan Document, and no consent with respect to any departure by any Borrower therefrom, shall be effective unless the same shall be in writing and signed by Lender and Borrowers that are party thereto and then any such waiver or consent shall be effective, but only in the specific instance and for the specific purpose for which given.

**13.2** **No Waivers; Cumulative Remedies.** No failure by Lender to exercise any right, remedy, or option under this Agreement or any other Loan Document, or delay by Lender in exercising the same, will operate as a waiver thereof. No waiver by Lender will be effective unless it is in writing, and then only to the extent specifically stated. No waiver by Lender on any occasion shall affect or diminish Lender's rights thereafter to require strict performance by Borrowers of any provision of this Agreement. Lender's rights under this Agreement and the other Loan Documents will be cumulative and not exclusive of any other right or remedy that Lender may have.

**13.3** **Successors**. This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided that no Borrower may assign this Agreement or any rights or duties hereunder without Lender's prior written consent and such consent shall not, unless otherwise provided in such consent, release any Borrower from its Obligations. Any assignment by Borrower which is not explicitly permitted hereunder shall be absolutely void *ab initio*. Lender may assign all or part of its rights and duties hereunder without consent from any other party. Lender may assign this Agreement and the other Loan Documents and its rights and duties hereunder and thereunder or assign any Advances or Commitment (in whole or in part) to an Affiliate without notice to or consent of any Borrower.

**14.** **GENERAL PROVISIONS.**

**14.1** **Effectiveness.** This Agreement shall be binding and deemed effective when executed by the Borrowers and Lender.

**14.2** **Section Headings**. Headings and numbers have been set forth herein for convenience only. Unless the contrary is compelled by the context, everything contained in each Section applies equally to this entire Agreement.

**14.3** **Interpretation**. Neither this Agreement nor any uncertainty or ambiguity herein shall be construed against Lender or any Borrower, whether under any rule of construction or otherwise. On the contrary, this Agreement has been reviewed by all parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to accomplish fairly the purposes and intentions of all parties hereto.

**14.4    Severability of Provisions**. Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

**14.5    Debtor-Creditor Relationship.** The relationship between Lender, on the one hand, and each Borrower, on the other hand, is solely that of creditor and debtor, as applicable. Lender does not have (and shall not be deemed to have) any fiduciary relationship or duty to any Borrower arising out of or in connection with the Loan Documents or the transactions contemplated thereby, and there is no agency or joint venture relationship between Lender, on the one hand, and Borrowers, on the other hand, by virtue of any Loan Document or any transaction contemplated therein.

**14.6    Counterparts; Electronic Execution.** This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by facsimile or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by facsimile or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement. The foregoing shall apply to each other Loan Document *mutatis mutandis*.

**14.7    Revival and Reinstatement of Obligations**. If the incurrence or payment of the Obligations by Borrowers or the transfer to Lender of any property should for any reason subsequently be asserted, or declared, to be void or voidable under any state or federal law relating to creditors' rights, including provisions of the Bankruptcy Code relating to fraudulent conveyances, preferences, or other voidable or recoverable payments of money or transfers of property (each, a "Voidable Transfer"), and if Lender is required to repay or restore, in whole or in part, any such Voidable Transfer, or elects to do so upon the reasonable advice of its counsel, then, as to any such Voidable Transfer, or the amount thereof that Lender is required or elects to repay or restore, and as to all reasonable and actual out-of-pocket costs, expenses, and attorneys' fees of Lender related thereto, the liability of Borrowers automatically shall be revived, reinstated, and restored and shall exist as though such Voidable Transfer had never been made.

**14.8    Lender Expenses.** Notwithstanding the Work Fee and subject to Section 2.1(f), the Borrowers agree to pay any and all Lender Expenses (exclusive of those covered by the Work Fee) promptly after written demand therefor by Lender and that such Obligations shall survive payment or satisfaction in full of all other Obligations.

**14.9    Integration.** This Agreement, together with the other Loan Documents, reflects the entire understanding of the parties with respect to the transactions contemplated hereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof.

**15.    JOINT AND SEVERAL LIABILITY**

Each Borrower acknowledges, represents and warrants the following:

**15.1** **Inducement.** Lender has been induced to make the Advances to Borrowers in part based upon the assurances by each Borrower that such Borrower desires that the Advances be honored and enforced as separate obligations of such Borrower, should Lender desire to do so.

**15.2** **Combined Liability**. Notwithstanding the foregoing, the Advances and the other Obligations constitute the joint and several obligations of each and every Borrower, and Lender may at its option enforce the entire amount of the Advances and the other obligations of any Borrower against any one or more Borrowers.

**15.3** **Separate Exercise of Remedies**. Lender may exercise remedies against each Borrower and its property separately, whether or not Lender exercises remedies against any other Borrower or its property. Lender may enforce one or more Borrower's Obligations without enforcing any other Borrower's Obligations. Any failure or inability of Lender to enforce one or more Borrower's Obligations shall not in any way limit Lender's right to enforce the Obligations of any other Borrower. If Lender forecloses or exercises similar remedies on any Collateral, then such foreclosure or similar remedy shall be deemed to reduce the balance of the Advances only to the extent of the cash proceeds actually realized by Lender from such foreclosure or similar remedy or, if applicable, Lender's credit bid at such sale, regardless of the effect of such foreclosure or similar remedy on the Advances secured by such Collateral under the applicable state law.

[Signature pages follow.]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed and delivered as of the date first above written.

<u>**BORROWERS**</u>**:**

**Warrior Golf, LLC**
By:  Warrior Acquisitions, LLC, its Manager

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior ATV Golf, LLC**
By:  Warrior Acquisitions, LLC, its Manager

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Development, LLC**
By:  Warrior Acquisitions, LLC, its Manager

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Management, LLC**
By:  Warrior Acquisitions, LLC, its Manager

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Assets, LLC**
By:  Warrior Acquisitions, LLC, its Manager

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer

**Warrior Golf Venture, LLC**
By:  Warrior Acquisitions, LLC, its Manager

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Premium Properties, LLC**
By:  Warrior Acquisitions, LLC, its Manager

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Acquisitions, LLC**

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Westwind Manor Resort Association, Inc.**

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Custom Golf, Inc.**

By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer

**<u>LENDER</u>:**

**Warrior Golf Loan Investors, LLC**
By:  Serene Investment Management, LLC, its Manager


By:_____
Name: Adam Phillips
Title:  Manager

**EXHIBIT A**

**Form of Compliance Certificate**

Date: _____ , 20__

      This Compliance Certificate (this "Certificate") is given to Warrior Golf Loan Investors, LLC, a California limited liability company (together with its successors and assigns, the "Lender"), by the Borrowers pursuant to Section 5.1 of that certain Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement dated as of March  6, 2019 (as the same may be amended, amended and restated, modified or supplemented, the "Loan Agreement"). Capitalized terms used and not defined herein have the meanings set forth in the Loan Agreement.

      The Borrowers hereby certify that:

      (a)      Borrowers are in compliance with the conditions precedent set forth in Section 3.2 of the Loan Agreement.

      (b)      Borrowers have complied fully and completely with all applicable covenants through the date of the requested Advance as set forth in the Loan Agreement.

      (c)      The representations and warranties of Borrowers contained in the Loan Agreement are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) on and as of the date of such extension of credit, as though made on and as of such date (except to the extent that such representations and warranties relate solely to an earlier date).

      (d)      No Default or Event of Default shall have occurred and be continuing on the requested funding date, nor shall either result from the making thereof.

      (e)      The Interim Order or the Final Order, as applicable, has been entered by the Bankruptcy Court in form and substance satisfactory to Lender in its sole discretion, and remains in full force and effect on the date hereof and has not been, from the time of the entry of such order, modified or amended (unless otherwise approved by the Lender), reversed, stayed or subject to a motion for re-argument or reconsideration, or appealed.

      (f)      No injunction, writ, restraining order, or other order of any nature restricting or prohibiting, directly or indirectly, has been issued by any Governmental Authority against any Borrower or Lender.

(g)     No action, proceeding, investigation, regulation or legislation has been instituted or threatened before any Governmental Authority to enjoin, restrain or prohibit, or to obtain damages in respect of, or which is related to or arises out of the Loan Agreement or any of the other Loan Documents or the consummation of the transactions contemplated thereby.

[*Signature Pages Follow.*]

**IN WITNESS WHEREOF,** Borrowers has caused this Certificate to be executed by the Borrowers this _____ day of _____, 2019.

<div style="margin-left:auto;width:60%">

**Warrior Golf, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior ATV Golf, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Development, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Management, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Assets, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer

</div>

[Signature Page to Compliance Certificate]

**Warrior Golf Venture, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Premium Properties, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Acquisitions, LLC**


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Westwind Manor Resort Association, Inc.**


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Custom Golf, Inc.**


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer

## EXHIBIT B

### Request for Advance

Warrior Golf Loan Investors, LLC          Advance Request No. _____
2148 Jimmy Durante Blvd, Suite B
Del Mar, CA 92014
Attn: Adam Phillips

Ladies and Gentlemen:

The undersigned executes and delivers this Request for Advance ("Request") in connection with the Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement, dated as of May 6, 2019 (as amended, restated, supplemented, replaced, renewed or otherwise modified from time to time, the "Loan Agreement") by and among the Borrowers party thereto and Warrior Golf Loan Investors, LLC as lender (the "Lender"). All capitalized terms used in this Request without definition shall have the same meanings herein as they have in the Loan Agreement.  This Request constitutes a Loan Document.

Pursuant to Section 2.2 of the Loan Agreement, Borrowers hereby request an Advance in the amount of $_____ on _____, 20\_\_ .

Each Borrower hereby represents, warrants to Lender as follows:

1.      As of this date, such Borrower is in compliance with all of the terms and conditions of the Loan Agreement and no default or Event of Default thereunder exists, nor shall result from the making of the Advance requested hereunder.

2.      Such Borrower's representations and warranties set forth in the Loan Agreement, the other Loan Documents and any other related document are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof) on and as of the date hereof, as though made on and as of such date (except to the extent that such representations and warranties relate solely to an earlier date).

3.      As of the date of this Request, the sum of the outstanding principal under the Loan (after giving effect to the Advance and pledge to be made on such date pursuant to this Request) plus the amount requested in any outstanding but unfunded Request for Advances does not violate Section 2.1 of the Loan Agreement.

*[Signature Pages Follow.]*

**BORROWERS**:

**Warrior Golf, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior ATV Golf, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Development, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Management, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Golf Assets, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


[*Signature Pages Continue*]

**Warrior Golf Venture, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Premium Properties, LLC**
By:  Warrior Acquisitions, LLC, its Manager


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Acquisitions, LLC**


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Westwind Manor Resort Association, Inc.**


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer


**Warrior Custom Golf, Inc.**


By:_____
Name: Jeremy Rosenthal
Title:   Chief Restructuring Officer

**Schedule A-1**

**Loan Account**

To be provided.

## Schedule A-2

Authorized Persons

Jeremy Rosenthal

David Cottrell

**Schedule D-1**

Designated Account and Designated Account Bank

| | |
|---|---|
| Name of bank: | Citizens Business Bank |
| Address: | 23046 Avenida De La Carlota STE 100 |
| | Laguna Hills, CA 92653 |
| Co name: | Warrior Custom Golf, Inc |
| Routing #: | 122234149 |
| Acc#: | 031041686 |

## Schedule 4.1(b)

Ownership of Borrowers and Golf Courses Subject to Security Interest

Ownership of Borrowers

Westwind Manor Resort Association, Inc. – 100% Brendan Flaherty

Warrior ATV Golf, LLC - potentially various investors whose equity was intended to be cancelled in exchange for a promissory note.

Warrior Acquisitions, LLC - 100% Brendan Flaherty

Warrior Golf Development, LLC - potentially various investors whose equity was intended to be cancelled in exchange for a promissory note.

Warrior Golf Management, LLC - potentially various investors whose equity was intended to be cancelled in exchange for a promissory note.

Warrior Golf Assets, LLC - potentially various investors whose equity was intended to be cancelled in exchange for a promissory note.

Warrior Golf Venture, LLC - potentially various investors whose equity was intended to be cancelled in exchange for a promissory note.

Warrior Premium Properties, LLC - potentially various investors whose equity was intended to be cancelled in exchange for a promissory note.

Warrior Golf, LLC – 99% Brendan Flaherty, 1% Warrior Custom Golf, Inc.

Warrior Custom Golf, Inc. – 100% Brendan Flaherty

Ownership of Golf Courses

Warrior ATV Golf, LLC

    200 acres of land located on Moreno Valley, California

Warrior Golf Development, LLC

    Marion Oaks Golf Club, Ocala, Florida

Huntington Golf Club, Ocala, Florida

Warrior Golf Management, LLC

Broadmoor Golf Links, Fletcher, North Carolina

Warrior Golf Assets, LLC

Lakota Canyon Ranch Golf Club, New Castle, Colorado

Warrior Golf Venture LLC

The Club at Rio Vista, Rio Vista, California

Bos Landen Golf Club, Pella, IA

Warrior Premium Properties, LLC

Limestone Springs Golf Club, Oneonta, AL

Warrior Golf, LLC

Reems Creek Golf Club, Weaverville, NC

Heddles Hideaway Golf Club, Spartanburg, SC

Cimarron Golf Resort, Cathedral City, CA

Royal St. Augustine Golf Club, St Augustine FL

Asheboro Country Club, Asheboro, NC

Whispering Woods Golf Club, Whispering Pines, NC

Baneberry Golf and Country Club, Baneberry, TN

Wolf Creek Golf Course, Atlanta, GA

King's Creek Golf Club, Springhill, TN

Ole Still Golf Club, Hickory, NC

**Schedule 4.4**

Pre-Petition Date Liens

1.    Liens on real property

| Property/ Debtors | Lender | Principal | Security/Collateral | Balance |
|---|---|---|---|---|
| Broadmoor Golf Links<br><br>(Warrior Golf Management, LLC) | Broadmoor Group, Inc., Albert Ronald Smoak and Zoe Anne Smoak | $2,000,000 | i)    Deed of Trust | $1,300,000 |
| Cimarron Golf Resort<br><br>(Warrior Golf Equities, LLC and Warrior Golf LLC, as borrowers, Warrior Acquisitions, LLC, as guarantor) | Citizen Business Bank | $2,000,000 | i)    Deed of Trust, Assignment of Rents and Hazardous Substances Certificate and Indemnity Agreement;<br><br>ii)    All personal property including but not limited to all equipment, fixtures and other articles of personal property owned by Debtor or attached/affixed to the property located at 67603 30th Ave., Cathedral City, CA 92334; all records of any kind relating to any of the foregoing." as to Warrior Golf, LLC. | $2,000,000 |
| Lakota Canyon Ranch Golf Club<br><br>(Warrior Golf Assets, LLC, Warrior Acquisitions) | ANB Bank | $1,500,000 | i)    Deed of Trust, concerning vacant land, New Castle, Co. 81647<br><br>ii)    Deed of Trust, concerning 1000 Clubhouse Dr., New Castle, CO 81647<br><br>iii)    Collateral Assignment, concerning Colorado River Water Supply Contract No. CW03003, as amended<br><br>iv)    All goods now or in the future affixed or attached to real estate. | $1,500,000 |

| Huntington Golf Club[1]<br><br>Marion Oaks Golf Club<br><br>(Warrior Acquisitions, LLC) | Marion Oaks Country Club Inc. | $625,000 for each property | i)    Mortgage Deed | $509,906 for each |
|---|---|---|---|---|
| Bos Landen Golf Club | Leighton State Bank | $450,000 | Mortgage on the Bos Landen Golf Course and security interest in lease | Approx. $262,2000 as of Petition Date |

2.      See attached chart for additional liens.

---

[1] While the Borrowers are unable to locate copies of the Huntington Golf Club loan or lien documents, upon information and belief, the form of such documents are substantially similar to those for Marion Oaks Golf Club.

**DESCRIPTIVE UCC LIEN CHART FOR**
**CLIENT/MATTER: 59217-0001**
**MARCH 1, 2019**

## WARRIOR GOLF LLC

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| *WARRIOR GOLF LLC* | | | | | | |
| DE SOS | Warrior Golf LLC<br>15 Mason, Suite A<br>Irvine, CA 92618 | Citizens Business Bank<br>23046 Avenida De La Carlota,<br>Ste. 100<br>Laguna Hills, CA 92653 | All personal property including but not limited to all equipment, fixtures and other articles of personal property owned by Debtor, or attached/affixed to the property located at 67603 30th Ave., Cathedral City, CA 92334 (APN's: (1) 677-410-010; (2) 677-420-023; (3) 677-510-017; (4) 677-510-047), together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including w/o limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property; whether any of the foregoing is owned now or acquired later and wherever located; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing. | Original | 12/27/2018 | 2018 9025632 |

## WARRIOR CUSTOM GOLF, INC.

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| *WARRIOR CUSTOM GOLF, INC.* | | | | | | |
| CA SOS | Warrior Custom Golf, Inc.<br>15 Mason<br>Irvine, CA 92618 | DLL Finance LLC<br>PO Box 2000<br>Johnston, IA 50131-0020 | Specific Equipment - (24) Electric Golf Carts. | Original | 03/28/2016 | 16-7516925759 |
| CA SOS | Warrior Custom Golf, Inc.<br>704 Harrison Ferry Road<br>Baneberry, TN 37890 | DLL Finance LLC<br>PO Box 2000<br>Johnston, IA 50131-0020 | Specific Equipment - Cushman Hauler. | Original | 05/16/2016 | 16-7525706554 |

1

## WARRIOR ACQUISTION, LLC

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| *WARRIOR ACQUISITION, LLC* | | | | | | |
| CA SOS | Warrior Acquisitions, LLC 15 Mason Irvine, CA 92618 Additional Debtor: Warrior Golf Equities, LLC 15 Mason Irvine, CA 92618 | PNC Equipment Finance, LLC 995 Dalton Ave Cincinnati, OH 45203 | All equipment and other goods, software, general intangibles, whether owned or existing, acquired or arising, assigned from time to time, including w/o limitation, the property (Electronic Golf Cars), all replacements, substitutions, attachments, accessions, upgrades, parts and additions to such property, all options to purchase such property under such Rental Schedule, all supporting obligations pertaining to the foregoing, and all proceeds of the foregoing (cash and non-cash), including w/o limitation, insurance proceeds and condemnation awards and all proceeds in the form of accounts, chattel paper, general intangibles, goods or instruments. | Original | 11/27/2012 | 12-7339249222 |
| CA SOS | Warrior Acquisitions, LLC 15 Mason Irvine, CA 92618 Additional Debtor: Warrior Golf Equities, LLC 15 Mason Irvine, CA 92618 | PNC Equipment Finance, LLC 995 Dalton Ave Cincinnati, OH 45203 | Continuation to above filing. | Continuation | 10/18/2017 | 1776116428 Orig# 12-7339249222 |
| CA SOS | Warrior Acquisitions, LLC 15 Mason Irvine, CA 92618 Additional Debtor: Warrior Golf Resources, LLC 15 Mason Irvine, CA 92618 | PNC Equipment Finance, LLC 995 Dalton Ave Cincinnati, OH 45203 | All equipment and other goods, software, general intangibles, whether owned or existing, acquired or arising, assigned from time to time, including w/o limitation, the property (Electronic Golf Cars), all replacements, substitutions, attachments, accessions, upgrades, parts and additions to such property, all options to purchase such property under such Rental Schedule, all supporting obligations pertaining to the foregoing, and all proceeds of the foregoing (cash and non-cash), including w/o limitation, insurance proceeds and condemnation awards | Original | 05/28/2014 | 14-7413597495 |

2

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| | | | and all proceeds in the form of accounts, chattel paper, general intangibles, goods or instruments. | | | |
| CA SOS | Warrior Acquisitions, LLC 15 Mason Irvine, CA 92618 | VGM Financial Services, a division of TCF National Bank 1111 W. San Marnan Drive, Suite A2 West Waterloo, IA 50701-8926 | Any and all of Debtor's accounts, money, general intangibles, instruments, documents and chattel paper. | Original | 07/10/2014 | 14-7419456152 |
| CA SOS | Warrior Acquisitions, LLC 15 Mason Irvine, CA 92618  Additional Debtor: Warrior Golf Resources, LLC 5 Quail Crossing Drive Boonville, IN 47601  Quail Crossing Golf Club 5 Quail Crossing Drive Boonville, IN 47601 | EverBank Commercial Finance, Inc. 10 Waterview Blvd., 2nd Fl. Parsippany, NJ 07054 | All items of personal property of Debtor, together with all related software (embedded therein or otherwise), all additions, attachments, accessories and accessions thereto, whether or not furnished by the supplier thereof; and any and all substitutions, replacements or exchanges for any such item of equipment and ay and all insurance and/or other proceeds thereof. | Original | 07/15/2014 | 14-7420221538 |
| CA SOS | Warrior Acquisitions, LLC 15 Mason Irvine, CA 92618 | TCF Equipment Finance, a division of TCF National Bank 1111 W. San Marnan Drive, Suite A2 West Waterloo, IA 50701-8926 | Any and all of Debtor's accounts, money general intangibles, instruments, documents and chattel paper. | Original | 03/08/2016 | 16-7512924885 |
| CA SOS | Warrior Acquisitions, LLC 15 Mason Irvine, CA 92618  Additional Debtor: Warrior Golf Legends, LLC 15 Mason Irvine, CA 92618 | PNC Equipment Finance, LLC 995 Dalton Ave. Cincinnati, OH 45203 | All equipment and other goods, software, general intangibles, whether owned or existing, acquired or arising, assigned from time to time, including w/o limitation, the property (Gas Golf Cars), all replacements, substitutions, attachments, accessions, upgrades, parts and additions to such property, all options to purchase such property under such Rental Schedule, all supporting obligations pertaining to the foregoing, and all proceeds of the foregoing (cash and non-cash), including w/o limitation, insurance proceeds and condemnation awards and all proceeds in the form of accounts, chattel paper, general intangibles, goods or instruments. | Original | 03/28/2016 | 16-7516888313 |
| CA SOS | Warrior Acquisitions, LLC 15 Mason Irvine, CA 92618 | VGM Financial Services, a division of TCF National Bank 1111 W. San Marnan Drive, Suite A2 West Waterloo, IA 50701-8926 | Any and all of Debtor's accounts, money, general intangibles, instruments, documents and chattel paper. | Original | 08/08/2016 | 16-7540377080 |

3

59217/0001-16979078v1

## WARRIOR GOLF DEVELOPMENT, LLC

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| *WARRIOR GOLF DEVELOPMENT, LLC* | | | | | | |
| CA SOS | Warrior Golf Development, LLC<br>15 Mason Lane<br>Irvine, CA 92618 | EverBank Commercial Services, Inc.<br>10 Waterview Boulevard<br>Parsippany, NJ 07054 | (60) Electric Golf Cars with all standard and accessory equipment and all additions, attachments, accessories and accessions thereto, whether or not furnished by the supplier thereof and wherever located; and any and all substitutions, replacements or exchanges for any such item of equipment and any and all insurance and/or other proceeds thereof.<br><br>In the event any Lease Schedule provides for a fair market value purchase option at the end of the lease term, the filing of this financing statement with respect to such Lease Schedule shall be for notice purposes only and the filing thereof shall not be deemed evidence of any intention to create a security interest under the UCC Code. | Original | 11/12/2012 | 12-7336603900 |
| CA SOS | Warrior Golf Development, LLC<br>15 Mason Lane<br>Irvine, CA 92618 | EverBank Commercial Services, Inc.<br>10 Waterview Boulevard<br>Parsippany, NJ 07054 | Continuation to above filing. | Continuation | 08/24/2017 | 17-76024490<br>Orig# 12-7336603900 |
| CA SOS | Warrior Golf Development, LLC<br>15 Mason Lane<br>Irvine, CA 92618 | Yamaha Motor Corporation USA<br>6555 Katella Ave.<br>Cypress, CA 90630 | All golf cars manufactured by Yamaha in which Debtor now or hereafter has rights and all proceeds of Yamaha Golf Cars including, w/o limitation, identifiable cash proceeds and all property of ay type, acquired upon the disposition of, collected on or distributed on account of such collateral. | Original | 11/03/2015 | 15-7493278551 |

## WARRIOR GOLF VENTURE, LLC

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| *WARRIOR GOLF VENTURE, LLC* | | | | | | |
| CA SOS | Warrior Golf Venture, LLC<br>15 Mason Lane<br>Irvine, CA 92618 | VGM Financial Services, a division of TCF Equipment Finance, Inc<br>1111 W. San Marnan Drive, Ste. A2 West | Any and all equipment, fixtures, inventory, goods and software financed by or leased from TCF Equipment Finance, Inc. and that are subject of an agreement between Debtor and TCF Equipment Finance, Inc. of any kind | Original | 05/23/2014 | 14-7413091000 |

4

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| | | Waterloo, IA 50701-8926 | or nature whatsoever, wherever located, whether now owned or hereafter acquired, and all returns, repossessions, substitutions, replacement parts, additions, accessories and accessions thereto and thereof, and all proceeds thereof. Any and all of Debtor's accounts, money, general intangibles, instruments, documents and chattel paper. | | | |
| CA SOS | Warrior Golf Venture, LLC 15 Mason Lane Irvine, CA 92618 | Leighton State Bank 900 Washington Street Pella, IA 50219 | All types and items of property that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the property is or will be located, and all proceeds and the products of the property (including but not limited to, all parts, accessories, repairs, replacements, improvements and accessions to the property): Accounts and Other Rights to Payment: All rights to payment, whether or not earned by performance, including but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor, Inventory: All Inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of services or which are raw materials, work in process, or materials used or consumed in Debtor's business. Equipment: All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create or perfect a valid security interest in all of Debtor's equipment. Instruments and Chattel Paper: All Instruments, including negotiable instruments and promissory notes and other electronic chattel paper; General Intangibles: All general intangibles, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, tradenames, customer lists, permits and franchises, payment intangibles, computer | Original | 05/23/2014 | 14-7413091000 |

5

59217/0001-16979078v1

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| | | | programs and all supporting information provided in connection with a transaction relating to computer programs and the right to use Debtor's name. All documents of title, all payments, accounts, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, conservation reserve payments under any preexisting, current or future/federal or state government program, all investment property, certificated securities, uncertificated securities, security entitlements, deposit accounts, savings, passbook, and similar accounts. | | | |
| CA SOS | Warrior Golf Venture, LLC 15 Mason Lane Irvine, CA 92618 | Leighton State Bank 900 Washington Street Pella, IA 50219 | Continuation to above filing. | Continuation | 01/28/2019 | 19-76941425 Orig# 14-7413145050 |
| CA SOS | Warrior Golf Venture, LLC 15 Mason, Suite A Irvine, CA 92618 | Agricredit Acceptance LLC PO Box 2000 Johnson, IA 50131-0020 | Specific Club Cars, Gas Golf Cars | Original | 06/09/2014 | 14-741508306 |
| CA SOS | Warrior Golf Venture, LLC 15 Mason, Suite A Irvine, CA 92618 | PNC Equipment Finance, LLC 995 Dalton Ave. Cincinnati, OH 45203 | All equipment and other goods, software, general intangibles, whether owned or existing, acquired or arising, assigned from time to time, including w/o limitation, the property (Electric Golf Cars), all replacements, substitutions, attachments, accessions, upgrades, parts and additions to such property, all options to purchase such property under such Rental Schedule, all supporting obligations pertaining to the foregoing, and all proceeds of the foregoing (cash and non-cash), including w/o limitation, insurance proceeds and condemnation awards and all proceeds in the form of accounts, chattel paper, general intangibles, goods or instruments. | Original | 07/07/2014 | 14-741908236 |
| CA SOS | Warrior Golf Venture, LLC 15 Mason, Suite A Irvine, CA 92618 | VGM Financial Services, a division of TCF Equipment Finance, Inc 1111 W. San Marnan Drive, Ste. A2 West Waterloo, IA 50701-8926 | Any and all equipment, fixtures, inventory, goods and software financed by or leased from TCF Equipment Finance, Inc. and that are subject of an agreement between Debtor and TCF Equipment Finance, of any kind or nature whatsoever, wherever located, whether now owned or hereafter acquired, and all returns, repossessions, substitutions, replacement parts, additions, accessories and accessions thereto and thereof, and all proceeds thereof. | Original | 07/10/2014 | 14-7419449669 |

6

59217/0001-16979078v1

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| CA SOS | Warrior Golf Venture, LLC<br>15 Mason, Suite A<br>Irvine, CA 92618 | Agricredit Acceptance LLC<br>PO Box 2000<br>Johnston, IA 50131-0020 | Specific equipment – Mowers. | Original | 11/07/2014 | 14-7435874912 |
| CA SOS | Warrior Golf Venture, LLC<br>15 Mason, Suite A<br>Irvine, CA 92618 | VGM Financial Services, a division of TCF Equipment Finance, Inc<br>1111 W. San Marnan Drive, Ste. A2 West<br>Waterloo, IA 50701-8926 | Any and all equipment, fixtures, inventory, goods and software financed by or leased from TCF Equipment Finance, Inc. and that are subject of an agreement between Debtor and TCF Equipment Finance, of any kind or nature whatsoever, wherever located, whether now owned or hereafter acquired, and all returns, repossessions, substitutions, replacement parts, additions, accessories and accessions thereto and thereof, and all proceeds thereof. | Original | 11/25/2014 | 14-7438046219 |
| CA SOS | Warrior Golf Venture, LLC<br>15 Mason, Suite A<br>Irvine, CA 92618 | Agricredit Acceptance LLC<br>PO Box 2000<br>Johnston, IA 50131-0020 | Specific equipment – Toro Bunker Rake. | Original | 08/07/2015 | 15-7479155690 |
| CA SOS | Warrior Golf Venture, LLC<br>15 Mason, Suite A<br>Irvine, CA 92618 | DLL Finance LLC<br>PO Box 2000<br>Johnston, IA 50131-0020 | Specific Gas Golf Car. | Original | 04/03/2017 | 17-7578409220 |
| CA SOS | Warrior Golf Venture, LLC<br>15 Mason, Suite A<br>Irvine, CA 92618 | VGM Financial Services, a division of TCF Equipment Finance, Inc<br>1111 W. San Marnan Drive, Ste. A2 West<br>Waterloo, IA 50701-8926 | Any and all equipment, fixtures, inventory, goods and software financed by or leased from TCF Equipment Finance, Inc. and that are subject of an agreement between Debtor and TCF Equipment Finance, of any kind or nature whatsoever, wherever located, whether now owned or hereafter acquired, and all returns, repossessions, substitutions, replacement parts, additions, accessories and accessions thereto and thereof, and all proceeds thereof. | Original | 12/22/2017 | 17-7624128078 |
| CA SOS | Warrior Golf Venture, LLC<br>15 Mason, Suite A<br>Irvine, CA 92618 | PNC Equipment Finance, LLC (USD)<br>995 Dalton Ave.<br>Cincinnati, OH 45203 | All equipment and other goods, software, general intangibles, whether owned or existing, acquired or arising, all replacements, substitutions, attachments, accessions, upgrades, parts and additions to such property, all options to purchase such property, all supporting obligations pertaining to the foregoing, and all proceeds of the foregoing (cash and non-cash), including w/o limitation, insurance proceeds and condemnation awards and all proceeds in the form of accounts, chattel paper, general intangibles, goods or instruments – Elite Battery Lithium Golf Cars. | Original | 09/12/2018 | 18-7668202909 |

**WARRIOR GOLF MANAGEMENT, LLC**

7

59217/000-1-6979078v1

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| *WARRIOR GOLF MANAGEMENT, LLC* | | | | | | |
| CA SOS | Warrior Golf Management, LLC<br>15 Mason<br>Irvine, CA 92618 | TCF Equipment Finance, a division of TCF National Bank<br>1111 W. San Marnan Drive, Ste. A2 West<br>Waterloo, IA 50701-8926 | Any and all equipment, fixtures, inventory, goods and software financed by or leased from TCF Equipment Finance, Inc. and that are subject of an agreement between Debtor and TCF Equipment Finance, Inc. of any kind or nature whatsoever, wherever located, whether now owned or hereafter acquired, and all returns, repossessions, substitutions, replacement parts, additions, accessories and accessions thereto and thereof, and all proceeds thereof. | Original | 04/01/2015 | 15-7457607608 |
| CA SOS | Warrior Golf Management, LLC<br>15 Mason<br>Irvine, CA 92618 | Yamaha Motor Finance Corp.<br>USA<br>6555 Katella Ave.<br>Cypress, CA 90630 | All golf cars manufactured, owned, financed or distributed by Yamaha, together with all accessories and accessions thereto (including any YamaTrack related equipment) in which debtor now or hereafter has rights, title or interest, and all proceeds of the foregoing, including w/o limitation, identifiable cash proceeds and all property of any type, acquired upon the disposition of, collected on or distributed on account of such collateral. | Original | 04/04/2017 | 17-7578730580 |
| CA SOS | Warrior Golf Management, LLC<br>15 Mason<br>Irvine, CA 92618 | DLL Finance LLC<br>PO Box 2000<br>Johnston, IA 50131-0020 | Toro, Procore, Core Processor. | Original | 06/26/2017 | 17-7592397919 |
| CA SOS | Warrior Golf Management, LLC<br>15 Mason<br>Irvine, CA 92618 | Yamaha Motor Finance Corp.<br>USA<br>6555 Katella Ave.<br>Cypress, CA 90630 | All golf cars manufactured, owned, financed or distributed by Yamaha, together with all accessories and accessions thereto (including any YamaTrack related equipment) in which debtor now or hereafter has rights, title or interest, and all proceeds of the foregoing, including w/o limitation, identifiable cash proceeds and all property of any type, acquired upon the disposition of, collected on or distributed on account of such collateral. Debtor agrees not to affix or otherwise attach any accessory to any golf cart to any property of any person, including Debtor, in a manner which might result in (i) such accessory becoming an accession to or fixture of such property, or (ii) otherwise creating a right of such person in such accessory. | Original | 02/20/2018 | 18-7634160501 |

**WARRIOR PREMIUM PROPERTIES, LLC**

8

| JURISDICTION | DEBTOR | SECURED PARTY | COLLATERAL | TYPE OF FILING | FILING DATE | FILING NUMBER |
|---|---|---|---|---|---|---|
| **_WARRIOR PREMIUM PROPERTIES, LLC_** | | | | | | |
| CA SOS | Warrior Premium Properties, LLC 15 Mason Irvine, CA 92618 | Wells Fargo Financial Leasing, Inc. 800 Walnut Street MAC N0005-044 Des Moines, IA 50309 | All equipment heretofore, now or hereafter leased or financed together with all parts, accessories, attachments, substitutions, additions thereto and replacements thereof, now or hereafter installed in, affixed to, or used in conjunction therewith and the proceeds thereof with all periodic payments, insurance proceeds, other proceeds and payments due, and to become due, arising from or relating to said Equipment. | Original | 09/26/2014 | 14-7430110485 |
| CA SOS | Warrior Premium Properties, LLC 15 Mason Irvine, CA 92618 | Warrior Premium Properties, LLC 15 Mason Irvine, CA 92618 | Specific Equipment – Club Car/Electric and Gas Golf Cars. | Original | 10/03/2014 | 14-7431209243 |
| CA SOS | Warrior Premium Properties, LLC 15 Mason Irvine, CA 92618 | Deere Credit, Inc. 6400 NW 86th St. Johnston, IA 50131 | All of Debtor's present and future goods, including equipment and inventory, financed or leased together with (i) all attachments, accessories, components, repairs and improvements (2) all accounts, general intangibles, contract rights and chattel paper relating thereto, and (3) all proceeds, including, w/o limitation, insurance sale, lease and rental proceeds and proceeds of proceeds. | Original | 10/16/2014 | 14-7432641709 |
| CA SOS | Warrior Premium Properties, LLC 15 Mason Irvine, CA 92618 | Wells Fargo Financial Leasing, Inc. 800 Walnut Street MAC N0005-044 Des Moines, IA 50309 | All equipment heretofore, now or hereafter leased or financed together with all parts, accessories, attachments, substitutions, additions thereto and replacements thereof, now or hereafter installed in, affixed to, or used in conjunction therewith and the proceeds thereof with all periodic payments, insurance proceeds, other proceeds and payments due, and to become due, arising from or relating to said Equipment. | Original | 08/11/2015 | 15-7479515650 |
| CA SOS | Warrior Premium Properties, LLC 15 Mason Irvine, CA 92618 | DLL Finance LLC PO Box 2000 Johnston, IA 50131-0020 | Specific Equipment – Electric golf cars, Ranger Picker. | Original | 05/09/2016 | 16-7524369780 |

9

59217/0001-16979078v1

## Schedule 4.5

Legal Names, Jurisdictions, Chief Executive Office

Westwind Manor Resort Association, Inc. , a Texas corporation

Warrior ATV Golf, LLC , a California limited liability company

Warrior Acquisitions, LLC , a California limited liability company

Warrior Golf Development, LLC , a California limited liability company

Warrior Golf Management, LLC , a California limited liability company

Warrior Golf Assets, LLC, a California limited liability company

Warrior Golf Venture, LLC, a California limited liability company

Warrior Premium Properties, LLC, a California limited liability company

Warrior Golf, LLC , a Delaware limited liability company

Warrior Custom Golf, Inc. , a California corporation


Chief Executive Office:  15 Mason, Suite A, Irvine, California 92618

## Schedule 4.6

Litigation

Cecil Mellinger v. Warrior Custom Golf, Inc., Warrior Acquisitions, LLC, Warrior Golf, LLC, a California Limited Liability Company and Warrior Golf, LLC, a Delaware Limited Liability Company, Case No. 2018-CA-5129 pending in the Twelfth Judicial Circuit Court in and for Manatee County, Florida

## Schedule 4.8

Existing Indebtedness

1.   See Schedule 4.4 with respect to outstanding mortgage loans.

2.   Indebtedness owed to creditors identified on the chart attached to Schedule 4.4.

3.   See attached spreadsheets for amounts due noteholders.

| Row Labels | Sum of Amount | TYPE |
|---|---|---|
| Raymond J. Kiefer | 1,220,019.38 | NOTE |
| Mark & Linda Price | 1,054,119.12 | NOTE |
| Donald P Grzankowski | 871,100.61 | NOTE |
| A and O Family, LLC | 703,773.14 | NOTE |
| Equity Trust Custodian | 617,934.22 | NOTE |
| Richard C Klamer Living Trust | 558,462.33 | NOTE |
| Mark Bauman | 550,000.00 | NOTE |
| Thomas J Hilty Jr | 465,324.60 | NOTE |
| R.E. Alexander | 441,845.59 | NOTE |
| Gregory A. Caretto | 440,993.55 | NOTE |
| A and O Family LLC | 417,871.11 | NOTE |
| Dr. Susan Winchell | 400,000.00 | NOTE |
| John & Carla Synatschk | 392,691.39 | NOTE |
| Karen K. Parrish Trust Deed Dated 12-16-C | 388,923.85 | NOTE |
| James L. Olsen Revocable Trust | 382,797.16 | NOTE |
| Dan Garrison | 350,000.00 | NOTE |
| Thomas Adler | 344,037.84 | NOTE |
| Warrior Acquisitions | 338,381.48 | NOTE |
| Equity Trust, Custodian | 329,065.02 | NOTE |
| Thomas Mark & Diane Johnston | 325,874.89 | NOTE |
| William Odell TTEE & Ella Odell TTEE | 323,821.66 | NOTE |
| Elliot Family Trust Feb 11, 2011 | 301,156.64 | NOTE |
| Willard P. Heddles Trust | 276,888.14 | NOTE |
| IRA Resources, Inc | 275,024.04 | NOTE |
| BMF Properties, LLC | 271,851.68 | AP |
| Cecil Mellinger | 255,126.83 | NOTE |
| Mark C. Bauman | 252,547.72 | NOTE |
| John Synatschk | 250,000.00 | NOTE |
| CJ & WM Reed Family 1986 Revocable Tru | 238,431.25 | NOTE |
| David Walker | 232,223.54 | NOTE |
| Ron Stemen | 227,937.76 | NOTE |
| ColeyDocter Inc. | 226,732.96 | AP |
| Diane J. Luoto | 223,481.76 | NOTE |
| Donald Grzankowski | 200,000.00 | NOTE |
| Robert Elliott | 200,000.00 | NOTE |
| Wilfred M. Luoto | 200,000.00 | NOTE |
| Susan A Winchell | 196,503.10 | NOTE |
| Equity Trust, FBO Jeffrey Bibler 180381 | 190,562.41 | NOTE |
| Leonard J. Kuczynski | 182,607.63 | NOTE |
| The Phillip C Shoaf Trust | 172,748.14 | NOTE |
| The Mintz Family Trust | 169,731.75 | NOTE |
| Elizabeth Ann Harlow | 165,602.57 | NOTE |
| Erwin L Cooper | 161,972.51 | NOTE |
| Roger & Rosemary Nelson | 150,888.77 | NOTE |

| | | |
|---|---:|---|
| Don Copus | 150,000.00 | NOTE |
| Gregory Caretto | 150,000.00 | NOTE |
| Charles E. Huss | 141,435.33 | NOTE |
| Ross Oliver | 139,588.88 | NOTE |
| William J Sherman | 139,579.40 | NOTE |
| Kathy Garcia | 139,469.57 | NOTE |
| Wilburn L. Blakely | 138,107.77 | NOTE |
| Collins Family Revocable Trust | 138,011.54 | NOTE |
| A & O Family, LLC | 137,401.13 | NOTE |
| Lowell Bowen | 137,129.18 | NOTE |
| Robert D. Diller Trust 8-4-1999 | 133,109.21 | NOTE |
| Clyde Nicholas Martin | 130,139.12 | NOTE |
| Hayes Grandchildren Trust | 128,074.09 | NOTE |
| Joseph C Thieman | 127,476.92 | NOTE |
| Wayne Cross | 115,843.15 | NOTE |
| Mark K. O'Brien | 115,341.79 | NOTE |
| Kenneth Freeman | 114,219.13 | NOTE |
| Darhap FBO Charles Preston IRA | 113,189.76 | NOTE |
| Virgil Ralph Cole Jr | 111,999.25 | NOTE |
| Donald & Linda Copus | 111,284.22 | NOTE |
| James A. Roberts | 109,893.71 | NOTE |
| Donald & Joan Rickman Revocable Trust | 108,863.19 | NOTE |
| Richard E Atgilbers | 108,289.04 | NOTE |
| Top Ranking Co Ltd.-Summitt Intl Ltd | 108,008.00 | AP |
| Brenda Severson | 105,425.74 | NOTE |
| Theresa M. Hill | 103,050.85 | NOTE |
| Dale C. Stell | 101,852.19 | NOTE |
| Charles Reed | 100,000.00 | NOTE |
| Justin Roth | 100,000.00 | NOTE |
| Roy Thomas | 100,000.00 | NOTE |
| Thomas Mark Johnston | 100,000.00 | NOTE |
| Thomas William Diller | 100,000.00 | NOTE |
| Cecil W Mellinger | 99,447.51 | NOTE |
| Carl W. Dufendach Trust | 99,069.84 | NOTE |
| Henri J. Aspen Trust | 98,833.51 | NOTE |
| Dr. Anthony Ivankovich | 98,209.45 | NOTE |
| Roy A Thomas | 97,315.05 | NOTE |
| Willard P Heddles Trust | 95,390.29 | NOTE |
| Daniel Carteaux | 95,207.20 | NOTE |
| Richard Winchell | 94,836.35 | NOTE |
| Nino Crisafulli Survivor's Trust | 93,734.05 | NOTE |
| The Philip C Shoaf Trust | 93,567.01 | NOTE |
| John Yackle | 90,573.80 | NOTE |
| Justin L Roth | 89,954.59 | NOTE |
| Equity Trust FBO David M Halleck 17276 | 89,599.40 | NOTE |
| Boyce Bridges | 86,439.06 | NOTE |
| Target Speciality Products | 85,980.36 | AP |

| | | |
|---|---:|---|
| Equity Trust FBO Richard Foreman 18709( | 85,365.85 | NOTE |
| Mary Ann Pierce | 82,930.90 | NOTE |
| Jerry Baird | 82,650.45 | NOTE |
| Christina Goetz | 81,502.44 | NOTE |
| IRA Resources, Inc FBO John E. Skoglund | 81,423.79 | NOTE |
| William Hanneman Trustee for the Success | 80,825.82 | NOTE |
| Anthony Ivankovich | 80,688.45 | NOTE |
| Robert Marinaro Jr | 80,214.06 | NOTE |
| Frank J Granger | 80,076.91 | NOTE |
| Julia Butler | 78,906.40 | NOTE |
| Pro Hon International Ltd | 77,890.00 | AP |
| Kenneth A. Roberts | 77,294.34 | NOTE |
| Dr. Susan A. Winchell | 77,241.78 | NOTE |
| John McCabe | 75,000.00 | NOTE |
| Jordan Trust April 14, 1994 | 70,856.08 | NOTE |
| David J & Opal J Eason Living Trust | 68,413.70 | NOTE |
| William T. Hayes | 67,919.88 | NOTE |
| Cecil W. Mellinger | 67,778.30 | NOTE |
| Coachella Valley Water District | 67,315.35 | AP |
| Tim & Kathy Alderson | 66,758.28 | NOTE |
| Rev. Barry M. & Jane D. Walker | 66,705.70 | NOTE |
| Patricia Reeves Living Trust | 66,252.12 | NOTE |
| Patricia Byrne | 65,016.38 | NOTE |
| Jeffrey W Denner | 63,823.58 | NOTE |
| Equity Trust FBO David Hillard 171558 | 63,814.98 | NOTE |
| Erroll C. Sult | 63,628.97 | NOTE |
| Theresa M Hill | 63,008.10 | NOTE |
| David G. Young | 62,972.95 | NOTE |
| JJM Golf Folly L/P | 62,794.84 | NOTE |
| James Allen Lacy | 61,854.19 | NOTE |
| Bruce Thake | 60,842.29 | NOTE |
| Charles White | 60,794.77 | NOTE |
| Robert W Lee | 60,559.23 | NOTE |
| Steve Dietrich | 59,818.52 | NOTE |
| Jennifer T Lupinacci | 59,430.12 | NOTE |
| Richard H Hillard | 59,215.23 | NOTE |
| James A. Depue Trust | 58,386.53 | NOTE |
| Anthem Blue Cross | 57,420.14 | AP |
| Howard Charles Brooks | 56,325.46 | NOTE |
| Karen O'Hara Revocable Trust | 55,656.20 | NOTE |
| Donald Hayes | 55,074.63 | NOTE |
| IRA Resources Inc | 54,833.78 | NOTE |
| Bruce Barbour Trust | 54,282.53 | NOTE |
| CE Alexander Trst TTEE Dtd 1-27-1992 | 54,282.53 | NOTE |
| 1995 Mihalak Family Trust | 54,271.53 | NOTE |
| Karen K Parrish Trust Deed Dated 12-16-0 | 53,759.64 | NOTE |
| Thomas & Ginger Grillo | 53,759.64 | NOTE |

| | | |
|---|---|---|
| William T Newell | 53,495.86 | NOTE |
| James & Georgann Butler | 52,620.47 | NOTE |
| Osbaldo A. Amparan | 52,458.08 | NOTE |
| Jamel B Weatherspoon | 51,985.16 | NOTE |
| Daryl W Weatherspoon | 51,948.51 | NOTE |
| Donald L & Jane A. Wikoff | 51,682.35 | NOTE |
| Peter M. LaPiana | 51,620.44 | NOTE |
| D. Brach & F. O'Doherty Brach Fam Trust | 51,437.68 | NOTE |
| Equity Trust FBO Susan Winchell 2003349 | 51,219.51 | NOTE |
| Charles Lockhart lll | 50,580.09 | NOTE |
| Jeffry M & Karolyn K Newsom Trust | 50,132.29 | NOTE |
| Carl Green | 50,000.00 | NOTE |
| Greg Dixon | 50,000.00 | NOTE |
| James Pickus | 50,000.00 | NOTE |
| Jim Depue | 50,000.00 | NOTE |
| Leonard Kuczynski | 50,000.00 | NOTE |
| Robert Lee | 50,000.00 | NOTE |
| Tim O'Sullivan | 50,000.00 | NOTE |
| William "Rick" Johnson | 50,000.00 | NOTE |
| Richard R Souviron | 49,874.33 | NOTE |
| John J. McCabe Living Trust 9/30/08 | 49,795.44 | NOTE |
| Counts Trust dtd July 2, 1999 | 49,100.90 | NOTE |
| IRA Resources, Inc -FBO Ronald Meade | 48,854.27 | NOTE |
| Equity Trust, FBO David Ballard 184667 | 48,600.17 | NOTE |
| Charles F. Hutchins | 47,905.99 | NOTE |
| The Riblet Revocable Living Trust | 47,531.18 | NOTE |
| James O & Cindy E Heiting | 47,473.66 | NOTE |
| Geraldine Fuduric | 47,125.88 | NOTE |
| IRA Plus Southwest  FBO D.Boone TC0034 | 47,016.73 | NOTE |
| Charles W. Gobat | 45,495.56 | NOTE |
| Equity Trust FBO John Callan 185600 | 45,185.53 | NOTE |
| David Reh | 45,061.14 | NOTE |
| DLL Finance LLC | 45,056.34 | AP |
| George Westby | 44,916.29 | NOTE |
| Donald C & Joan B Rickman Revoc Trust | 44,799.70 | NOTE |
| Equity Trust FBO Jay E Athy | 44,799.70 | NOTE |
| Beverly Baetge | 44,799.70 | NOTE |
| Ronald Riopelle | 44,454.38 | NOTE |
| Joseph Terry Thomas | 44,404.54 | NOTE |
| David Thomas Wolcott RevocableTrust | 44,198.31 | NOTE |
| Last Will & Testament of Calvin Hogue | 43,898.03 | NOTE |
| Lonnie D Lowery | 43,868.84 | NOTE |
| Brayman Family Revocable Trust | 43,767.54 | NOTE |
| Elaine Wood | 43,694.81 | NOTE |
| Roy L & Terry D Schubert | 43,658.40 | NOTE |
| Thomas L Handy | 43,449.63 | NOTE |
| IRA Resources, Inc. -FBO Joseph R Bleau | 43,426.02 | NOTE |

| | | |
|---|---|---|
| James O. & Cindy E. Heiting | 43,426.02 | NOTE |
| Sterling Trust FBO Jeffrey Kronson | 43,426.02 | NOTE |
| Equity Trust, FBO David B. Ballard 184667 | 42,937.85 | NOTE |
| Kenneth Bailey & Allen Weinbrecht | 42,741.96 | NOTE |
| Walter C Hunt | 41,971.84 | NOTE |
| David Ballard | 41,870.67 | NOTE |
| Kenneth & Lila Crew | 41,798.25 | NOTE |
| Robert Sanders | 41,624.90 | NOTE |
| James R Johnson | 41,538.47 | NOTE |
| Equity Trust, FBO Donald Grzankowski | 41,436.46 | NOTE |
| Carol Strader | 41,379.27 | NOTE |
| Gregg Armstrong Revenue Commissioner | 41,052.01 | AP |
| Sterling Trust FBO Philip C. Shoaf | 40,832.09 | NOTE |
| Vicky Chandler | 40,731.22 | NOTE |
| Sherry Queen | 40,686.42 | NOTE |
| Terry Mcknight | 40,587.33 | NOTE |
| Calvin E Bain | 40,507.54 | NOTE |
| Equity Trust, Custodian FBO | 40,300.06 | NOTE |
| Equity Trust, FBO Mark Price 181248 | 40,300.06 | NOTE |
| Ronald S Metsger | 40,166.13 | NOTE |
| Robert P Crow Jr & Kathy Sears | 39,286.19 | NOTE |
| Darcy or Peter Maglio | 39,014.66 | NOTE |
| Ken Vanderbosch | 39,014.66 | NOTE |
| NTD & CO FBO Marvin Shapiro | 39,014.66 | NOTE |
| Gregory D Dixon | 38,956.25 | NOTE |
| IRA Resources Inc, FBO K. A. Cutt 35-3634 | 37,997.77 | NOTE |
| Gale & Terra Christensen | 37,772.03 | NOTE |
| Equity Trust, FBO Donald Harmon 183365 | 37,743.23 | NOTE |
| Benjamin S & Eugene Oliva | 37,435.94 | NOTE |
| J. Yale Hechtman | 37,277.03 | NOTE |
| Richard J Miller | 37,126.75 | NOTE |
| Federal Express | 36,942.53 | AP |
| Ricky A Falaschetti | 36,766.05 | NOTE |
| Albert Ray Biggs | 36,609.52 | NOTE |
| Vernon S. Dixon | 36,324.29 | NOTE |
| The Robert Charles Cowley Rev Trust | 36,300.68 | NOTE |
| Thomas McGraw | 36,163.25 | NOTE |
| Gostar Sporting Goods | 36,120.00 | AP |
| Doug & Jana Burkholder | 35,977.67 | NOTE |
| Equity Trust FBO Lloyd Mauldin 171093 | 35,839.76 | NOTE |
| Robert C. McCulley | 35,839.76 | NOTE |
| Everett C. Melius Jr. | 35,786.77 | NOTE |
| George & Stacy Davis | 35,281.21 | NOTE |
| Jeremy R Stuart | 35,093.07 | NOTE |
| Kevin R. Richards | 34,899.58 | NOTE |
| J. Daniel Garrison | 34,834.36 | NOTE |
| Pamela J. Barbato | 34,830.79 | NOTE |

| | | |
|---|---|---|
| Roger A Nelson | 34,627.12 | NOTE |
| Equity Trust, FBO David A Brink 156388 | 34,544.49 | NOTE |
| 2007 Buendia Family Revocable Trust | 34,364.87 | NOTE |
| Equity Trust, FBO Stephen Lund 187607 | 34,146.34 | NOTE |
| Equity Trust, FBO Deborah Anders 183999 | 34,050.00 | NOTE |
| PNC Equipment Finance | 34,044.00 | AP |
| James Richard Scott | 33,959.94 | NOTE |
| South Carolina Department of Revenue | 33,720.92 | AP |
| David Michael Upton | 33,583.38 | NOTE |
| Equity Trust, FBO Linda Price | 33,583.38 | NOTE |
| IRA Resources  FBO Fred Downs 35-35670 | 33,583.38 | NOTE |
| IRA Resources, FBO Thomas Fleming 3398 | 33,583.38 | NOTE |
| Ronny Kershner | 33,341.63 | NOTE |
| Vincent D Hamilton | 33,325.96 | NOTE |
| Kenneth or Lila Crew | 33,309.39 | NOTE |
| James Pickus Living Trust 4-3-2015 | 33,294.77 | NOTE |
| Mark E. Goldman Declaration of Trust | 33,188.50 | NOTE |
| Peter M. Byrne | 32,702.69 | NOTE |
| Sterling Trust FBO Sebastian Gutierrez | 32,569.52 | NOTE |
| IRA Resources - FBO Curtis Jack | 32,512.21 | NOTE |
| IRA Resources, Inc - FBO Richard Roberts | 32,512.21 | NOTE |
| Provident Trust LLC FBO: John R Roberts 1 | 32,512.21 | NOTE |
| Steven L or Beverly J Thomas | 32,512.21 | NOTE |
| Waite Living Trust | 32,512.21 | NOTE |
| Steven L Thomas | 32,318.76 | NOTE |
| Equity Trust FBO Jo Ellen Cain 186475 | 32,275.38 | NOTE |
| James M Cox | 32,275.38 | NOTE |
| Jefferson W. Moore | 32,134.72 | NOTE |
| John or Shirley Vinciguerra | 31,684.65 | NOTE |
| Bonnie K Shaw | 31,562.56 | NOTE |
| The Mashler Living Trust 5-26-15 | 31,514.38 | NOTE |
| Equity Trust FBO David Ballestrasse | 31,359.79 | NOTE |
| Equity Trust FBO Dwight Kuzanek 172946 | 31,359.79 | NOTE |
| John Cooper Johnston | 31,359.79 | NOTE |
| Sterling Trust, FBO Dolly Lee Warner 164 | 31,359.79 | NOTE |
| Sterling Trust, FBO Mark D. Mazoch 16891 | 31,359.79 | NOTE |
| Scott Ferreira | 31,093.52 | NOTE |
| Lewis M. Stone | 31,014.47 | NOTE |
| Jeffrey L Morse | 30,924.76 | NOTE |
| Equity Trust FBO Michael Burke 189115 | 30,731.71 | NOTE |
| Fred and Mariel VanNatta Living Trust | 30,685.19 | NOTE |
| John & Linda Greenlund | 30,663.93 | NOTE |
| Terence Chrzan | 30,549.41 | NOTE |
| Jon Christensen | 30,526.45 | AP |
| Richard & Linda Halluska | 30,300.58 | NOTE |
| Stephen D Wright | 30,238.16 | NOTE |
| Equity Trust Co. FBO FRancis Lowry | 30,056.50 | NOTE |

| | | |
|---|---|---|
| Equity Trust, FBO Robert Haab 172905 | 30,056.50 | NOTE |
| Thrive State Ltd. Neo composite | 30,000.00 | AP |
| Helen L Moseley | 29,970.09 | NOTE |
| The Crair Survivors Trust dtd 6-13-04 | 29,933.86 | NOTE |
| The Rodney & Julia Zalewski Trust | 29,892.84 | NOTE |
| Dorsey & Whitney LLP | 29,713.53 | AP |
| Crispin D. Woelfer | 29,540.09 | NOTE |
| Robert B. Christensen | 29,458.35 | NOTE |
| Robert Steuart | 29,404.11 | NOTE |
| Lester W & Bonnie J Newell | 29,116.53 | NOTE |
| The Thomas D. Swineford Trust | 29,116.53 | NOTE |
| Janet A Richards-Carson | 28,981.61 | NOTE |
| Leonard Weintraub | 28,786.16 | NOTE |
| Byron & Barbara Olien Trust | 28,470.56 | NOTE |
| The Versaw Family Trust Under Agreemer | 28,467.27 | NOTE |
| Michael Synatschk | 28,419.34 | NOTE |
| David or Mary Anne Alexander | 28,374.38 | NOTE |
| Edward Gregor | 28,118.35 | NOTE |
| Nationwide | 28,103.84 | AP |
| James or Roberta Minter | 27,881.14 | NOTE |
| John Mullan | 27,773.02 | NOTE |
| Agata & Cedric Joshua Francis | 27,763.94 | NOTE |
| Martin Hubert | 27,517.61 | NOTE |
| Dorothy Atkinson | 27,393.08 | NOTE |
| IRA Resources, Inc FBO Lavoin K Allison | 27,387.89 | NOTE |
| Equity Trust FBO S. T. Coleridge 189624 | 27,317.07 | NOTE |
| Lavoin Keith Allison | 27,301.13 | NOTE |
| IRA Resources, Inc - FBO Donald Lee | 27,141.26 | NOTE |
| IRA Resources, Inc - FBO Gordon Darnell | 27,141.26 | NOTE |
| Kronson Family Living Trust DTD 5/3/06 | 27,141.26 | NOTE |
| The Stuart Family Living Trust | 26,903.59 | NOTE |
| Carl B. & Barbara J. Green Trust | 26,879.82 | NOTE |
| Equity Trust FBO  Frank Micheletti 17 | 26,879.82 | NOTE |
| IRA Resources FBO Thomas Slocum | 26,879.82 | NOTE |
| Sterling Trust FBO David Walker | 26,879.82 | NOTE |
| The Richard M Day Rev Living Trust | 26,879.82 | NOTE |
| Thomas Whitworth | 26,879.82 | NOTE |
| Jennifer L Stuart | 26,745.17 | NOTE |
| IRA Resources, FBO Fred Downs 35-35670 | 26,724.25 | NOTE |
| Stephen W & Judith K Cecil | 26,703.88 | NOTE |
| Charles L Mlakar Jr | 26,455.65 | NOTE |
| Eddy Buendia | 26,448.31 | NOTE |
| Kenneth Haeterich | 26,438.24 | NOTE |
| IRA Resources, FBO Thomas Slocum 3457( | 26,212.70 | NOTE |
| Richard Wolf | 26,192.98 | NOTE |
| The R. S. & S. J. Benoit Revocable Trust | 26,143.14 | NOTE |
| Mitra, LLP | 26,098.10 | NOTE |

| | | |
|---|---|---|
| Jennifer L Barrett | 26,092.48 | NOTE |
| Dorothy Smith | 26,009.77 | NOTE |
| Equity Trust, FBO Walter Turville 177399 | 26,006.80 | NOTE |
| Charles E & Janet C Carter Family Trust | 25,839.35 | NOTE |
| Thomas F Friedman | 25,758.19 | NOTE |
| Thurman N Wright | 25,197.26 | NOTE |
| H. Craig & Paula C. Miller | 25,096.80 | NOTE |
| Mary Ellen Dillon | 25,061.00 | NOTE |
| Christian Jordan | 25,000.00 | NOTE |
| Dale Stell | 25,000.00 | NOTE |
| Dave Brink | 25,000.00 | NOTE |
| David & Vanvarang Ratcliffe | 25,000.00 | NOTE |
| Douglas Boone | 25,000.00 | NOTE |
| Erwin Cooper | 25,000.00 | NOTE |
| Frank Granger | 25,000.00 | NOTE |
| Gaylan Rasmussen | 25,000.00 | NOTE |
| George Davis | 25,000.00 | NOTE |
| Golden Oak CO-OP Corp, Nelson Colvin, Pi | 25,000.00 | NOTE |
| Jeff Denner | 25,000.00 | NOTE |
| Jeff Newsom | 25,000.00 | NOTE |
| Kenneth & Mary Rysenga | 25,000.00 | NOTE |
| Mike Burke | 25,000.00 | NOTE |
| Mike Wood | 25,000.00 | NOTE |
| Robert Mintz | 25,000.00 | NOTE |
| Ron Kershner | 25,000.00 | NOTE |
| Samuel Timothy Coleridge | 25,000.00 | NOTE |
| Thomas Handy | 25,000.00 | NOTE |
| Tom & Bonnie Dean | 25,000.00 | NOTE |
| Equity Trust FBO Jeffrey W. Bibler 180391 | 24,861.88 | NOTE |
| Equity Trust, FBO Francis J Lowry 183027 | 24,861.88 | NOTE |
| Equity Trust, FBO Jerald W Parker | 24,861.88 | NOTE |
| Equity Trust, FBO Justin L Roth | 24,861.88 | NOTE |
| William Hanneman | 24,861.88 | NOTE |
| Linda D Mangel | 24,802.26 | NOTE |
| Green Turtle LLC | 24,706.87 | AP |
| Curtis Jack | 24,690.73 | NOTE |
| Equity Trust FBO Mark Redditt 189727 | 24,685.11 | NOTE |
| Walter E Rodda | 24,636.56 | NOTE |
| Charles R Beaver Living Trust 5-21-1997 | 24,467.18 | NOTE |
| David R & Pamela J Kluck | 24,444.35 | NOTE |
| Beverly Hillabrandt | 24,366.02 | NOTE |
| Alan H. Leung & Wendy Hsu | 24,296.42 | NOTE |
| Yamaha Motor Finance Corp., USA | 24,134.26 | AP |
| Warrior Custom Golf | 24,025.25 | AP |
| Marvin Shapiro | 23,861.39 | NOTE |
| Jim and Laurel Campbell | 23,591.54 | NOTE |
| Gary Dunleavy | 23,447.61 | NOTE |

| | | |
|---|---|---|
| IRA Resources, Inc - FBO Jack P Alvarez | 23,408.79 | NOTE |
| Robert B. Lawes | 23,169.61 | NOTE |
| Raymond E Obrecht Trust | 23,160.81 | NOTE |
| Daniel B. Murchison | 23,123.60 | NOTE |
| Stewart & Pattie Gartner | 23,098.69 | NOTE |
| Ralph R Kitterman III | 22,779.79 | NOTE |
| The Johnson Family Trust 7-02-12 | 22,712.19 | NOTE |
| Equity Trust, FBO Michael Able 186322 | 22,592.77 | NOTE |
| Leonard Kuczynski & Pamela Barbato | 22,592.77 | NOTE |
| Lucious Glenn | 22,592.77 | NOTE |
| Gregory Lewis | 22,556.28 | NOTE |
| Roger D Lang & Virginia Lang Trust | 22,400.00 | AP |
| Cusick Family Trust | 22,399.85 | NOTE |
| David & Opal Eason Living Trust | 22,399.85 | NOTE |
| Dwight M. Kuzanek | 22,399.85 | NOTE |
| Equity Trust FBO  David Keith Ratclif | 22,399.85 | NOTE |
| Equity Trust FBO  Robert Haab 172905 | 22,399.85 | NOTE |
| Equity Trust FBO F.Y. Moore-Kershner | 22,399.85 | NOTE |
| Equity Trust FBO G. Niedzielski | 22,399.85 | NOTE |
| Equity Trust FBO John Cooper Johnston | 22,399.85 | NOTE |
| Equity Trust FBO Michael W. Pinter | 22,399.85 | NOTE |
| Equity Trust FBO William Minnich 16776 | 22,399.85 | NOTE |
| IRA Resources FBO Stephen Rebuck #3217 | 22,399.85 | NOTE |
| IRA Resources, Custodian FBO Kathleen Aı | 22,399.85 | NOTE |
| John & Nancy Montgomery | 22,399.85 | NOTE |
| Millard F Kershner III | 22,399.85 | NOTE |
| Richard K. & Mary E. Buckley | 22,399.85 | NOTE |
| Sterling Trust FBO:Barbara Jean Green | 22,399.85 | NOTE |
| William & Elizabeth Norman | 22,399.85 | NOTE |
| William T. Newell | 22,399.85 | NOTE |
| IRA Resources, FBO Gregory Simpson 327: | 22,393.29 | NOTE |
| The Shirley L Wentzel Trust | 22,344.77 | NOTE |
| Bryan E & Jacqueline J Snell Trust | 22,283.72 | NOTE |
| Leonard S Anthony | 22,283.72 | NOTE |
| Anthony Condello | 22,206.26 | NOTE |
| Gordon A & Donna S Darnell | 22,164.85 | NOTE |
| Randle Gardner | 22,035.21 | NOTE |
| Karen Ann Prillwitz Trust | 21,959.63 | NOTE |
| Dennis L Duessler | 21,907.60 | NOTE |
| Andrew Bragoli | 21,713.01 | NOTE |
| Equity Trust, Custodian FBO Caroline Earle | 21,713.01 | NOTE |
| IRA Resources, Inc FBO Charles N White | 21,713.01 | NOTE |
| IRA Resources, Inc FBO Dennis V.Klompstr | 21,713.01 | NOTE |
| IRA Resources, Inc FBO Pamela Schneider | 21,713.01 | NOTE |
| IRA Resources, Inc FBO Thomas O Slocum | 21,713.01 | NOTE |
| IRA Resources, Inc-FBO Charles J Yaeger | 21,713.01 | NOTE |
| John & Minnie Ballard Revo Living Trust | 21,713.01 | NOTE |

| | | |
|---|---|---|
| Kathy Carder | 21,713.01 | NOTE |
| Kehuli Partners Ltd, Robert Hust | 21,713.01 | NOTE |
| Kent P Scheider | 21,713.01 | NOTE |
| Louis Panigutti | 21,713.01 | NOTE |
| Robert & Lisa VanDenBerg | 21,713.01 | NOTE |
| Sterling Trust FBO Eugene W Harden | 21,713.01 | NOTE |
| Steve Geherty & Elaine Oliver | 21,713.01 | NOTE |
| Steve Lamotta | 21,713.01 | NOTE |
| The Davis Family Trust | 21,713.01 | NOTE |
| Thomas Chappelle | 21,713.01 | NOTE |
| Tod W. Johnson Revoc Trust 1-11-2010 | 21,713.01 | NOTE |
| Dustin Synatschk | 21,702.66 | NOTE |
| John Kent | 21,646.51 | NOTE |
| Grace Hamann or Bonnie Judd | 21,497.72 | NOTE |
| Equity Trust  FBO Jerald Parker 182391 | 21,468.93 | NOTE |
| Equity Trust, FBO David A. Brink 156388 | 21,468.93 | NOTE |
| Equity Trust, FBO Gregory Lewis 184938 | 21,468.93 | NOTE |
| Equity Trust, FBO Thomas R. Dean 177871 | 21,468.93 | NOTE |
| The Cook Family Trust | 21,468.93 | NOTE |
| Sebastian Garcia | 21,278.22 | NOTE |
| Bobby Bartlett | 20,762.14 | NOTE |
| Equity Trust, FBO Frank Kuter 182943 | 20,718.23 | NOTE |
| Larry Blandford | 20,610.17 | NOTE |
| Michael Cole | 20,605.57 | NOTE |
| Richard J Kelly | 20,601.70 | NOTE |
| Black Knight Management LLC | 20,596.58 | NOTE |
| The Thomas W & Lois Karabowski Trust | 20,533.48 | NOTE |
| Samuel T. Coleridge | 20,487.80 | NOTE |
| Richard G. & Catherine Follestad | 20,384.41 | NOTE |
| Oren L Brady III | 20,166.69 | AP |
| Richard K & Mary E Buckley | 20,156.59 | NOTE |
| Stephen Gallegos | 20,156.59 | NOTE |
| Equity Trust FBO Bobby E. Davis 177442 | 20,150.03 | NOTE |
| Gale Christensen | 20,150.03 | NOTE |
| Dainis Kleinbergs | 20,085.83 | NOTE |
| Thomas Olsen | 20,008.02 | NOTE |
| James E. Kruse | 19,816.45 | NOTE |
| Jerald D & Connie Kesler | 19,811.27 | NOTE |
| Kenneth W Waldrum | 19,653.49 | NOTE |
| Kehuli Partners LTD | 19,641.89 | NOTE |
| Al Magrella | 19,507.33 | NOTE |
| Barnes Investment LP | 19,507.33 | NOTE |
| Charles Carter | 19,507.33 | NOTE |
| IRA Resources - FBO Dwight L Cummins | 19,507.33 | NOTE |
| IRA Resources, Inc - FBO Mark Roisen | 19,507.33 | NOTE |
| IRA Resources, Inc - FBO Thomas L Boone | 19,507.33 | NOTE |
| IRA Resources, Inc - Robert Dixon | 19,507.33 | NOTE |

| | | |
|---|---|---|
| Michael Harwood | 19,507.33 | NOTE |
| Patrick or Monica Barberich | 19,507.33 | NOTE |
| Thomas or Patricia Kohl | 19,507.33 | NOTE |
| Vernon Varner | 19,507.33 | NOTE |
| Kim & Kristine Purcell | 19,434.76 | NOTE |
| IRA Resources, Inc FBO Thomas Olsen | 19,397.11 | NOTE |
| John Nicholson | 19,301.88 | NOTE |
| Equity Trust, FBO Michael Alberson 1819C | 19,297.75 | NOTE |
| Randolph County Tax Dept | 19,219.38 | AP |
| LF Bowman Family Limited Partnership | 19,200.66 | NOTE |
| Christina L Goetz | 19,147.62 | NOTE |
| David A Brink | 19,109.19 | NOTE |
| Irwin J. Suson | 19,034.95 | NOTE |
| The Koontz Family Trust 08-27-86 | 18,836.30 | NOTE |
| The John R Koontz & Michelle L Koontz | 18,834.91 | NOTE |
| Richard Kurtz | 18,679.76 | NOTE |
| Peter H Andrews | 18,557.67 | NOTE |
| Michael Pienkos | 18,406.34 | NOTE |
| Richard J. Glave | 18,362.31 | NOTE |
| Paul K. McClain | 18,326.52 | NOTE |
| Lucas V Terranova | 18,242.38 | NOTE |
| IRA Resources - FBO Kenneth L Robinson | 18,206.84 | NOTE |
| Titleist | 18,169.04 | AP |
| Henderson County Tax Collector | 17,960.91 | AP |
| Arthur Katzmann III living Trust 11-10-2 | 17,919.88 | NOTE |
| Charles R. & Margo J. Roper 2005 Revo Fa | 17,919.88 | NOTE |
| Equity Trust FBO Danny Proffitt 174398 | 17,919.88 | NOTE |
| IRA Resources FBO Lavoin Allison | 17,919.88 | NOTE |
| Linda Joyce Cooper Trust 8-7-2009 | 17,919.88 | NOTE |
| Oscar Ramirez | 17,919.88 | NOTE |
| Robert & Patricia Hendricks | 17,919.88 | NOTE |
| Sandra Woodley | 17,919.88 | NOTE |
| Sterling Trust FBO Thake, Bruce | 17,919.88 | NOTE |
| Sterling Trust, FBO Carl B Green 165287 | 17,919.88 | NOTE |
| The Edward T Jacobson Rev Trust 5-4-201( | 17,919.88 | NOTE |
| William & Nana Gautier | 17,919.88 | NOTE |
| William Whelan | 17,919.88 | NOTE |
| Robin Koontz & Raymundo Pe | 17,910.37 | NOTE |
| Cory W Detty | 17,898.54 | NOTE |
| Stacia L Skaggs | 17,898.54 | NOTE |
| William Barth | 17,852.20 | NOTE |
| Equity Trust FBO Jerry Gossner 2003390⅔ | 17,761.19 | NOTE |
| Equity Trust FBO K. J. Rysenga 200337677 | 17,761.19 | NOTE |
| Equity Trust FBO Mary Rysenga 20033767 | 17,761.19 | NOTE |
| Rick A & Sandra Falaschetti | 17,761.19 | NOTE |
| US Foods- Rio Vista | 17,629.25 | AP |
| Gary L. Duggins | 17,574.56 | NOTE |

| | | |
|---|---|---|
| Steven T Call | 17,407.70 | NOTE |
| Mark R Longbrake | 17,311.51 | NOTE |
| Lawrence McNair | 17,247.23 | NOTE |
| Diego Furnari | 17,073.17 | NOTE |
| Equity Trust FBO James Faurote 188889 | 17,073.17 | NOTE |
| Equity Trust FBO William Johnson 186046 | 17,073.17 | NOTE |
| Equity Trust, FBO John Kent 189474 | 17,073.17 | NOTE |
| James Howatt | 17,073.17 | NOTE |
| The A .Howard Irr Trust C. Howard Trustee | 17,073.17 | NOTE |
| Kim Purcell | 16,906.35 | NOTE |
| Sysco Riverside, Inc. | 16,900.16 | AP |
| Bruce A Rogers | 16,874.86 | NOTE |
| Robert E Guice | 16,874.86 | NOTE |
| James R Rich Living Trust 3-1-2002 | 16,871.52 | NOTE |
| IRA Resources, Inc - FBO Robert W Lee | 16,833.68 | NOTE |
| Robert N Kandell | 16,828.26 | NOTE |
| Jason Stanford & Matthew Fawley | 16,791.69 | NOTE |
| Sabra M. Callen Trust | 16,791.69 | NOTE |
| Vimal H Patel | 16,791.69 | NOTE |
| James M Andrews | 16,724.72 | NOTE |
| Laura Pickard & Thomsa J Hilty | 16,658.36 | NOTE |
| Marianne B Hronek | 16,628.18 | NOTE |
| Michele M Pierce | 16,628.18 | NOTE |
| Dwight Cummins | 16,614.20 | NOTE |
| Doug & Teddi Hodson Trust | 16,574.59 | NOTE |
| Equity Trust FBO Eric D Saunders 183672 | 16,574.59 | NOTE |
| Equity Trust FBO Richard Glave 184218 | 16,574.59 | NOTE |
| IRA Resources, Inc FBO Thomas Slocum | 16,574.59 | NOTE |
| Liberty Trust Co., FBO D.A.Boone TC00344 | 16,574.59 | NOTE |
| Shirlee & L. Dale Messer | 16,574.59 | NOTE |
| Barb Ferguson | 16,546.93 | NOTE |
| Sterling Trust David K Radcliffe 170135 | 16,538.61 | NOTE |
| Kenneth Franzese | 16,531.38 | NOTE |
| Edward Roberts | 16,284.76 | NOTE |
| Equity Trust - FBO Carol A Roberts | 16,284.76 | NOTE |
| Gerald L. & Joanne A Puyear | 16,284.76 | NOTE |
| IRA Resources, Inc - FBO Gay M Phillips | 16,284.76 | NOTE |
| IRA Resources, Inc - FBO Larry Rai Nelson | 16,284.76 | NOTE |
| IRA Resources, Inc FBO Peter S Redfield | 16,284.76 | NOTE |
| Kathleen C. Doelle Revocable Living Trust | 16,284.76 | NOTE |
| Robert Standefer | 16,284.76 | NOTE |
| Ronald & Donna Crosson | 16,284.76 | NOTE |
| Sterling Trust, Custodian FBO David Brink | 16,284.76 | NOTE |
| Cletus G. Woo | 16,195.85 | NOTE |
| Alexander County Tax Office | 16,175.97 | AP |
| Equity Trust, FBO D. Grzankowski 177713 | 16,137.69 | NOTE |
| Equity Trust, FBO Richard Forman 187090 | 16,137.69 | NOTE |

| | | |
|---|---|---|
| Equity Trust, FBO William Johnson 186046 | 16,137.69 | NOTE |
| Joseph J Cuvala | 16,137.69 | NOTE |
| LTSP, LLC | 16,137.69 | NOTE |
| Jane E. Cook | 16,121.42 | NOTE |
| Gaylan A. & Carolyn T. Rasmussen | 16,104.00 | NOTE |
| William Giese Trust | 15,994.80 | NOTE |
| Timothy Clive Brooks | 15,942.18 | NOTE |
| Rev. Barry M Walker Trust | 15,851.45 | NOTE |
| Peter Buza | 15,821.66 | NOTE |
| Robert Shea | 15,821.66 | NOTE |
| William S & Laura M Clark Rev Liv Trust | 15,781.28 | NOTE |
| David & Patricia Campo | 15,676.62 | NOTE |
| Regina Britton & Karen Kosakowski | 15,676.62 | NOTE |
| Scarborough Living Trust | 15,428.54 | NOTE |
| Carol A Roberts | 15,336.48 | NOTE |
| Clarence H. Stevens | 15,336.48 | NOTE |
| Harold E Turner Jr | 15,336.48 | NOTE |
| Michael T. Fisher Revocable Trust | 15,336.48 | NOTE |
| Steven Smith | 15,336.48 | NOTE |
| Ted W Jones | 15,331.30 | NOTE |
| Golden Oak Cooperative Corp | 15,318.53 | NOTE |
| Theresa A. Stewart | 15,306.45 | NOTE |
| Bruce Gold | 15,304.25 | NOTE |
| Moore County Tax Department | 15,294.28 | AP |
| Stephen C LaMotta | 15,228.99 | NOTE |
| Equity Trust FBO S. A. Winchell 20033499 | 15,223.88 | NOTE |
| Laurie Lee White | 15,119.08 | NOTE |
| Rebecca Lynn Weingarten | 15,119.08 | NOTE |
| Equity Trust, FBO Bryan Carrell 185049 | 15,042.65 | NOTE |
| Equity Trust, FBO Earl Moorer 185601 | 15,042.65 | NOTE |
| Larry W Isenhour | 15,042.65 | NOTE |
| Scott Howell | 15,042.65 | NOTE |
| William Joseph Henry Family Trust | 15,042.65 | NOTE |
| IRA Resources, Inc - FBO Kevin Neises | 15,014.76 | NOTE |
| Allen L. Venting | 15,003.97 | NOTE |
| David Milot | 15,003.97 | NOTE |
| F & K Partners, LLP | 15,003.97 | NOTE |
| Jesse J. Riggins lll | 15,003.97 | NOTE |
| William C Gucwa | 15,003.97 | NOTE |
| William & Barbara House Trust | 15,000.15 | NOTE |
| Dye Revocable Trust  James D. Dye, Trustee | 14,991.16 | NOTE |
| Anthony Ferguson | 14,853.71 | NOTE |
| Richard Crommett | 14,831.62 | NOTE |
| Vinay Gudena & Lakshmi Namballa | 14,742.37 | NOTE |
| L.F. Bowman Family, LP | 14,576.07 | NOTE |
| Revocable Trust of Margaret L Feldman | 14,554.98 | NOTE |
| William Henes | 14,441.21 | NOTE |

| | | |
|---|---:|---|
| David & Linda Hendon | 14,327.00 | NOTE |
| Kenneth Roberts | 14,277.17 | NOTE |
| Beckstrand Law Office | 14,220.95 | AP |
| Equity Trust, FBO Walter Turnville 177399 | 14,187.19 | NOTE |
| Helen Jackson | 14,187.19 | NOTE |
| IRA Resources, Inc - FBO John Skoglund | 14,187.19 | NOTE |
| IRA Resources, Inc - FBO Thomas Fleming | 14,187.19 | NOTE |
| IRA Resources, INC FBO Douglas R Stofan | 14,187.19 | NOTE |
| Richard J. Kelly | 14,176.40 | NOTE |
| R.L.Johnston Jr. Rev Trust 10-27-05 | 14,042.88 | NOTE |
| Kenneth & Violet Ring | 14,034.57 | NOTE |
| IRA Resources, Inc - FBO Vicki D Neese | 13,940.57 | NOTE |
| Mary Ann Gurnack Irrev Trust dtd 2-25-13 | 13,940.57 | NOTE |
| Cathy & David Parmer | 13,881.97 | NOTE |
| Donald Jefford | 13,881.97 | NOTE |
| Jimmy C & Nilda Pettyjohn Fam Trust | 13,881.97 | NOTE |
| Paul L & Janice W Legler | 13,881.97 | NOTE |
| Roger D. Auerbacher | 13,881.97 | NOTE |
| Sterling Trust, Custodian FBO Rutherford | 13,881.97 | NOTE |
| Steven L & Beverly J Thomas | 13,881.97 | NOTE |
| Larry C Rogers | 13,840.08 | NOTE |
| Simplot Partners | 13,816.70 | AP |
| Eddie Dore | 13,758.81 | NOTE |
| Donald & Joyce Childress | 13,693.94 | NOTE |
| Equity Trust, FBO James A. Depue | 13,658.54 | NOTE |
| Equity Trust, FBO Michael  Dunbar 18915! | 13,658.54 | NOTE |
| Louis C. Varljen | 13,632.90 | NOTE |
| Linda C. Dexter | 13,569.48 | NOTE |
| Equity Trust, Custodian FBO Donna M We: | 13,513.18 | NOTE |
| The Hartford | 13,506.43 | AP |
| Craig E McCarthy | 13,443.43 | NOTE |
| Robert J. Dearborn | 13,443.43 | NOTE |
| The William R Pratt & Anne Pratt | 13,443.43 | NOTE |
| Daryl E. & Sherrie B. Lewis | 13,439.91 | NOTE |
| David Uhlman | 13,439.91 | NOTE |
| Equity Trust FBO  Terrance Swarthout | 13,439.91 | NOTE |
| Equity Trust FBO M.Kershner III 172969 | 13,439.91 | NOTE |
| Equity Trust FBO Raymond M Bilecky | 13,439.91 | NOTE |
| IRA Resources FBO Everett C. Melius Jr. | 13,439.91 | NOTE |
| IRA Resources FBO Kenneth L. Robinson | 13,439.91 | NOTE |
| Nexus 10 Inc. | 13,439.91 | NOTE |
| Scott D. Wozniak | 13,439.91 | NOTE |
| Sterling Trust, FBO Linda M. Stahl 16949 | 13,439.91 | NOTE |
| The Mark & Susan Williams Revoc Trust | 13,439.91 | NOTE |
| Westby, George | 13,439.91 | NOTE |
| 2008 Gardner Family Trust | 13,439.91 | NOTE |
| Jack Van Wingerden | 13,439.91 | NOTE |

| | | |
|---|---|---|
| Karl G Heinz | 13,439.91 | NOTE |
| Alton Synatchk | 13,433.35 | NOTE |
| David & Jennifer Borges | 13,433.35 | NOTE |
| Leonard P Pisciotta & Sandra L. Strader | 13,433.35 | NOTE |
| Lyndy Dale & Shirlee Messer | 13,433.35 | NOTE |
| Mark & Lisa Arndt | 13,433.35 | NOTE |
| Nino Crisafulli | 13,433.35 | NOTE |
| Brilliant Revocable Declaration of Trust | 13,284.34 | NOTE |
| Larry Kerr | 13,284.34 | NOTE |
| Glenn O. Brown | 13,253.73 | NOTE |
| Terrence E Johns | 13,253.73 | NOTE |
| Leland Stanford | 13,094.59 | NOTE |
| Sally M. Depoy | 13,094.59 | NOTE |
| Todd & Hilda Abraham | 13,094.59 | NOTE |
| Barbara Wilzen, Trustee | 13,004.89 | NOTE |
| Bruce K Goodman | 13,004.89 | NOTE |
| Fiserv ISS & CO - FBO Richard B Ragland | 13,004.89 | NOTE |
| IRA Resources - FBO Alvin Schimming | 13,004.89 | NOTE |
| IRA Resources - FBO Richard A Rutherford | 13,004.89 | NOTE |
| IRA Resources, Inc - Claudio Lalli | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO - William Devoe | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Beverly Thomas | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Christina Goetz | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Curtis J Neff | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO David J Lewis | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Duane Bily | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Gerald Inguagiat | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Helen P Johnson | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Michael Brown | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Paul Holland | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Ralph Kitterman | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Ronald Hard | 13,004.89 | NOTE |
| IRA Resources, Inc - FBO Steven Thomas | 13,004.89 | NOTE |
| IRA Resources, Inc, Custodian FBO: Diane | 13,004.89 | NOTE |
| John Poplawski | 13,004.89 | NOTE |
| Marc Randell | 13,004.89 | NOTE |
| Rick Diefenderfer | 13,004.89 | NOTE |
| Robert Seay | 13,004.89 | NOTE |
| Ron Torres | 13,004.89 | NOTE |
| Steve Geherty | 13,004.89 | NOTE |
| William Hughes | 13,004.89 | NOTE |
| Equity Trust  FBO Larry Kilgore 186893 | 12,910.15 | NOTE |
| Equity Trust, FBO Deborah  Anders 18399! | 12,910.15 | NOTE |
| Joseph A Mcclure | 12,910.15 | NOTE |
| Shirlee & Dale Messer | 12,910.15 | NOTE |
| Douglas E Browning | 12,881.36 | NOTE |
| Equity Trust, FBO David Gillies 172971 | 12,881.36 | NOTE |

| | | |
|---|---|---|
| Equity Trust, FBO Michael Shaw 180514 | 12,881.36 | NOTE |
| Mark & Linda Webster | 12,881.36 | NOTE |
| Ronald L Cook | 12,881.36 | NOTE |
| Dave Carlson | 12,807.70 | NOTE |
| David & Gaylene Hagler | 12,767.26 | NOTE |
| Equity Trust FBO Stephen Lund 20031394 | 12,686.57 | NOTE |
| Banerdt Family Trust | 12,591.10 | NOTE |
| John Bossung | 12,591.10 | NOTE |
| Robert Dixon | 12,591.10 | NOTE |
| Equity Trust, FBO Diane B Wattay | 12,581.08 | NOTE |
| Equity Trust, FBO Gordon Blakeman 1839( | 12,581.08 | NOTE |
| Equity Trust FBO David Walker 168919 | 12,430.94 | NOTE |
| Equity Trust, FBO Byron Hildebrand | 12,430.94 | NOTE |
| Equity Trust, FBO Michael W. Paul 184283 | 12,430.94 | NOTE |
| IRA Resources, FBO Fred Downs | 12,430.94 | NOTE |
| Kelly O'Neil | 12,430.94 | NOTE |
| Henri Aspen | 12,403.96 | NOTE |
| Sterling Trust FBO Gilbert Fonseca 174696 | 12,403.96 | NOTE |
| Bruce L. Hollander | 12,318.28 | NOTE |
| Richard D. McNeil | 12,318.28 | NOTE |
| Ronald Borelli Trust | 12,318.28 | NOTE |
| Barry or Jane Walker | 12,177.32 | NOTE |
| Greg Lippincott | 12,177.32 | NOTE |
| Robert A McAlexander Living Trust | 12,177.32 | NOTE |
| Gary R. Dunleavy | 12,115.05 | NOTE |
| LaDean E. Haberman | 12,055.23 | NOTE |
| Paul W Hodapp | 12,055.23 | NOTE |
| IRA Resources, Inc - FBO Paulette Milton | 12,005.46 | NOTE |
| ProShot Investors, LLC | 12,004.00 | AP |
| David E Wilder | 12,002.20 | NOTE |
| Lawrence White | 12,002.20 | NOTE |
| Gard Gershmel | 11,930.70 | NOTE |
| Thomas Fiet | 11,930.70 | NOTE |
| Bruce A. Rogers | 11,903.90 | NOTE |
| Christian Poulsen | 11,903.90 | NOTE |
| Donald Turner Living Trust DTD 11/22/82 | 11,903.90 | NOTE |
| Orlando C. Guida | 11,903.90 | NOTE |
| Roger & Peggy Bailey | 11,903.90 | NOTE |
| Rivco | 11,884.48 | AP |
| The Harger Loving Trust | 11,851.15 | NOTE |
| Buncombe County Tax Collector | 11,655.53 | AP |
| Douglas & Cheri Samuelson | 11,645.63 | NOTE |
| Galen & Florence Davis | 11,645.63 | NOTE |
| Joseph DeHart | 11,645.63 | NOTE |
| Fergeson Skipper | 11,487.00 | AP |
| Dennis O'Leary | 11,455.87 | NOTE |
| Thomas Slocam | 11,363.96 | NOTE |

| | | |
|---|---|---|
| IRA Resources Inc-FBO Barney M Francesc | 11,349.75 | NOTE |
| IRA Resources, Inc - FBO James E Warren | 11,349.75 | NOTE |
| IRA Resources, Inc - FBO Larry Nelson | 11,349.75 | NOTE |
| Rick Henry | 11,349.75 | NOTE |
| Robert Sanders or Michael Wood | 11,349.75 | NOTE |
| Dawn R. Davis | 11,222.31 | NOTE |
| Christopher Horn & Shirley Michl | 11,196.65 | NOTE |
| The Peggy L. Covert Family Trust | 11,141.86 | NOTE |
| Shane Crawford | 11,124.88 | NOTE |
| Artur H Heritsch | 11,105.58 | NOTE |
| Brian G Luyt | 11,105.58 | NOTE |
| Bruce R & Nancy D Kerns | 11,105.58 | NOTE |
| Deborah Moskas | 11,105.58 | NOTE |
| Trina Camacho-London | 11,105.58 | NOTE |
| Susan M Reagan | 11,083.49 | NOTE |
| Douglas J & Pat Whitehead | 11,027.27 | NOTE |
| Douglas W White | 11,027.27 | NOTE |
| Sandra Francis | 10,982.41 | NOTE |
| Dennis C. & Joyce C. Killian | 10,881.27 | NOTE |
| Eddie R Baugh | 10,865.68 | NOTE |
| Paul E. Strong | 10,860.32 | NOTE |
| Raymond Miles Dorhout Trust | 10,860.32 | NOTE |
| Steven & Pamela Schneider | 10,860.32 | NOTE |
| A. June Glass | 10,856.51 | NOTE |
| Allan O. Chrystal | 10,856.51 | NOTE |
| Bradley Evans or Michelle Kinser | 10,856.51 | NOTE |
| Carl Hattler | 10,856.51 | NOTE |
| Daniel Bragoli | 10,856.51 | NOTE |
| Danny Greer | 10,856.51 | NOTE |
| Dino Riggio | 10,856.51 | NOTE |
| Donald Spar | 10,856.51 | NOTE |
| Edwin A. Dunn Jr.Family Trust | 10,856.51 | NOTE |
| Equity Trust FBO C. Avallone 158312 | 10,856.51 | NOTE |
| Frieda Zimmons | 10,856.51 | NOTE |
| Gay Phillips | 10,856.51 | NOTE |
| Harold D Ferrari Living Trust | 10,856.51 | NOTE |
| IRA Resources FBO Everett C Melius Jr | 10,856.51 | NOTE |
| IRA Resources FBO Kenneth L Robinson | 10,856.51 | NOTE |
| IRA Resources, FBO Richard Vance | 10,856.51 | NOTE |
| IRA Resources, Inc - FBO Mark Longbrake | 10,856.51 | NOTE |
| IRA Resources, Inc - FBO Robert C Mannin | 10,856.51 | NOTE |
| IRA Resources, Inc - FBO Robert Saul | 10,856.51 | NOTE |
| IRA Resources, Inc - Ivan Cranston | 10,856.51 | NOTE |
| IRA Resources, Inc -FBO Christina L Goetz | 10,856.51 | NOTE |
| IRA Resources, Inc -FBO Everett J Meggitt | 10,856.51 | NOTE |
| IRA Resources, Inc FBO Alvin L. Sherman | 10,856.51 | NOTE |
| IRA Resources, Inc FBO Daryl G. Simonich | 10,856.51 | NOTE |

| | | |
|---|---|---|
| IRA Resources, Inc FBO Mary Ann Gurnack | 10,856.51 | NOTE |
| IRA Resources, Inc FBO Nancy A Rumple | 10,856.51 | NOTE |
| IRA Resources, Inc FBO Ralph R Kitterman | 10,856.51 | NOTE |
| IRA Resources, Inc FBO Robert E. Balgema | 10,856.51 | NOTE |
| IRA Resources, Inc FBO Robert Saacke | 10,856.51 | NOTE |
| IRA Resources, Inc FBO Thurman N Wright | 10,856.51 | NOTE |
| IRA Resources, Inc FBO:Rae Schlappi | 10,856.51 | NOTE |
| IRA Resources, Inc-FBO Louis Scott Brown | 10,856.51 | NOTE |
| IRA Resources, Inc-FBO Richard McAllister | 10,856.51 | NOTE |
| IRA Resources, Inc. - FBO Duane A Bily | 10,856.51 | NOTE |
| IRA Resources, Inc. FBO: Larry Rogers | 10,856.51 | NOTE |
| IRA Resources, Inc. FBO: Thomas D Flemin | 10,856.51 | NOTE |
| IRA Resources, Inc., Custodian FBO: Ross T | 10,856.51 | NOTE |
| James & Rose Rohde | 10,856.51 | NOTE |
| Jeffeory Toreson | 10,856.51 | NOTE |
| John & Shirley Vinciguerra | 10,856.51 | NOTE |
| John Nieberding | 10,856.51 | NOTE |
| Kenneth Stevens | 10,856.51 | NOTE |
| Langendoen Family Trust | 10,856.51 | NOTE |
| Linsey Buendia-Markle, Chris Markle | 10,856.51 | NOTE |
| Louis & Wanda Dominiczak | 10,856.51 | NOTE |
| Michael E. Dault | 10,856.51 | NOTE |
| Ralph Coblentz | 10,856.51 | NOTE |
| Robert or Linda Bergman | 10,856.51 | NOTE |
| Robert or Patricia Hendricks | 10,856.51 | NOTE |
| Robert Wierwille | 10,856.51 | NOTE |
| Ronald L Linn | 10,856.51 | NOTE |
| Ross Irwin | 10,856.51 | NOTE |
| Samuel Amburgey Estate | 10,856.51 | NOTE |
| Sterling Trust - FBO Douglas A Ber | 10,856.51 | NOTE |
| Sterling Trust Custodian FBO Leon Berrien | 10,856.51 | NOTE |
| Sterling Trust FBO David DeLaby | 10,856.51 | NOTE |
| Sterling Trust FBO Delbert Spell Jr. | 10,856.51 | NOTE |
| Sterling Trust FBO James Ludwigsen 15598 | 10,856.51 | NOTE |
| Sterling Trust FBO Larry G Riley 158988 | 10,856.51 | NOTE |
| Sterling Trust FBO Michael W Pinter | 10,856.51 | NOTE |
| Sterling Trust FBO Robert Wierwille | 10,856.51 | NOTE |
| Sterling Trust, Custodian -Richard Wolf | 10,856.51 | NOTE |
| Sterling Trust, FBO Timothy A Bolender | 10,856.51 | NOTE |
| Sterling Trust, FBO William Tippett | 10,856.51 | NOTE |
| Steven Sutherland | 10,856.51 | NOTE |
| Stifel Nicolaus FBO D. Helfer 6083-3474 | 10,856.51 | NOTE |
| The Ronald & Charlotte Meade Living Trus | 10,856.51 | NOTE |
| Timothy Mueller | 10,856.51 | NOTE |
| William H Joyner | 10,856.51 | NOTE |
| William H Morse IRR Trust | 10,856.51 | NOTE |
| William M Rohrer & Katherine R. Haight Cc | 10,856.51 | NOTE |

| | | |
|---|---|---|
| Andrew A. Bell III | 10,851.33 | NOTE |
| Thomas Slocum | 10,809.50 | NOTE |
| Paul Ystebo | 10,796.23 | NOTE |
| IRA Resources, Custodian | 10,708.16 | NOTE |
| Town of Fletcher | 10,596.40 | AP |
| Southern States Cooperative, Inc. | 10,574.50 | AP |
| Robert Kandell | 10,551.71 | NOTE |
| Whip, LLC | 10,403.91 | NOTE |
| Equity Trust FBO Thomas  Cusick 175875 | 10,336.63 | NOTE |
| Sterling Trust, FBO Bonnie Dean 175541 | 10,336.63 | NOTE |
| Charles E. Howard & Nancy A. Howard | 10,243.90 | NOTE |
| Equity Trust FBO Michael Garcia 188250 | 10,243.90 | NOTE |
| Equity Trust, FBO Alan Paul Wills 188269 | 10,243.90 | NOTE |
| Equity Trust, FBO Michael Paul 184283 | 10,243.90 | NOTE |
| Equity Trust, FBO T. J. O'Sullivan 187711 | 10,243.90 | NOTE |
| Lawrence D Parsons | 10,243.90 | NOTE |
| Paul G. Peterson | 10,243.90 | NOTE |
| Southern California Edison | 10,230.00 | AP |
| Johnny L. Johnson | 10,154.85 | NOTE |
| David Young | 10,149.25 | NOTE |
| Equity Trust FBO Jerry Gossner 20032621( | 10,149.25 | NOTE |
| Equity Trust Joseph Klimek 200338573 | 10,149.25 | NOTE |
| Raymond P. Moran | 10,149.25 | NOTE |
| The Valerie Holmes Living Trust | 10,149.25 | NOTE |
| Kevin Mills | 10,133.84 | NOTE |
| Blanche Blatt Exempt Trust | 10,098.19 | NOTE |
| Craig Stern Exempt Trust | 10,098.19 | NOTE |
| A. Katzmann III Living Trust 11-10-2005 | 10,075.01 | NOTE |
| Charles A Rasper & Rose J. Costanzo | 10,075.01 | NOTE |
| David F. Maurek | 10,075.01 | NOTE |
| Equity Trust, FBO Charles Anderson 18182 | 10,075.01 | NOTE |
| Equity Trust, FBO James Priest 181808 | 10,075.01 | NOTE |
| Harold L Timmer | 10,075.01 | NOTE |
| Kevin R. & Bethany A. Holton | 10,075.01 | NOTE |
| Lonnie D. Lowery | 10,075.01 | NOTE |
| Private Trust Company, Lester Newell, LLC | 10,075.01 | NOTE |
| Rev. Barry M. Walker Trust | 10,075.01 | NOTE |
| Ronald P Felt | 10,075.01 | NOTE |
| Witthohn Family | 10,075.01 | NOTE |
| Daren Mazzone | 10,032.76 | NOTE |
| James G Johnson Family Trust dtd 3/23/1: | 10,032.76 | NOTE |
| Al Faigin | 9,908.22 | NOTE |
| Bruce & Jacquelyne Halgren | 9,908.22 | NOTE |
| Harold E. Osborn | 9,908.22 | NOTE |
| Preferred Trust , FBO: Iris Shimabukuro | 9,908.22 | NOTE |
| Richard Vance | 9,908.22 | NOTE |
| Richard L Renner | 9,905.63 | NOTE |

| | | |
|---|---|---|
| Sterling Trust FBO Edward K Gregor | 9,879.42 | NOTE |
| Greg & Kim Maxwell | 9,869.71 | NOTE |
| The Revocable Living Trust of Steven | 9,860.78 | NOTE |
| Tommy F Crawford | 9,860.78 | NOTE |
| George Albright | 9,791.56 | AP |
| Addison Liburd | 9,753.66 | NOTE |
| Frank Stumpo | 9,753.66 | NOTE |
| IRA Resources, Inc - FBO Everett Melius | 9,753.66 | NOTE |
| IRA Resources, Inc - FBO Mike Downey | 9,753.66 | NOTE |
| IRA Resources, Inc - FOB William Barth | 9,753.66 | NOTE |
| IRA Resources, Inc, Custodian FBO: Debor: | 9,753.66 | NOTE |
| Richard Kelly | 9,753.66 | NOTE |
| J.M. Faurote | 9,717.38 | NOTE |
| Equity Trust FBO Peter Siewert 186006 | 9,682.61 | NOTE |
| Equity Trust, FBO David Walker 168919 | 9,682.61 | NOTE |
| Gary & Virginia King | 9,682.61 | NOTE |
| John T. Sinks | 9,682.61 | NOTE |
| Mike C Robertson | 9,682.61 | NOTE |
| Brent & Priscilla Lindberg | 9,571.90 | NOTE |
| David Biasotti | 9,560.32 | NOTE |
| Alfred J Menard Jr | 9,366.58 | NOTE |
| James D. & Judith A. Ashby | 9,366.58 | NOTE |
| John Larson | 9,366.58 | NOTE |
| Peter B. Long | 9,366.58 | NOTE |
| Jill Corey | 9,339.88 | NOTE |
| Lisa Lavine | 9,339.88 | NOTE |
| Ray F. & Phyllis D. Gardner | 9,300.92 | NOTE |
| Alton Ramon Jacobs | 9,278.84 | NOTE |
| Andy Stenovich | 9,278.84 | NOTE |
| Antonia Kindel | 9,278.84 | NOTE |
| Eugene C Fowler | 9,278.84 | NOTE |
| Lawrence Ranck | 9,278.84 | NOTE |
| Mona J Blessum Rev Trust | 9,278.84 | NOTE |
| Raymond B. Haughland | 9,278.84 | NOTE |
| William F. & Alma Jean Yeoman | 9,278.84 | NOTE |
| Gregg A. Wells | 9,023.28 | NOTE |
| Roger Milton | 8,959.94 | NOTE |
| Andrew J. Zamparelli | 8,959.94 | NOTE |
| Ashish & Sapna Mehta | 8,959.94 | NOTE |
| Cadieu Family LLC | 8,959.94 | NOTE |
| Catherine M. Harnish | 8,959.94 | NOTE |
| Charles L Mlaker Jr | 8,959.94 | NOTE |
| Charles R & Margo J Roper Rev Family Trs | 8,959.94 | NOTE |
| Chase Daniel Lindop | 8,959.94 | NOTE |
| Clayton & Frances Coleman | 8,959.94 | NOTE |
| D. Hilliard, Trustee of Jada Trust 4-22-88 | 8,959.94 | NOTE |
| Daniel & Sandra Davis | 8,959.94 | NOTE |

| | | |
|---|---|---|
| Daryl Simonich | 8,959.94 | NOTE |
| David & Cathy Parmer Revocable Living Tr | 8,959.94 | NOTE |
| David S. Cook | 8,959.94 | NOTE |
| Edward W & June E Dwier | 8,959.94 | NOTE |
| Equity Trust FBO  Bruce A. Halgren | 8,959.94 | NOTE |
| Equity Trust FBO  Jason R. Lenardson | 8,959.94 | NOTE |
| Equity Trust FBO  Robert Standefer 168 | 8,959.94 | NOTE |
| Equity Trust FBO  Waylon Simpson | 8,959.94 | NOTE |
| Equity Trust FBO Bradley P. Barnes 1 | 8,959.94 | NOTE |
| Equity Trust FBO David M. Gillies | 8,959.94 | NOTE |
| Equity Trust FBO Dennis  Hudson 172596 | 8,959.94 | NOTE |
| Equity Trust FBO Douglas Browning 1679 | 8,959.94 | NOTE |
| Equity Trust FBO Gerald Roeder 170203 | 8,959.94 | NOTE |
| Equity Trust FBO James Ertel 171093 | 8,959.94 | NOTE |
| Equity Trust FBO John O'Boyle 173512 | 8,959.94 | NOTE |
| Equity Trust FBO Kenneth S. Fels 17186 | 8,959.94 | NOTE |
| Equity Trust FBO L. J. Kuczynski 17089 | 8,959.94 | NOTE |
| Equity Trust FBO Paul Russell 171560 | 8,959.94 | NOTE |
| Equity Trust FBO R. G. Fullarton 17426 | 8,959.94 | NOTE |
| Equity Trust FBO Terry B. Hill 173073 | 8,959.94 | NOTE |
| Equity Trust FBO Thomas Alen Chappel | 8,959.94 | NOTE |
| Equity Trust FBO W.F. Alves Jr. 171864 | 8,959.94 | NOTE |
| Equity Trust FBO Warren R. Bernard Jr. | 8,959.94 | NOTE |
| Equity Trust FBO Willis Helms 171907 | 8,959.94 | NOTE |
| Equity Trust, FBO Douglas White 170775 | 8,959.94 | NOTE |
| Equity Trust, FBO Eileen Loyd 188725 | 8,959.94 | NOTE |
| Hollister Family Trust, Est. 8-13-98 | 8,959.94 | NOTE |
| IRA Resources FBO Dennis Klompstra | 8,959.94 | NOTE |
| IRA Resources FBO Larry Rogers 31939 | 8,959.94 | NOTE |
| IRA Resources, FBO Christiona Goetz 334C | 8,959.94 | NOTE |
| IRA Resources, FBO Nicholas Batson 3328( | 8,959.94 | NOTE |
| IRA Resources, FBO Richard Renner 32433 | 8,959.94 | NOTE |
| IRA Resources, FBO Thomas William Diller | 8,959.94 | NOTE |
| Ira Yudenfreund | 8,959.94 | NOTE |
| James J. & Linda M. Stahl | 8,959.94 | NOTE |
| James Roberts | 8,959.94 | NOTE |
| James Sundell | 8,959.94 | NOTE |
| James Yoachum | 8,959.94 | NOTE |
| John E or Lester Newell | 8,959.94 | NOTE |
| John E. or Lester Newell | 8,959.94 | NOTE |
| John R. Gilbo | 8,959.94 | NOTE |
| John Richard Sprankle Jr. Trust | 8,959.94 | NOTE |
| Keith & Ronald Hard | 8,959.94 | NOTE |
| Kenneth L. & Jo Ann Miller | 8,959.94 | NOTE |
| Kevin Davis | 8,959.94 | NOTE |
| Linda S Lewis Trust | 8,959.94 | NOTE |
| Lionel M. Lamoureux | 8,959.94 | NOTE |

| | | |
|---|---|---|
| Lloyd William Mauldin | 8,959.94 | NOTE |
| Lucille A Chaney | 8,959.94 | NOTE |
| Mark Clayton | 8,959.94 | NOTE |
| Matthew & Carina Thomas | 8,959.94 | NOTE |
| Merl & Martha Odman | 8,959.94 | NOTE |
| Michael A. McGuire | 8,959.94 | NOTE |
| Michelle Kinser & Bradley Evans | 8,959.94 | NOTE |
| Millard F. Kershner III | 8,959.94 | NOTE |
| Nils C Ericson | 8,959.94 | NOTE |
| Patrick J. McNeff | 8,959.94 | NOTE |
| Randy A. Huber | 8,959.94 | NOTE |
| Richard & Edna Bohlander | 8,959.94 | NOTE |
| Robert A. Pirson | 8,959.94 | NOTE |
| Rosemary R Ferguson | 8,959.94 | NOTE |
| Roxanne Mosher | 8,959.94 | NOTE |
| SimmonVincent F. | 8,959.94 | NOTE |
| Soares Trust UTD Feb. 16, 2004 | 8,959.94 | NOTE |
| Sterling Trust FBO Curtis Hale Jack | 8,959.94 | NOTE |
| Sterling Trust FBO Dean Vaniter | 8,959.94 | NOTE |
| Sterling Trust FBO Susan Mueller | 8,959.94 | NOTE |
| Sterling Trust, FBO Brent Lindberg | 8,959.94 | NOTE |
| Sterling Trust, FBO Harry P. Wampler | 8,959.94 | NOTE |
| Sterling Trust, FBO James D. Dye Jr. 169 | 8,959.94 | NOTE |
| Sterling Trust, FBO John A. Hayes 168184 | 8,959.94 | NOTE |
| Sterling Trust, FBO: Daniel David Klena | 8,959.94 | NOTE |
| Steven P. & Jennifer L. Bishop | 8,959.94 | NOTE |
| Stifel Nicolaus, FBO D Helfer 7261-8371 | 8,959.94 | NOTE |
| Terry E Williams | 8,959.94 | NOTE |
| Terry E. Williams | 8,959.94 | NOTE |
| Thaine W Cook Jr | 8,959.94 | NOTE |
| The Chatman Living Trust March 6, 1998 | 8,959.94 | NOTE |
| The Kline Family Trust | 8,959.94 | NOTE |
| The Miller & Winnell Herrington Family Tr | 8,959.94 | NOTE |
| Thomas A. Morrison | 8,959.94 | NOTE |
| Tony Wolfe & Karen Anderson | 8,959.94 | NOTE |
| Trust Company of America FBO James Scot | 8,959.94 | NOTE |
| Wanda Ward | 8,959.94 | NOTE |
| WIlliam Monical | 8,959.94 | NOTE |
| The George Family Trust dated 2/22/02 | 8,922.20 | NOTE |
| Ecolab | 8,906.37 | AP |
| Jeffrey Bradford Parker | 8,881.97 | NOTE |
| Kenneth L. Robinson | 8,867.73 | NOTE |
| Daniel E & Durenda Dolan | 8,804.01 | NOTE |
| Peter Panozzo | 8,804.01 | NOTE |
| Lew A & Susan L. Herndon Revocable Trus | 8,786.59 | NOTE |
| Carol, Kenneth & James Roberts | 8,784.00 | NOTE |
| Gary A & Mary A Merritt | 8,784.00 | NOTE |

| | | |
|---|---|---|
| David Ponsonby | 8,669.92 | NOTE |
| O.J. Stoutner | 8,644.56 | NOTE |
| Paul E Wommer | 8,623.62 | NOTE |
| Arthur C. Holmes | 8,614.62 | NOTE |
| George E Brown Revocable Living Trust | 8,614.62 | NOTE |
| Dorsey & Whitney, LLP | 8,592.50 | AP |
| Cornelius & M. Fay Cathcart | 8,587.57 | NOTE |
| Donald Wikoff | 8,587.57 | NOTE |
| Dr.Eric Saunders | 8,587.57 | NOTE |
| Equity Trust Co. FBO Victoria Veronica Sm | 8,587.57 | NOTE |
| Equity Trust FBO Robert Jarrett 185232 | 8,587.57 | NOTE |
| Equity Trust, FBO  Fred Worley 185536 | 8,587.57 | NOTE |
| Equity Trust, FBO Chad Cain 184828 | 8,587.57 | NOTE |
| Equity Trust, FBO David Hagler 184936 | 8,587.57 | NOTE |
| Equity Trust, FBO John Callan 185600 | 8,587.57 | NOTE |
| Equity Trust, FBO Joseph Kortsch 184829 | 8,587.57 | NOTE |
| Equity Trust, FBO Kim Sulipeck 185400 | 8,587.57 | NOTE |
| Equity Trust, FBO Louis Degati 185666 | 8,587.57 | NOTE |
| Equity Trust, FBO Marc Shupe 184691 | 8,587.57 | NOTE |
| Equity Trust, FBO Paul A. Modreski 18539! | 8,587.57 | NOTE |
| Frank C Kuter | 8,587.57 | NOTE |
| Gerald & Vicki Howley | 8,587.57 | NOTE |
| James A Erway | 8,587.57 | NOTE |
| Jimmy A Hyslop | 8,587.57 | NOTE |
| Jimmy P Easley Trust | 8,587.57 | NOTE |
| John S Fitzgerald | 8,587.57 | NOTE |
| John Sills | 8,587.57 | NOTE |
| Leo Simmons | 8,587.57 | NOTE |
| Lloyd & Leola Richards | 8,587.57 | NOTE |
| Mark R Rogers | 8,587.57 | NOTE |
| Messer Family Trust | 8,587.57 | NOTE |
| Patricia and Bob Reeves | 8,587.57 | NOTE |
| Robert & Dorothy Beauprez | 8,587.57 | NOTE |
| Thomas H Moore | 8,587.57 | NOTE |
| Willaim J Traxler | 8,587.57 | NOTE |
| IRA Resources FBO Kathleen Ann Cutt | 8,512.32 | NOTE |
| IRA Resources, Inc - FBO Clifford Gray | 8,512.32 | NOTE |
| IRA Resources, Inc - FBO Dale Z Bonesteel | 8,512.32 | NOTE |
| IRA Resources, Inc - FBO Gordon A Darnell | 8,512.32 | NOTE |
| IRA Resources, Inc - FBO James Stanton | 8,512.32 | NOTE |
| IRA Resources, Inc - FBO Marc Randall | 8,512.32 | NOTE |
| IRA Resources, Inc - FBO Steven Schneider | 8,512.32 | NOTE |
| IRA Resources, Inc - Thurman N Wright | 8,512.32 | NOTE |
| IRA Resources, Inc FBO Larry Joseph Thill | 8,512.32 | NOTE |
| SYAG - FBO Durenda Dolan #1068004468! | 8,512.32 | NOTE |
| Leo and Linda E. Paik | 8,489.26 | NOTE |
| IRA Resources, Inc - FBO Nicholas Batson | 8,453.18 | NOTE |

| | | |
|---|---|---|
| IRA Resources, Inc - Frank Anderson | 8,453.18 | NOTE |
| Eric Bock | 8,451.27 | NOTE |
| Fox & Cova, Inc Profit Sharing Trust | 8,451.27 | NOTE |
| David Hoffer & Eileen Peluso-Hoffer | 8,437.43 | NOTE |
| Equity Trust, FBO George Cajoleas 182378 | 8,437.43 | NOTE |
| Marshall W. Rubin | 8,437.43 | NOTE |
| Ted Holloway | 8,437.43 | NOTE |
| Town of Weaverville Tax Collector | 8,363.40 | AP |
| Barbara Vinson | 8,329.18 | NOTE |
| Eli Lilly | 8,329.18 | NOTE |
| Equity Trust, FBO Joseph Gentry | 8,329.18 | NOTE |
| Fiserv Trust Company | 8,329.18 | NOTE |
| Larry & Ligia Thilly | 8,329.18 | NOTE |
| Pete H. & Edith M. Calvillo Family Trust | 8,329.18 | NOTE |
| Susan Bergsten | 8,329.18 | NOTE |
| Alexander L Worobey MD | 8,287.29 | NOTE |
| Carney Family Trust | 8,287.29 | NOTE |
| Entrust, FBO Peter James Gottardi | 8,287.29 | NOTE |
| Equity Trust, FBO Bruce Raabe 184321 | 8,287.29 | NOTE |
| Equity Trust, FBO Daniel M Meachum 182 | 8,287.29 | NOTE |
| Equity Trust, FBO Daniel T. Anders 184000 | 8,287.29 | NOTE |
| Equity Trust, FBO David Michael Gillies | 8,287.29 | NOTE |
| Equity Trust, FBO Gary A Luft 181639 | 8,287.29 | NOTE |
| Equity Trust, FBO Gary L Beaver 183910 | 8,287.29 | NOTE |
| Equity Trust, FBO Harold Osborn 183026 | 8,287.29 | NOTE |
| Equity Trust, FBO Joseph R. Hearon 18450 | 8,287.29 | NOTE |
| Equity Trust, FBO Kerry T. Fleming | 8,287.29 | NOTE |
| Equity Trust, FBO Paul Fronapfel 184173 | 8,287.29 | NOTE |
| Equity Trust,FBO  Ken Huang 183271 | 8,287.29 | NOTE |
| George L Balta | 8,287.29 | NOTE |
| IRA Resources, FBO Thomas  Diller 35-355 | 8,287.29 | NOTE |
| IRA Resources, Inc FBO Larry Rogers 3193! | 8,287.29 | NOTE |
| James Basile | 8,287.29 | NOTE |
| Jeffrey L Roney | 8,287.29 | NOTE |
| Joe R. Lacy | 8,287.29 | NOTE |
| John R. Tejml | 8,287.29 | NOTE |
| Joseph B Gentry | 8,287.29 | NOTE |
| Joseph E Underwood | 8,287.29 | NOTE |
| Kehuli Partners, LTD | 8,287.29 | NOTE |
| Ken Huang | 8,287.29 | NOTE |
| Nils C Erickson Living Trust | 8,287.29 | NOTE |
| Paul Fronapfel | 8,287.29 | NOTE |
| Ricky & Sandra Falaschetti | 8,287.29 | NOTE |
| RKJA Investment, LLC | 8,287.29 | NOTE |
| Robert B Garrett | 8,287.29 | NOTE |
| Robert Beck | 8,287.29 | NOTE |
| Terry Elverum | 8,287.29 | NOTE |

| | | |
|---|---|---|
| The Bean Joint Living Trust | 8,287.29 | NOTE |
| The Riblet Revocable Trust | 8,287.29 | NOTE |
| Alton Synatschk | 8,269.31 | NOTE |
| Equity Trust FBO Daniel Davis 175877 | 8,269.31 | NOTE |
| Equity Trust FBO Stephen Wright 175801 | 8,269.31 | NOTE |
| IRA Resources, FBO Lavoin Allison 33889 | 8,269.31 | NOTE |
| Kenneth J King | 8,269.31 | NOTE |
| Lloyd R. & Connie M. Weaver | 8,269.31 | NOTE |
| Richard J & Mary E Buckley | 8,269.31 | NOTE |
| Sterling Trust  FBO Leon Vernon Engleking | 8,269.31 | NOTE |
| Sterling Trust, FBO David Hilliard 171558 | 8,269.31 | NOTE |
| Sterling Trust, FBO Donald Boulton 17089. | 8,269.31 | NOTE |
| Thomas Alan Chapelle | 8,269.31 | NOTE |
| Wilburn L & Linda A Blakely | 8,269.31 | NOTE |
| William M & Elizabeth M Norman | 8,269.31 | NOTE |
| Garland Earley | 8,265.69 | NOTE |
| The Black Family Amended Revocable Livi | 8,265.69 | NOTE |
| James A & Glenda S Rhinebarger | 8,228.10 | NOTE |
| James Doten Family Exemption Trust | 8,204.65 | NOTE |
| Kenneth E. Cross | 8,204.65 | NOTE |
| Skyworld Intl. Express Inc. | 8,193.77 | AP |
| Tammy Butler | 8,190.36 | NOTE |
| TCF Equipment Finance | 8,163.40 | AP |
| NCGA GOLF | 8,039.00 | AP |
| John Kwasny | 7,838.31 | NOTE |
| David E. Phillips | 7,800.57 | NOTE |
| Maynard W. Buck | 7,731.19 | NOTE |
| David R. Seidler | 7,708.42 | NOTE |
| James S & Judith R Ceragioli Fam Tr-Bypas | 7,635.08 | NOTE |
| Equity Trust FBO Greg  Maxwell 20033857 | 7,611.94 | NOTE |
| Equity Trust FBO Nataliya Dixon 20033665 | 7,611.94 | NOTE |
| Equity Trust, FBO Gregory Dixon 2003366 | 7,611.94 | NOTE |
| Equity Turst, FBO Tim McAvoy 20023470C | 7,611.94 | NOTE |
| Elizabeth Thieman | 7,558.28 | NOTE |
| Glenn O Brown | 7,558.28 | NOTE |
| Leann Thieman | 7,558.28 | NOTE |
| Jeff & Debbie Baker | 7,521.32 | NOTE |
| John F Holsopple | 7,501.98 | NOTE |
| Vergetta Boyer & Frank Van Haelst | 7,501.98 | NOTE |
| Dirk W. Feikena | 7,492.99 | NOTE |
| Michael & Catherine Valenzuela | 7,492.99 | NOTE |
| Glenn Schoenthaler | 7,434.32 | NOTE |
| Patricia Stoughton | 7,415.81 | NOTE |
| Salvador Magallanez | 7,415.81 | NOTE |
| Abelardo L. Estacion | 7,256.36 | NOTE |
| Michael & Marie Pienkos | 7,256.36 | NOTE |
| Marion Oaks Country Club, Inc. | 7,097.36 | AP |

| | | |
|---|---|---|
| Thomas M Barrett | 7,093.60 | NOTE |
| Sue Anne Bennett | 6,995.27 | NOTE |
| Wesley H. Kline, Jr. | 6,995.27 | NOTE |
| Harrell's LLC | 6,993.60 | AP |
| Allan J Hurst | 6,940.99 | NOTE |
| Andrew Nicholas Napolitane | 6,940.99 | NOTE |
| Christina Stallone | 6,940.99 | NOTE |
| IRA Resources, Inc FBO: Patricia Cap | 6,940.99 | NOTE |
| Kenneth & Judith Haeterich | 6,940.99 | NOTE |
| Kenneth & Kathleen Browne Living Trust | 6,940.99 | NOTE |
| Leon Berrien | 6,940.99 | NOTE |
| Pluimar Family Trust | 6,940.99 | NOTE |
| Ron & Carol Schlattman | 6,940.99 | NOTE |
| Betty Lowe | 6,940.98 | NOTE |
| Xcel Energy | 6,926.77 | AP |
| Dr. Bharat M Persad | 6,844.68 | NOTE |
| Burt M Brien | 6,829.27 | NOTE |
| C. Rinn Cleavelin | 6,829.27 | NOTE |
| Charles & Charlotte Selvidge Family Trust | 6,829.27 | NOTE |
| Darrell E Milner | 6,829.27 | NOTE |
| David W. Yule | 6,829.27 | NOTE |
| Donald C Beaver | 6,829.27 | NOTE |
| Edward E. Mild | 6,829.27 | NOTE |
| Equity Trust FBO Bradley Dwelle 187749 | 6,829.27 | NOTE |
| Equity Trust FBO David Ryan 189061 | 6,829.27 | NOTE |
| Equity Trust FBO James Hall 1885740 | 6,829.27 | NOTE |
| Equity Trust FBO Larry Kilgore 186893 | 6,829.27 | NOTE |
| Equity Trust FBO Mark McMahon 187918 | 6,829.27 | NOTE |
| Equity Trust FBO Michael Shaw 180514 | 6,829.27 | NOTE |
| Equity Trust FBO Paul Modreski 185399 | 6,829.27 | NOTE |
| Equity Trust FBO Robert Peck 187945 | 6,829.27 | NOTE |
| Equity Trust FBO Todd Zaremba 188240 | 6,829.27 | NOTE |
| Equity Trust, FBO Jeffrey Baker 187735 | 6,829.27 | NOTE |
| Equity Trust, FBO Jerry A. Gossner 189776 | 6,829.27 | NOTE |
| Equity Trust, FBO John Jawor 189791 | 6,829.27 | NOTE |
| George J. Cimbala | 6,829.27 | NOTE |
| IRA Resources, FBO Christina Goetz 33409 | 6,829.27 | NOTE |
| Keith W Bryant | 6,829.27 | NOTE |
| Kenneth J. & Mary H. Rysenga | 6,829.27 | NOTE |
| Kingdom Trust Co FBO S. Jackson 1100109 | 6,829.27 | NOTE |
| Orlando C Guida | 6,829.27 | NOTE |
| Paul & Joan Hopkins | 6,829.27 | NOTE |
| quity Trust FBO Thomas Slyter 189282 | 6,829.27 | NOTE |
| Roger Hagedorn | 6,829.27 | NOTE |
| William R. Johnson | 6,829.27 | NOTE |
| Adrian M. Foley III | 6,716.68 | NOTE |
| Beverly M. Baetge | 6,716.68 | NOTE |

| | | |
|---|---|---|
| Chris D. & Kathleen J Erickson | 6,716.68 | NOTE |
| Daryl E. Bonsall | 6,716.68 | NOTE |
| David A. & Terri Jones | 6,716.68 | NOTE |
| Dennis R. & Patricia A. Wilson | 6,716.68 | NOTE |
| Donald & Marie Franson Revocable Trust | 6,716.68 | NOTE |
| Dr John Brzezicki | 6,716.68 | NOTE |
| Edward W June E Dwier | 6,716.68 | NOTE |
| Equity | 6,716.68 | NOTE |
| Equity Trust, FBO Bruce Thake 181074 | 6,716.68 | NOTE |
| Equity Trust, FBO David Brink 156388 | 6,716.68 | NOTE |
| Equity Trust, FBO Gary Conn 180997 | 6,716.68 | NOTE |
| Equity Trust, FBO Gary Luft 181639 | 6,716.68 | NOTE |
| Equity Trust, FBO Gary Merritt 180808 | 6,716.68 | NOTE |
| Equity Trust, FBO Harold Dollar 181212 | 6,716.68 | NOTE |
| Equity Trust, FBO James Haefeli 181472 | 6,716.68 | NOTE |
| Equity Trust, FBO Mark Costley 181729 | 6,716.68 | NOTE |
| Equity Trust, FBO Michael Stong 181471 | 6,716.68 | NOTE |
| Equity Trust, FBO R. Christensen 181573 | 6,716.68 | NOTE |
| Family Trust Grefsrud | 6,716.68 | NOTE |
| Frank C. Kuter | 6,716.68 | NOTE |
| Gene N. & Mary Lou Nauert | 6,716.68 | NOTE |
| IRA Resources, FBO Kenneth Robinson 32( | 6,716.68 | NOTE |
| IRA Resources, FBO Pam Schneider 35-34( | 6,716.68 | NOTE |
| IRA Resources, FBO Stephen Rebuck 3217 | 6,716.68 | NOTE |
| IRA Resources, FBO Steven Thomas 33337 | 6,716.68 | NOTE |
| James M Faurote | 6,716.68 | NOTE |
| Jeffrey Davis | 6,716.68 | NOTE |
| Jeffrey L. Morse | 6,716.68 | NOTE |
| John B. Roberts | 6,716.68 | NOTE |
| KARJ Investment, LLC | 6,716.68 | NOTE |
| Kathrine and Gene Nauert | 6,716.68 | NOTE |
| Kenneth C & Deborah D. Ludington | 6,716.68 | NOTE |
| Mark A Varljen | 6,716.68 | NOTE |
| Mark H Seegel | 6,716.68 | NOTE |
| Mary K Dunn | 6,716.68 | NOTE |
| Olavi & Leila Hamalainen Family Trust | 6,716.68 | NOTE |
| Pedro O. Vales | 6,716.68 | NOTE |
| Randell J Stacks | 6,716.68 | NOTE |
| Robert T. & Frances M. Michalak | 6,716.68 | NOTE |
| Ronald E. & Mary E. Summers | 6,716.68 | NOTE |
| Soon-Ing Chew & Jacqueline Lai | 6,716.68 | NOTE |
| The Barnes Family Trust | 6,716.68 | NOTE |
| Callaway | 6,639.06 | AP |
| Merl G & Martha Odman | 6,547.30 | NOTE |
| Willis E Helms | 6,547.30 | NOTE |
| Alabama Power | 6,539.24 | AP |
| Albert V. Drlicka Amended & Restated Irre | 6,502.44 | NOTE |

| | | |
|---|---|---|
| Alicia Chapin | 6,502.44 | NOTE |
| ames R Rich SD IRA Acct #7440 | 6,502.44 | NOTE |
| Annora Webber | 6,502.44 | NOTE |
| Barbara Curtis | 6,502.44 | NOTE |
| Barbara Esmark | 6,502.44 | NOTE |
| Barney Francescon | 6,502.44 | NOTE |
| Bernstein Family Trust | 6,502.44 | NOTE |
| Bily Family Trust | 6,502.44 | NOTE |
| Bradley Franklin | 6,502.44 | NOTE |
| Caminvestco, Inc | 6,502.44 | NOTE |
| Carol J. Urdahl | 6,502.44 | NOTE |
| Carroll E or Pamela C. Altizer | 6,502.44 | NOTE |
| Cecilia Young | 6,502.44 | NOTE |
| Charles M & Yvonne Todd Rev Living Trust | 6,502.44 | NOTE |
| Clint Palmer | 6,502.44 | NOTE |
| Douglas A or Marilyn M Weaver | 6,502.44 | NOTE |
| Earlea Sidwell | 6,502.44 | NOTE |
| Eddy or Abel Buendia | 6,502.44 | NOTE |
| Edward L. Hicks | 6,502.44 | NOTE |
| Edwin N Parkhurst | 6,502.44 | NOTE |
| ETC Investments, LLC | 6,502.44 | NOTE |
| Evelyn M Lewis | 6,502.44 | NOTE |
| Everett Henrickson | 6,502.44 | NOTE |
| Gary Heim | 6,502.44 | NOTE |
| Glenn Poynor | 6,502.44 | NOTE |
| Howard Lynn or Gennie E. Hilburn | 6,502.44 | NOTE |
| IRA Resources - FBO Dale Lint | 6,502.44 | NOTE |
| IRA Resources - FBO David Cox | 6,502.44 | NOTE |
| IRA Resources - FBO Larry Davenport | 6,502.44 | NOTE |
| IRA Resources - FBO Trent Emmons | 6,502.44 | NOTE |
| IRA Resources Inc - FBO - Gary Fraternale | 6,502.44 | NOTE |
| IRA Resources, Inc - Charles Yaeger, Jr | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Bobby Bartlett | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Carol Strader | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Carol Williams | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Dale Stanton | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Deborah Stanton | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO James Ceragioli | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Juanita Kaiser | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Louis S. Brown | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Lyndle R Kirtley | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Marvin E Parvino | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Melvin Davis | 6,502.44 | NOTE |
| IRA Resources, Inc - FBO Vaughn T Butner | 6,502.44 | NOTE |
| IRA Resources, Inc -FBO Michael Zellinger | 6,502.44 | NOTE |
| IRA Resources, Inc FBO Concetta J West | 6,502.44 | NOTE |
| IRA Resources, Inc FBO Rob Sampson | 6,502.44 | NOTE |

| | | |
|---|---|---|
| IRA Resources, Inc-FBO Charlotte Parrott | 6,502.44 | NOTE |
| James G Chastain | 6,502.44 | NOTE |
| Janet H Kocornik Living Trust | 6,502.44 | NOTE |
| Jeffery S Scott | 6,502.44 | NOTE |
| Jeffry Newsom | 6,502.44 | NOTE |
| Joe F Rehders Irrevocable Trust | 6,502.44 | NOTE |
| Joel Good | 6,502.44 | NOTE |
| John Golden | 6,502.44 | NOTE |
| John Handwerg Jr. Trust | 6,502.44 | NOTE |
| Joseph C Heuer | 6,502.44 | NOTE |
| Joseph Cecil Heuer, Jr. Living Trust | 6,502.44 | NOTE |
| Joshua Geherty | 6,502.44 | NOTE |
| Leon Olson | 6,502.44 | NOTE |
| Lyndle Kirtley | 6,502.44 | NOTE |
| Marion U Graham Fam Tr | 6,502.44 | NOTE |
| Mark Roisen | 6,502.44 | NOTE |
| Martha Rogers Trust dtd 2/2/12 | 6,502.44 | NOTE |
| McNeil S Fiske | 6,502.44 | NOTE |
| Michael Nauert | 6,502.44 | NOTE |
| Michele Severence | 6,502.44 | NOTE |
| Moe Sapiro | 6,502.44 | NOTE |
| Pete Calvillo | 6,502.44 | NOTE |
| Ralph Halvorson | 6,502.44 | NOTE |
| Randy Moss | 6,502.44 | NOTE |
| Richard A or Susan H Landholm | 6,502.44 | NOTE |
| Richard Brainard | 6,502.44 | NOTE |
| Richard Follestad | 6,502.44 | NOTE |
| Robert Schnieders Family Trust | 6,502.44 | NOTE |
| Roger Auerbacher | 6,502.44 | NOTE |
| Ronald Anderson | 6,502.44 | NOTE |
| Sharon E. Smith Revocable Trust of 1995 | 6,502.44 | NOTE |
| Stephen or Jan Smith | 6,502.44 | NOTE |
| Sterling Trust Co - FBO Joe Arsuaga | 6,502.44 | NOTE |
| Sterling Trust Co. - FBO Gavin A Bruno | 6,502.44 | NOTE |
| Sterling Trust Co. - FBO James Fernandez | 6,502.44 | NOTE |
| Steven Hall | 6,502.44 | NOTE |
| The Jensen Family Trust | 6,502.44 | NOTE |
| Trung Bui | 6,502.44 | NOTE |
| William Morand | 6,502.44 | NOTE |
| William R or Bobbie L. White | 6,502.44 | NOTE |
| Anthony & Patricia Leigh | 6,455.08 | NOTE |
| Anthony E. Boyce | 6,455.08 | NOTE |
| Bradley Olson | 6,455.08 | NOTE |
| Christian & Sarah Poulsen | 6,455.08 | NOTE |
| Douglas Samuelson | 6,455.08 | NOTE |
| Equity Trust FBO Dennis Hart 186894 | 6,455.08 | NOTE |
| Equity Trust FBO Louis Degati 185666 | 6,455.08 | NOTE |

| | | |
|---|---|---|
| Equity Trust, FBO David Phillips 187148 | 6,455.08 | NOTE |
| Equity Trust, FBO Edgar Cl. Hipp 186784 | 6,455.08 | NOTE |
| Equity Trust, FBO Eric Saunders 183672 | 6,455.08 | NOTE |
| Equity Trust, FBO Jerald Parker 182391 | 6,455.08 | NOTE |
| Equity Trust, FBO Jerome Gruender 1871( | 6,455.08 | NOTE |
| Equity Trust, FBO Joseph Scheper 186121 | 6,455.08 | NOTE |
| Equity Trust, FBO Karl Jon Gabel 187072 | 6,455.08 | NOTE |
| Equity Trust, FBO Kerry Fleming 184503 | 6,455.08 | NOTE |
| Equity Trust, FBO M.R.Alberson 181905 | 6,455.08 | NOTE |
| Equity Trust, FBO Michael F Shaw | 6,455.08 | NOTE |
| Equity Trust, FBP Kenneth Klode z034153 | 6,455.08 | NOTE |
| Golden Oak Coop Corp, Nelson Colvin, Pre | 6,455.08 | NOTE |
| James E Stock | 6,455.08 | NOTE |
| John A Forbing | 6,455.08 | NOTE |
| Ken Reffstrup | 6,455.08 | NOTE |
| Liberty Trust Co FBO D Boone #TC003634 | 6,455.08 | NOTE |
| Randall F Cowles | 6,455.08 | NOTE |
| Richard Halluska | 6,455.08 | NOTE |
| Robert & Dorthy Beauprez | 6,455.08 | NOTE |
| Robert Winston Fithian Revocable Trust | 6,455.08 | NOTE |
| Stephen R Moran | 6,455.08 | NOTE |
| Timothy O'Sullivan | 6,455.08 | NOTE |
| Tim Fitzgerald | 6,307.93 | NOTE |
| US Foods- Cimarron | 6,301.13 | AP |
| High Tech Irrigation, Inc. | 6,262.15 | AP |
| John H Bruening | 6,210.97 | NOTE |
| David Saslav & Melissa Smith | 6,201.98 | NOTE |
| IRA Resources,FBO Robert Sampson 3311 | 6,201.98 | NOTE |
| Sterling Trust, FBO James Sundell 175055 | 6,201.98 | NOTE |
| Thomas A Riegler Rev Family Trust | 6,201.98 | NOTE |
| Level 3 Communications | 6,178.53 | AP |
| Dennis & Lisa Parrett | 6,134.73 | NOTE |
| Charles Lomeli, Tax Collector | 6,110.53 | AP |
| David S. Sheets | 6,108.07 | NOTE |
| Robert Hendricks | 6,088.66 | NOTE |
| Aaron Jacoby | 6,027.62 | NOTE |
| Donald A. & Marta M. Fritch | 6,027.62 | NOTE |
| Donald McCobb | 6,027.62 | NOTE |
| Jean A Barrett | 6,027.62 | NOTE |
| Michael C. Hoover | 6,027.62 | NOTE |
| NGF Consulting, Inc. | 6,000.00 | AP |
| Lloyd & Penny Baker Trust 6-10-2003 | 5,951.95 | NOTE |
| Ronald Mierczewski | 5,919.40 | NOTE |
| IRA Resources - FBO Don Morgan | 5,852.20 | NOTE |
| Juanita A. Kaiser | 5,837.37 | NOTE |
| Donald Merten | 5,790.20 | NOTE |
| Sunbelt Rentals, Inc. | 5,693.28 | AP |

| | | |
|---|---|---|
| Vincent J Ballisty | 5,691.61 | NOTE |
| Anthony Jagmin | 5,674.88 | NOTE |
| Arthur Swanson | 5,674.88 | NOTE |
| Bob Balgeman | 5,674.88 | NOTE |
| Daniel or Dianna Jamieson | 5,674.88 | NOTE |
| David or Vanvarang Ratcliffe | 5,674.88 | NOTE |
| Dennis Morgan | 5,674.88 | NOTE |
| Drew & Donna Darnell | 5,674.88 | NOTE |
| Equity Trust, FBO Kenneth Roberts 17651( | 5,674.88 | NOTE |
| Equity Trust, FBO Stephen LaMotta 17844 | 5,674.88 | NOTE |
| Equity Trust, Kenneth L. Roberts 176517 | 5,674.88 | NOTE |
| Fran Dietrich | 5,674.88 | NOTE |
| Fred or Vikki Davis | 5,674.88 | NOTE |
| Geraldine J Bullis Inter-Vivos Tr  1-3-86 | 5,674.88 | NOTE |
| Harlan Mayne | 5,674.88 | NOTE |
| IRA Resources Inc - FBO Juanita Kaiser | 5,674.88 | NOTE |
| IRA Resources, Inc  FBO Ralph Kitterman | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Charles White | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Duane A Sperl | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Fred Downs | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Kathleen Davis | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Larry Davenport | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Leonard Anthony | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Leonard G Leib | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Linda Harger | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Lucas Terranova | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Marvin Parvino | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Peter Pogorzala | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Rae Schlappi | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Robert A Russo | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Robert E Sanders | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Robert L Mahle | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Robert W Saul | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO Stephen R Weine | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO William Barth | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO William C Devoe | 5,674.88 | NOTE |
| IRA Resources, Inc - FBO William J Aiken | 5,674.88 | NOTE |
| IRA Resources, Inc - Gary L Piontkowski | 5,674.88 | NOTE |
| IRA Resources, Inc -FBO Charlotte Parrott | 5,674.88 | NOTE |
| IRA Resources, Inc FBO Daniel V. Carroll | 5,674.88 | NOTE |
| Jonathan N Ricketts Rev Living Trust | 5,674.88 | NOTE |
| Kathleen Ann Cutt | 5,674.88 | NOTE |
| Kathryn G. Lanz, Trustee | 5,674.88 | NOTE |
| Keller Wells | 5,674.88 | NOTE |
| Kemp Living Trust | 5,674.88 | NOTE |
| Kenneth & Karen Vanderbosch | 5,674.88 | NOTE |
| Kenneth & Sharon Tucker 2001 Trust | 5,674.88 | NOTE |

| | | |
|---|---|---|
| Louis or Carol Panigutti | 5,674.88 | NOTE |
| Michael Christie | 5,674.88 | NOTE |
| Raymond Rich | 5,674.88 | NOTE |
| Robert Christensen | 5,674.88 | NOTE |
| Robert Manning | 5,674.88 | NOTE |
| Ruvdeep Randhawa | 5,674.88 | NOTE |
| Sandy Condello | 5,674.88 | NOTE |
| Sterling Trust, FBO David M Cheek | 5,674.88 | NOTE |
| The Given Family Trust | 5,674.88 | NOTE |
| Todd or Dawn Van Ness | 5,674.88 | NOTE |
| Tom Byrne | 5,674.88 | NOTE |
| Walter Emerson | 5,674.88 | NOTE |
| Werner & Kim Ann Reichenbach | 5,613.83 | NOTE |
| Alvarez Revocable Trust | 5,552.79 | NOTE |
| Carl J. & Judy L. Breth | 5,552.79 | NOTE |
| Carol L. Hallock | 5,552.79 | NOTE |
| Charles Claytor | 5,552.79 | NOTE |
| Charles J Yeager, Jr. | 5,552.79 | NOTE |
| Charles M. Koemm | 5,552.79 | NOTE |
| Christie Desroisiers | 5,552.79 | NOTE |
| Daniel Murphy | 5,552.79 | NOTE |
| Elizabeth K. Breslin | 5,552.79 | NOTE |
| Ellen Mullins | 5,552.79 | NOTE |
| George & Jeff Robinson | 5,552.79 | NOTE |
| George R. Kempton Trust | 5,552.79 | NOTE |
| Georgina Randolph | 5,552.79 | NOTE |
| Gerald Taback | 5,552.79 | NOTE |
| Herndon Revocable Trust | 5,552.79 | NOTE |
| Humdol, Inc | 5,552.79 | NOTE |
| IRA Resources | 5,552.79 | NOTE |
| IRA RESOURCES FBO DONALD JEFFORD | 5,552.79 | NOTE |
| IRA Resources, Inc. | 5,552.79 | NOTE |
| J & J Furukawa Family Trust dtd 5-24-1994 | 5,552.79 | NOTE |
| James M & Cynthia S Dellavilla | 5,552.79 | NOTE |
| James S. Austgen | 5,552.79 | NOTE |
| Joseph H West | 5,552.79 | NOTE |
| Joseph Kuei | 5,552.79 | NOTE |
| Leonard E. Buser | 5,552.79 | NOTE |
| Lyndi Newbry | 5,552.79 | NOTE |
| Michael J. Desilva | 5,552.79 | NOTE |
| R4 Securities, LLC | 5,552.79 | NOTE |
| Raymond & Patricia Lowy | 5,552.79 | NOTE |
| Rita Henry | 5,552.79 | NOTE |
| Robert Desroisiers | 5,552.79 | NOTE |
| Roy Hodges | 5,552.79 | NOTE |
| Shan C. Chu | 5,552.79 | NOTE |
| Steven John Troccoli | 5,552.79 | NOTE |

| | | |
|---|---|---|
| Tamera K. & Richard T. Martin | 5,552.79 | NOTE |
| The Aaron Aguilar & Laura Aguilar Trust | 5,552.79 | NOTE |
| The Bernstein Family Trust | 5,552.79 | NOTE |
| The William G Binnewies Rev Living Trust | 5,552.79 | NOTE |
| Theodore L Johnson | 5,552.79 | NOTE |
| Thomas P. Fuhrman Trust | 5,552.79 | NOTE |
| Vestal J. McEndarfer | 5,552.79 | NOTE |
| Vincent & Joanne Scicchitano | 5,552.79 | NOTE |
| William R. Wolfe | 5,552.79 | NOTE |
| David A Newbry | 5,552.79 | NOTE |
| IRA Resources, Inc - FBO Merrill Edwards | 5,549.61 | NOTE |
| IRA Resources, Inc - FBO Frank S Alimento | 5,476.26 | NOTE |
| Barbara J Firszt Revocable Living Trust | 5,428.25 | NOTE |
| Barry H Galison & Pamela Klein Galison | 5,428.25 | NOTE |
| Benjamin D. Schulman | 5,428.25 | NOTE |
| Bill & Melanie Newman | 5,428.25 | NOTE |
| Catherine Avallone | 5,428.25 | NOTE |
| Charles Ladd | 5,428.25 | NOTE |
| Crystal & Brian Noble | 5,428.25 | NOTE |
| Daniel M. Buel | 5,428.25 | NOTE |
| David J. & Patricia Campo | 5,428.25 | NOTE |
| Fred & Delores Nelson | 5,428.25 | NOTE |
| Gary Kaufman | 5,428.25 | NOTE |
| George Gerson | 5,428.25 | NOTE |
| Gerald Johnson | 5,428.25 | NOTE |
| Geraldine J Bullis Inter-Vivos Tr 1-3-86 | 5,428.25 | NOTE |
| Gregory Greco | 5,428.25 | NOTE |
| IRA Resources  FBO Michael DonnellyJr | 5,428.25 | NOTE |
| Ira Resources Inc FBO Phillip G. Langston | 5,428.25 | NOTE |
| IRA Resources, Inc - FBO Dale D Lint | 5,428.25 | NOTE |
| IRA Resources, Inc - FBO Diane Kolb | 5,428.25 | NOTE |
| IRA Resources, Inc - FBO Dwight I Cummin | 5,428.25 | NOTE |
| IRA Resources, Inc - FBO Juanita A Kaiser | 5,428.25 | NOTE |
| IRA Resources, Inc - FBO Nancy A Rumple | 5,428.25 | NOTE |
| IRA Resources, Inc - FBO Sybil E Lint | 5,428.25 | NOTE |
| IRA Resources, Inc -FBO Dawn Marie Meg | 5,428.25 | NOTE |
| IRA Resources, Inc -FBO Gregory L Simpso | 5,428.25 | NOTE |
| IRA Resources, Inc -FBO James E. Warren | 5,428.25 | NOTE |
| IRA Resources, Inc FBO Michael Downey | 5,428.25 | NOTE |
| IRA Resources, Inc FBO Robert Sanders | 5,428.25 | NOTE |
| IRA Resources, Inc-FBO Charles T Keatley | 5,428.25 | NOTE |
| IRA Resources,Inc FBO Lucas V. Terranova | 5,428.25 | NOTE |
| James Heintz | 5,428.25 | NOTE |
| James Ludwigsen | 5,428.25 | NOTE |
| Jeffrey D Kaufman | 5,428.25 | NOTE |
| John P. Hudziak | 5,428.25 | NOTE |
| Joseph & Iris Yunck | 5,428.25 | NOTE |

| | | |
|---|---|---|
| Keith Buntin | 5,428.25 | NOTE |
| Kenneth & Jeanette Prefontaine | 5,428.25 | NOTE |
| Kenneth Crew | 5,428.25 | NOTE |
| Kenneth Hampton | 5,428.25 | NOTE |
| Kenneth Von Forell Jr. | 5,428.25 | NOTE |
| Larry Thill | 5,428.25 | NOTE |
| Living Tr of Clyde R & Frances A Pellet | 5,428.25 | NOTE |
| Marget Pronti | 5,428.25 | NOTE |
| Marvin Parvino | 5,428.25 | NOTE |
| Michael Pinter | 5,428.25 | NOTE |
| Nancy Rumple | 5,428.25 | NOTE |
| Raymond M. Bilecky | 5,428.25 | NOTE |
| Richard and Joann Roschy | 5,428.25 | NOTE |
| Robert F & Winnie M Carter | 5,428.25 | NOTE |
| Roland Swanson | 5,428.25 | NOTE |
| Stephen & June James | 5,428.25 | NOTE |
| Sterling Trust FBO Carol June Strader | 5,428.25 | NOTE |
| Sterling Trust FBO Jeffrey Kyle Bradley | 5,428.25 | NOTE |
| Sterling Trust FBO William Lewis 160601 | 5,428.25 | NOTE |
| Sterling Trust, Custodian FBO Glenn Poche | 5,428.25 | NOTE |
| Stewart, Sherri & Michelle Gartner | 5,428.25 | NOTE |
| The Keith & Doris Faulkner Family Trust | 5,428.25 | NOTE |
| The Lynne R. Schroeder Living Trust | 5,428.25 | NOTE |
| Thomas Morrison | 5,428.25 | NOTE |
| Thomas Pronti | 5,428.25 | NOTE |
| Walter Burinskas | 5,428.25 | NOTE |
| William Leschinsky | 5,428.25 | NOTE |
| The Jodi L Martin Trust Agreement 10-8-0 | 5,425.66 | NOTE |
| The Robert J Martin Jr Trust 10-8-09 | 5,425.66 | NOTE |
| Utilities Board of the City of Oneonta | 5,422.13 | AP |
| Jeffrey A. Jones | 5,413.97 | NOTE |
| Turf Star, Inc. | 5,339.17 | AP |
| Baker Donelson | 5,271.15 | AP |
| Martha Gholston | 5,253.79 | NOTE |
| Samuel Boswell | 5,253.79 | NOTE |
| Burt Brien | 5,074.63 | NOTE |
| David W. Levy | 5,074.63 | NOTE |
| Dennis Hart | 5,074.63 | NOTE |
| Equity Trust FBO Charles Howard 2033526 | 5,074.63 | NOTE |
| Equity Trust FBO Edgar Hipp 200175597 | 5,074.63 | NOTE |
| Equity Trust FBO Larry  Kilgore 200175694 | 5,074.63 | NOTE |
| Equity Trust FBO Paula Long 200338574 | 5,074.63 | NOTE |
| Equity Trust FBO T. O'Sullivan 200314035 | 5,074.63 | NOTE |
| Equity Trust, FBO Gregory Dixon 2003366! | 5,074.63 | NOTE |
| Equity Trust, FBO Robert Camron 200339: | 5,074.63 | NOTE |
| Equity Trust, FBO Robert Peck 200316144 | 5,074.63 | NOTE |
| Equity Trust, FBO William Henes 200326O: | 5,074.63 | NOTE |

| | | |
|---|---|---|
| Fred Shwom | 5,074.63 | NOTE |
| IRA Resources FBO Thomas Diller 35-3552 | 5,074.63 | NOTE |
| IRA Resources FBO Thomas Slocum 35223 | 5,074.63 | NOTE |
| James & Peggy King | 5,074.63 | NOTE |
| John Tejml | 5,074.63 | NOTE |
| Kenneth H & Lila Marie Crew | 5,074.63 | NOTE |
| Michael & Lorna Steady | 5,074.63 | NOTE |
| Mutchmik Liquidity, LLC | 5,074.63 | NOTE |
| Paul Modreski | 5,074.63 | NOTE |
| Phil Lobdell | 5,074.63 | NOTE |
| Ronell Starr | 5,074.63 | NOTE |
| Thomas William & Julie Ann Diller | 5,074.63 | NOTE |
| Todd Zarembra | 5,074.63 | NOTE |
| William L. Moore | 5,074.63 | NOTE |
| City of Spring Hill | 4,939.00 | AP |
| FPL | 4,922.87 | AP |
| DirectTV | 4,889.61 | AP |
| Susan M. You | 4,858.69 | NOTE |
| Joseph W Yunck, JR | 4,835.13 | NOTE |
| PG&E | 4,781.16 | AP |
| IRA Resources FBO J. Stuart 35-36704 | 4,729.06 | NOTE |
| IRA Resources FBO Steven Stuart 35-3645 | 4,729.06 | NOTE |
| Caleb T Strong | 4,719.87 | NOTE |
| Darrell L & Clair Bond | 4,719.87 | NOTE |
| Julio Ortiz | 4,719.87 | NOTE |
| Paul H. & Olga G. Conner | 4,719.87 | NOTE |
| Young Investments, LLC | 4,719.87 | NOTE |
| Jackie M Dunlap | 4,701.67 | NOTE |
| LT Environment Inc. | 4,682.00 | AP |
| Ernest A Kappas | 4,639.42 | NOTE |
| Jeffrey Denner | 4,632.58 | NOTE |
| Edward L Hicks | 4,581.05 | NOTE |
| Michael Bryan Neafus | 4,581.05 | NOTE |
| IRA Resources, Inc - FBO Thomas W McGr | 4,551.71 | NOTE |
| Alan Manee | 4,479.97 | NOTE |
| Alan R Marsh | 4,479.97 | NOTE |
| Alfred B. Hennessy | 4,479.97 | NOTE |
| Allen C. Novak | 4,479.97 | NOTE |
| Allen Holland | 4,479.97 | NOTE |
| Barbara House | 4,479.97 | NOTE |
| Barry M Walker Trust Agreement | 4,479.97 | NOTE |
| Beresford A Reid | 4,479.97 | NOTE |
| Bernard Hartshorn | 4,479.97 | NOTE |
| Bowman, L.F. LP | 4,479.97 | NOTE |
| Bruce & Jaquelyne Halgren | 4,479.97 | NOTE |
| Bruce Brakel | 4,479.97 | NOTE |
| Carl F. Mayer | 4,479.97 | NOTE |

| | | |
|---|---|---|
| Carol Simone | 4,479.97 | NOTE |
| Carroll B Land | 4,479.97 | NOTE |
| Charles G. Frazier | 4,479.97 | NOTE |
| Chirold D. Epp | 4,479.97 | NOTE |
| Daniel F. Hughes | 4,479.97 | NOTE |
| Daniel J. Flynn | 4,479.97 | NOTE |
| Daniel McDonald | 4,479.97 | NOTE |
| David Chaney | 4,479.97 | NOTE |
| David R. Milligan | 4,479.97 | NOTE |
| Deborah Allen | 4,479.97 | NOTE |
| Donald F. Helfer | 4,479.97 | NOTE |
| Donald Macauley | 4,479.97 | NOTE |
| Equity Trust  FBO John Handwerg 166398 | 4,479.97 | NOTE |
| Equity Trust FBO  Al E. Faigin 173268 | 4,479.97 | NOTE |
| Equity Trust FBO  Billie Roberts | 4,479.97 | NOTE |
| Equity Trust FBO  Kathy Ozol 172634 | 4,479.97 | NOTE |
| Equity Trust FBO  Ronald Mierczewski | 4,479.97 | NOTE |
| Equity Trust FBO  William Oliver 170897 | 4,479.97 | NOTE |
| Equity Trust FBO Allen Holland 173659 | 4,479.97 | NOTE |
| Equity Trust FBO Carol Roberts 157344 | 4,479.97 | NOTE |
| Equity Trust FBO Donald Boulton 170895 | 4,479.97 | NOTE |
| Equity Trust FBO Else A. Spiers 172595 | 4,479.97 | NOTE |
| Equity Trust FBO Harlan Zier 171906 | 4,479.97 | NOTE |
| Equity Trust FBO James Crowell 174084 | 4,479.97 | NOTE |
| Equity Trust FBO Jeffrey Bradley 173991 | 4,479.97 | NOTE |
| Equity Trust FBO Jesse Hauptrief IRA | 4,479.97 | NOTE |
| Equity Trust FBO John Bruening 173580 | 4,479.97 | NOTE |
| Equity Trust FBO John Knight 172770 | 4,479.97 | NOTE |
| Equity Trust FBO Kenneth Bailey 174397 | 4,479.97 | NOTE |
| Equity Trust FBO Martin McGaffey 173513 | 4,479.97 | NOTE |
| Equity Trust FBO Nilda Pettyjohn | 4,479.97 | NOTE |
| Equity Trust FBO Ted W. Jones 043315 | 4,479.97 | NOTE |
| Eric C. Palmer | 4,479.97 | NOTE |
| Frank & Rene Anderson | 4,479.97 | NOTE |
| George M Davis | 4,479.97 | NOTE |
| Gregory F Leptich | 4,479.97 | NOTE |
| Harlan D. Zier | 4,479.97 | NOTE |
| IRA Resources FBO Dennis Bielicki 352174 | 4,479.97 | NOTE |
| IRA Resources FBO James E Warren 33746 | 4,479.97 | NOTE |
| IRA Resources FBO Pamela W. Vance 3521 | 4,479.97 | NOTE |
| IRA Resources FBO Peter S. Redfield | 4,479.97 | NOTE |
| IRA Resources FBO Robert Lee 35-34636 | 4,479.97 | NOTE |
| IRA Resources,  FBO Peggy  Fowlkes 32678 | 4,479.97 | NOTE |
| IRA Resources, FBO Gay M. Phillips 35-34 | 4,479.97 | NOTE |
| IRA Resources, FBO John Nicholson | 4,479.97 | NOTE |
| IRA Resources, FBO John S. Hunt 21223 | 4,479.97 | NOTE |
| IRA Resources, FBO Joyce Murphy 35-357: | 4,479.97 | NOTE |

| | | |
|---|---|---|
| Ira Resources, FBO Larry Davenport 32997 | 4,479.97 | NOTE |
| IRA Resources, FBO Maynard Buck 34433 | 4,479.97 | NOTE |
| IRA Resources, FBO Pamela Schneider 35- | 4,479.97 | NOTE |
| IRA Resources, FBO Richard Vance 352179 | 4,479.97 | NOTE |
| IRA Resources, FBO Steven Schneider 341! | 4,479.97 | NOTE |
| IRA Resources, Inc, Custodian FBO: Ross T | 4,479.97 | NOTE |
| IRA Resources, Robert Murphy 32804 | 4,479.97 | NOTE |
| James M. Sedberry | 4,479.97 | NOTE |
| Jerrell D. Hill | 4,479.97 | NOTE |
| Jerry G. Malloy | 4,479.97 | NOTE |
| John E. Sundquist Living Trust | 4,479.97 | NOTE |
| Joseph P Mercado | 4,479.97 | NOTE |
| Joseph T. Sherry L. Miletti | 4,479.97 | NOTE |
| Kathleen C. Doelle Revocable Living Trus | 4,479.97 | NOTE |
| Katie A. & David Gillies | 4,479.97 | NOTE |
| Lloyd W Burnette | 4,479.97 | NOTE |
| M. Emmett Omar | 4,479.97 | NOTE |
| Mark C Roisen | 4,479.97 | NOTE |
| Mark Mazoch | 4,479.97 | NOTE |
| Melvin A. Buchholz | 4,479.97 | NOTE |
| Michael B Cole | 4,479.97 | NOTE |
| Michael G. Nielson | 4,479.97 | NOTE |
| Michael W. Goossen | 4,479.97 | NOTE |
| Morton Kolbe | 4,479.97 | NOTE |
| Nancy L. & David Gillies | 4,479.97 | NOTE |
| Patrick Brady | 4,479.97 | NOTE |
| Paul & Florence Bernfeld | 4,479.97 | NOTE |
| Paul E. Wommer | 4,479.97 | NOTE |
| Paul M. & Florence Bernfeld | 4,479.97 | NOTE |
| Paul Russell | 4,479.97 | NOTE |
| Ralph & Corrine Trust | 4,479.97 | NOTE |
| Ralph B. & Gladys R. Rogers | 4,479.97 | NOTE |
| Reliant Community Credit Union FBO: Ken | 4,479.97 | NOTE |
| Richard Allen | 4,479.97 | NOTE |
| Roache Family Trust | 4,479.97 | NOTE |
| Robert E. Balgeman | 4,479.97 | NOTE |
| Robert E. Kenyon | 4,479.97 | NOTE |
| Robert Mahle | 4,479.97 | NOTE |
| Roger L. & Maxine J. Levander | 4,479.97 | NOTE |
| Sales Sims Trust | 4,479.97 | NOTE |
| Samuel J. Toscano | 4,479.97 | NOTE |
| Sebastian S Lindop | 4,479.97 | NOTE |
| Shirley & John Vinciguerra | 4,479.97 | NOTE |
| Steling Trust, FBO Tony Wolfe 1730163 | 4,479.97 | NOTE |
| Stephan Gallegos And/Or Robert Tsuchiya | 4,479.97 | NOTE |
| Stephan P & Loretta E. Gallegos | 4,479.97 | NOTE |
| Stephen C. Baumgart | 4,479.97 | NOTE |

| | | |
|---|---|---|
| Sterling Trust FBO David A. Brink 156388 | 4,479.97 | NOTE |
| Sterling Trust FBO Donna  Lorenc 168183 | 4,479.97 | NOTE |
| Sterling Trust FBO Paul Petrilla 166292 | 4,479.97 | NOTE |
| Sterling Trust FBO Robert Lee Harp 46541 | 4,479.97 | NOTE |
| Sterling Trust, FBO Carol Simone 164789 | 4,479.97 | NOTE |
| Sterling Trust, FBO Edward K Gregor 1566 | 4,479.97 | NOTE |
| Sterling Trust, FBO Eugene W. Harden | 4,479.97 | NOTE |
| Sterling Trust, FBO Jeffrey J. Wiseman 1 | 4,479.97 | NOTE |
| Sterling Trust, FBO John R. Gilbo | 4,479.97 | NOTE |
| Sterling Trust, FBO John Schroer 169384 | 4,479.97 | NOTE |
| Sterling Trust, FBO Kristian Ribaya Reye | 4,479.97 | NOTE |
| Sterling Trust, FBO Larry G. Riley #1589 | 4,479.97 | NOTE |
| Tammy Manning | 4,479.97 | NOTE |
| The David R. Simmons Keystone Trust | 4,479.97 | NOTE |
| The Faurote Living Trust | 4,479.97 | NOTE |
| The Jada Family Trust dated 4-22-98 | 4,479.97 | NOTE |
| Thomas A. Chappelle | 4,479.97 | NOTE |
| Thomas J. Quevillon | 4,479.97 | NOTE |
| Thomas McLaughlin | 4,479.97 | NOTE |
| Waylon Simpson | 4,479.97 | NOTE |
| William & Diane Fassbender | 4,479.97 | NOTE |
| William House | 4,479.97 | NOTE |
| William J. Lemcke | 4,479.97 | NOTE |
| Howard Hawker | 4,462.20 | NOTE |
| Lanae Wolchko | 4,462.20 | NOTE |
| Nara Kayne | 4,462.20 | NOTE |
| Raeanne McKee | 4,462.20 | NOTE |
| Robert Hawker | 4,462.20 | NOTE |
| Sophia Dammann | 4,462.20 | NOTE |
| Duke Energy Progress | 4,461.69 | AP |
| Howard Fertilizer & Chemical Company | 4,452.61 | AP |
| Paul Pelesky | 4,402.00 | NOTE |
| Beck Oil, Inc. | 4,375.22 | AP |
| US Foods- Broadmoor | 4,302.30 | AP |
| Appalachian Electric Cooperative | 4,298.34 | AP |
| Brian & Erika Check | 4,293.79 | NOTE |
| Bruce O LeBoss | 4,293.79 | NOTE |
| Charles J Lombardo | 4,293.79 | NOTE |
| Christian Constante | 4,293.79 | NOTE |
| David W & Sunny J Pellone | 4,293.79 | NOTE |
| Equity Trust FBO Gary Luft 181639 | 4,293.79 | NOTE |
| Equity Trust FBO Vimal H. Patel 178723 | 4,293.79 | NOTE |
| Equity Trust, FBO James Sundell 175055 | 4,293.79 | NOTE |
| Fred D Legault | 4,293.79 | NOTE |
| IRA Resources, Inc FBO John Hunt 21223 | 4,293.79 | NOTE |
| J. Michael Roberts | 4,293.79 | NOTE |
| Jerry Camens | 4,293.79 | NOTE |

| | | |
|---|---|---|
| Jimmy & Kathleen Howton | 4,293.79 | NOTE |
| John Pessolano | 4,293.79 | NOTE |
| Justin R Shepherd | 4,293.79 | NOTE |
| Larry D Waugh | 4,293.79 | NOTE |
| Lawrence E & Flossie M Bridge | 4,293.79 | NOTE |
| Mark & Cynthia Boenisch | 4,293.79 | NOTE |
| Michael W Cooper | 4,293.79 | NOTE |
| Peter S Redfield | 4,293.79 | NOTE |
| Richard Bueti | 4,293.79 | NOTE |
| Riley C. Maness | 4,293.79 | NOTE |
| Ronald C Eckert | 4,293.79 | NOTE |
| Sally & Reginald Jardon | 4,293.79 | NOTE |
| Scott & Georgia Brunt | 4,293.79 | NOTE |
| Siewert Family Trust | 4,293.79 | NOTE |
| Thomas & Bonnie McCracken | 4,293.79 | NOTE |
| Vernon & Margaret Bruce | 4,293.79 | NOTE |
| William R Schlueter | 4,293.79 | NOTE |
| Briles Oil and Gas, Inc. | 4,278.19 | AP |
| Daniel Ray | 4,214.22 | NOTE |
| Ryan Walsh | 4,214.22 | NOTE |
| Mt. Diablo Resource Recovery | 4,177.36 | AP |
| Allen R. Schilling | 4,164.59 | NOTE |
| Edmond L. Kelly Trust | 4,164.59 | NOTE |
| James J Algeria | 4,164.59 | NOTE |
| James KJames Kahler & Joan Carol O'Conn | 4,164.59 | NOTE |
| John R. & Frances M. Monaghen | 4,164.59 | NOTE |
| Larry & Colleen Stamper | 4,164.59 | NOTE |
| Mark A. Stets | 4,164.59 | NOTE |
| Michael Faurote | 4,164.59 | NOTE |
| Michelle Dean | 4,164.59 | NOTE |
| Nazer V & Teresita P Lagrimas | 4,164.59 | NOTE |
| Phillip R & Barbara M Given | 4,164.59 | NOTE |
| Raymond K. Mallory | 4,164.59 | NOTE |
| Revocable Living Trust UID 8-28-12 | 4,164.59 | NOTE |
| Robert & Debora L. Nesbitt | 4,164.59 | NOTE |
| Robert & Elizabeth Moore | 4,164.59 | NOTE |
| Salvatore L Sgroi | 4,164.59 | NOTE |
| Terrance D. Farrington | 4,164.59 | NOTE |
| Thomas C. & Bertha C. Hollister | 4,164.59 | NOTE |
| Val Kuffel & Sherry Smith | 4,164.59 | NOTE |
| William & Doni Bird | 4,164.59 | NOTE |
| William & Mary Hughes | 4,164.59 | NOTE |
| William D Appelbaum | 4,164.59 | NOTE |
| ARK Business Investments, LLC | 4,143.65 | NOTE |
| David T. & Sunny J. Pellone | 4,143.65 | NOTE |
| Equity Trust, FBO Barry R Friedman 18260 | 4,143.65 | NOTE |
| Equity Trust, FBO Carl J Breth 182769 | 4,143.65 | NOTE |

| | | |
|---|---|---|
| Equity Trust, FBO Daniel Davis 175877 | 4,143.65 | NOTE |
| Equity Trust, FBO Daryl E Bonsall 175847 | 4,143.65 | NOTE |
| Equity Trust, FBO Donald F Helfer 183312 | 4,143.65 | NOTE |
| Equity Trust, FBO James R.Haefeli 181472 | 4,143.65 | NOTE |
| Equity Trust, FBO Leon V. Engelking17555 | 4,143.65 | NOTE |
| Equity Trust, FBO Ted Holloway 183782 | 4,143.65 | NOTE |
| Equity Trust, FBO Thomas L Draper 18245 | 4,143.65 | NOTE |
| Equity Trust, FBO Yvan Boisvert 183903 | 4,143.65 | NOTE |
| Fabricio & Judith Ledoux | 4,143.65 | NOTE |
| IRA Resources FBO Cynthia Mast 35-3655: | 4,143.65 | NOTE |
| IRA Resources, Inc FBO Max Mast | 4,143.65 | NOTE |
| James A Naill | 4,143.65 | NOTE |
| James M Roberts | 4,143.65 | NOTE |
| Jeffrey & Karolyn Newsom Trust | 4,143.65 | NOTE |
| John Tarvin | 4,143.65 | NOTE |
| Jose M. Rodriguez Adad | 4,143.65 | NOTE |
| Judson & Patsy Grabham | 4,143.65 | NOTE |
| Melissa Thieman | 4,143.65 | NOTE |
| Melvin E. Kauffman | 4,143.65 | NOTE |
| Phillip G. Langston | 4,143.65 | NOTE |
| Robert M. Peck | 4,143.65 | NOTE |
| Ronald J Pattison | 4,143.65 | NOTE |
| Scott J Dodero | 4,143.65 | NOTE |
| Scott J Thieman | 4,143.65 | NOTE |
| Thomas Elkins | 4,143.65 | NOTE |
| Candis Dee Crisafulli Revocable Trust | 4,134.65 | NOTE |
| Carlos E & Georgiann Delgadillo | 4,134.65 | NOTE |
| Colin Wilson | 4,134.65 | NOTE |
| Daryl B Lewis | 4,134.65 | NOTE |
| Edward Dwier | 4,134.65 | NOTE |
| Equity Trust FBO  Bruce A. Thake 164104 | 4,134.65 | NOTE |
| Equity Trust FBO Curtis H Jack | 4,134.65 | NOTE |
| Equity Trust FBO Daryl Bonsall | 4,134.65 | NOTE |
| Equity Trust FBO David M Gillies 172971 | 4,134.65 | NOTE |
| Equity Trust FBO Eddy Buendia 175554 | 4,134.65 | NOTE |
| Equity Trust FBO Frank  Micheletti 170083 | 4,134.65 | NOTE |
| Equity Trust FBO James Gutoskey 175721 | 4,134.65 | NOTE |
| Equity Trust FBO Marin McGaffey 173513 | 4,134.65 | NOTE |
| Equity Trust FBO Stephen Baumgart 1756 | 4,134.65 | NOTE |
| Equity Trust, FBO Gerald Roeder 170203 | 4,134.65 | NOTE |
| Equity Trust, FBO John Prins 176328 | 4,134.65 | NOTE |
| Frank O Harris | 4,134.65 | NOTE |
| Frank Ozol | 4,134.65 | NOTE |
| IRA Resources FBO Everett Melius Jr.3369 | 4,134.65 | NOTE |
| IRA Resources FBO Thomas Slocum 34576 | 4,134.65 | NOTE |
| IRA Resources, FBO Gay Phillips 35-34643 | 4,134.65 | NOTE |
| IRA Resources, Inc. Custodian | 4,134.65 | NOTE |

| | | |
|---|---|---|
| Jo Ann Miller | 4,134.65 | NOTE |
| John M. Brzezicki Jr. | 4,134.65 | NOTE |
| Liberty Trust LTD Custodian | 4,134.65 | NOTE |
| Linda J Cooper | 4,134.65 | NOTE |
| Louis A. & Wanda M. Dominiczak | 4,134.65 | NOTE |
| Mary Ann Jones | 4,134.65 | NOTE |
| Michael W & Judi A Reilly | 4,134.65 | NOTE |
| Reliant Community Credit Union FBO: Ken | 4,134.65 | NOTE |
| Sterling Trust FBO Gerald Connolly 175189 | 4,134.65 | NOTE |
| Sterling Trust FBO Raymond Bilecky 16456 | 4,134.65 | NOTE |
| Sterling Trust, FBO Linda M Stahl 169498 | 4,134.65 | NOTE |
| Terry S Johnson | 4,134.65 | NOTE |
| The Lawhorn Family Trust dated 12-20-11 | 4,134.65 | NOTE |
| VGM Financial Services | 3,962.51 | AP |
| IRA Resources, Inc-FBO Stephan P Gerhard | 3,901.47 | NOTE |
| Robert & Mary Lou Gnade | 3,886.95 | NOTE |
| Robert T. Doran | 3,886.95 | NOTE |
| DeFord's Fuel & Oil, Inc. | 3,880.36 | AP |
| E-Z-GO A Textron Company | 3,806.59 | AP |
| Reyes Coca-Cola Bottling, LLC | 3,755.42 | AP |
| Butner Trust | 3,748.13 | NOTE |
| Christopher J Sullivan | 3,748.13 | NOTE |
| Claudio Vigani | 3,748.13 | NOTE |
| Daniel Coleman | 3,748.13 | NOTE |
| Ella C Biggerstaff | 3,748.13 | NOTE |
| Jeffrey M Bachert | 3,748.13 | NOTE |
| John T. O'Boyle | 3,748.13 | NOTE |
| Randy Hartley | 3,748.13 | NOTE |
| Sandor Vasvari | 3,748.13 | NOTE |
| John Emery | 3,609.31 | NOTE |
| Southern Glazer's Wine & Spirits | 3,534.61 | AP |
| R&R Products, Inc. | 3,483.99 | AP |
| The 2011 Emil & Lisa Magness Living Trust | 3,470.49 | NOTE |
| Adriana Garcia | 3,414.63 | NOTE |
| Charles P. Gilkison | 3,414.63 | NOTE |
| Equity Trust FBO Edgar Hipp 186784 | 3,414.63 | NOTE |
| Equity Trust FBO Steve Harris 187768 | 3,414.63 | NOTE |
| Equity Trust, FBO Marc Shupe 184691 | 3,414.63 | NOTE |
| Equity Trust, FBO Robert Leingang 178001 | 3,414.63 | NOTE |
| Frank Leatherman | 3,414.63 | NOTE |
| John & Nancy Koerner | 3,414.63 | NOTE |
| John W Mckedy | 3,414.63 | NOTE |
| Jorn & Joan Daugbjerg | 3,414.63 | NOTE |
| Preston Moss | 3,414.63 | NOTE |
| Pylyp Yurikov | 3,414.63 | NOTE |
| Richard & Cynthia Krosky | 3,414.63 | NOTE |
| Timothy Paul Broussard | 3,414.63 | NOTE |

| | | |
|---|---|---|
| Aileen M Ferris | 3,358.34 | NOTE |
| Aliis & Greg Odom | 3,358.34 | NOTE |
| Aliis & Kinsley Odom | 3,358.34 | NOTE |
| Aliis & Lyton Odom | 3,358.34 | NOTE |
| Aliis & Weston Odom | 3,358.34 | NOTE |
| Aliis Odom | 3,358.34 | NOTE |
| Allen & Jane Ewoniuk | 3,358.34 | NOTE |
| Arthur Crenshaw | 3,358.34 | NOTE |
| Billy D Parks | 3,358.34 | NOTE |
| Bob Davis | 3,358.34 | NOTE |
| Bonnie Dean | 3,358.34 | NOTE |
| Charles & Margo Roper | 3,358.34 | NOTE |
| Chrispin D Woelfer | 3,358.34 | NOTE |
| Craig Wafer | 3,358.34 | NOTE |
| Daniel Joseph Howard Revocable Living Tr | 3,358.34 | NOTE |
| David J Lorenc | 3,358.34 | NOTE |
| David T & Sunny J Pellone | 3,358.34 | NOTE |
| Equity Trust, FBO George Westby | 3,358.34 | NOTE |
| Equity Trust, FBO Kristian Reyes 170084 | 3,358.34 | NOTE |
| Equity Trust, FBO Michael Pinter 158412 | 3,358.34 | NOTE |
| Equity Trust,FBO Allem Ewoniuk 181075 | 3,358.34 | NOTE |
| George J. Cajoleas Trust | 3,358.34 | NOTE |
| IRA Resources, FBO D. Klompstra 35-3463 | 3,358.34 | NOTE |
| James R. Priest | 3,358.34 | NOTE |
| Jimmy A. Hyslop | 3,358.34 | NOTE |
| John Eaton | 3,358.34 | NOTE |
| Jon Whittemore | 3,358.34 | NOTE |
| Keith L Rose | 3,358.34 | NOTE |
| Kenneth J King Trust | 3,358.34 | NOTE |
| Larry Messer | 3,358.34 | NOTE |
| Miller & Winnell Herrington Family Trust | 3,358.34 | NOTE |
| Paul L & Jacquelyn A Cooke | 3,358.34 | NOTE |
| Richard Mainey Trust | 3,358.34 | NOTE |
| Richard T. Gilmore | 3,358.34 | NOTE |
| Richard Zawadski | 3,358.34 | NOTE |
| Ricky A. & Sandra Falaschetti | 3,358.34 | NOTE |
| Robert DeGroote | 3,358.34 | NOTE |
| Robert L. Eastham | 3,358.34 | NOTE |
| Sarah D. Howard Revocable Living Trust | 3,358.34 | NOTE |
| Steven W. Stroh | 3,358.34 | NOTE |
| The Peterson Family Trust | 3,358.34 | NOTE |
| William & Nancy Kemp | 3,358.34 | NOTE |
| William A. Stannard | 3,358.34 | NOTE |
| Marshall, Roth & Gregory, PC | 3,332.00 | AP |
| Heimark Distributing, LLC | 3,320.52 | AP |
| US Foods- Limestone | 3,262.10 | AP |
| D D Lofton | 3,251.22 | NOTE |

| | | |
|---|---|---|
| Ernest R Nailor | 3,251.22 | NOTE |
| Eugene C. Fadler | 3,251.22 | NOTE |
| Gary Andrews | 3,251.22 | NOTE |
| Gerald Grow | 3,251.22 | NOTE |
| Gerald Phillips | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Charles Heffner | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Dennis Bielicki | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Gale Plato | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Jeffrey Bachert | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO John Hunt | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Keith Faulkner | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Matthew Bigelow | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Maynard Buck | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Myron Sapiro | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Robert Dearborn | 3,251.22 | NOTE |
| IRA Resources, Inc - FBO Ruby E. Weiner | 3,251.22 | NOTE |
| IRA Resources, Inc-FBO Mitsuno Nishikawa | 3,251.22 | NOTE |
| Jeff Bradley | 3,251.22 | NOTE |
| Jerry W. or Darla S. St. John | 3,251.22 | NOTE |
| John Scanniello | 3,251.22 | NOTE |
| Keith Faulkner | 3,251.22 | NOTE |
| Kevin Fitzpatrick | 3,251.22 | NOTE |
| Mark Peippo | 3,251.22 | NOTE |
| Matt Weaver | 3,251.22 | NOTE |
| Matthew Biegelow | 3,251.22 | NOTE |
| Mike Faurote | 3,251.22 | NOTE |
| Robert Crooker | 3,251.22 | NOTE |
| Robert Eastwood | 3,251.22 | NOTE |
| Sterling Trust Co. - FBO Steven Delbuono | 3,251.22 | NOTE |
| Thomas Krall | 3,251.22 | NOTE |
| Tom or Christine Gingrich | 3,251.22 | NOTE |
| Vernon Wendt | 3,251.22 | NOTE |
| Werner Reichenbach | 3,251.22 | NOTE |
| William Corry | 3,251.22 | NOTE |
| Alliant Energy | 3,236.06 | AP |
| Dennis Parrett | 3,227.54 | NOTE |
| Equity Trust, FBO David Wilder | 3,227.54 | NOTE |
| Equity Trust, FBO Edward Gay Sr.Z070801 | 3,227.54 | NOTE |
| Equity Trust, FBO Jacob J. Schoon 186685 | 3,227.54 | NOTE |
| Equity Trust, FBO James W. Taylor 187050 | 3,227.54 | NOTE |
| Equity Trust, FBO Kenneth A Leffel 186458 | 3,227.54 | NOTE |
| Equity Trust, FBO Shane Crawford 186263 | 3,227.54 | NOTE |
| Evan W Williams Jr | 3,227.54 | NOTE |
| Frisbee Family Trust | 3,227.54 | NOTE |
| IRA Resources FBO Douglas Stofan 34146 | 3,227.54 | NOTE |
| IRA Resources, FBO Robert Kandell 32145 | 3,227.54 | NOTE |
| James & Tammy Hall | 3,227.54 | NOTE |

| | | |
|---|---|---|
| Jerry Friedman | 3,227.54 | NOTE |
| Lee H Ikemoto | 3,227.54 | NOTE |
| Leonard E. Leetzow Jr. Trust UAD 12-20-9 | 3,227.54 | NOTE |
| Nelson L Colvin | 3,227.54 | NOTE |
| R & J  Roper Living Trust Dated 5-4-2012 | 3,227.54 | NOTE |
| Rich Glennon | 3,227.54 | NOTE |
| Robert A Rokita | 3,227.54 | NOTE |
| William L. Blakely | 3,227.54 | NOTE |
| William P P Heffernan | 3,227.54 | NOTE |
| City of Pella | 3,089.88 | AP |
| Pumpelly Oil Acquisition, LLC | 3,064.23 | AP |
| Desert Hose & Supply Corporation | 3,064.07 | AP |
| Charles E. Magnuson | 3,054.03 | NOTE |
| James & Patricia Schierer | 3,054.03 | NOTE |
| McDevitt Living Trust | 3,054.03 | NOTE |
| IRA Resources, Inc - FBO William Kuni | 3,038.01 | NOTE |
| Ewing | 3,030.53 | AP |
| Barbara J Scott | 3,001.58 | NOTE |
| William J Akker | 3,001.58 | NOTE |
| William H Kuni | 2,971.47 | NOTE |
| James A Akker | 2,956.78 | NOTE |
| David Vanpelt | 2,915.21 | NOTE |
| Alfred Magrella | 2,837.44 | NOTE |
| Charles Rodemacher | 2,837.44 | NOTE |
| Diane Kolb | 2,837.44 | NOTE |
| IRA Resources - FBO Michael  L Donnelly | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Cynthia Mast | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Debra Macauley | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Gregory Simpson | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO John M Nicholsor | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO John S. Hunt | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Max Mast | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Maynard W Buck | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Michael P Downe | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Patricia Cap | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Paul A Holland | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Richard L Renner | 2,837.44 | NOTE |
| IRA Resources, Inc - FBO Shirley Holland | 2,837.44 | NOTE |
| IRA Resources, Inc -FBO Charles T Keatley | 2,837.44 | NOTE |
| IRA Resources, Inc- FBO Pershing Canfield | 2,837.44 | NOTE |
| James A Rhinebarger | 2,837.44 | NOTE |
| James or Kimberly Goosman | 2,837.44 | NOTE |
| Jeanette Hansen | 2,837.44 | NOTE |
| Jimmy or Charlette Hyslop | 2,837.44 | NOTE |
| John Haraldsen | 2,837.44 | NOTE |
| John Mogel | 2,837.44 | NOTE |
| Joyce M Northey | 2,837.44 | NOTE |

| | | |
|---|---|---|
| Kenneth Roberson | 2,837.44 | NOTE |
| Paul Boling | 2,837.44 | NOTE |
| Phil Langston | 2,837.44 | NOTE |
| Richard or Catherine Follestad | 2,837.44 | NOTE |
| Robert Ornat | 2,837.44 | NOTE |
| Romana Ennenga | 2,837.44 | NOTE |
| Ronald Meschino | 2,837.44 | NOTE |
| Stanley or Charlene Cameron | 2,837.44 | NOTE |
| Sterling Trust, Custodian- FBO Glen Poche | 2,837.44 | NOTE |
| Vernon or Hildegard Wendt | 2,837.44 | NOTE |
| Marion County Utilities | 2,811.34 | AP |
| Randolph EMC | 2,782.92 | AP |
| Abelardo L & Mark R. Estacion | 2,776.39 | NOTE |
| Adella Sanchez | 2,776.39 | NOTE |
| Agora Investment, LLC | 2,776.39 | NOTE |
| Alan & Geri Hill | 2,776.39 | NOTE |
| Ameriprise Trust Co | 2,776.39 | NOTE |
| Andrew E Miller | 2,776.39 | NOTE |
| Anthony DiFranco | 2,776.39 | NOTE |
| Barnes Investments, LP | 2,776.39 | NOTE |
| Barney M Francescon | 2,776.39 | NOTE |
| Bernard & Judith Robinson | 2,776.39 | NOTE |
| carolyn houston | 2,776.39 | NOTE |
| Chad & Ann Marie Harbin | 2,776.39 | NOTE |
| Charles A & Carol E Houston | 2,776.39 | NOTE |
| Charles L. Vise Living Trust | 2,776.39 | NOTE |
| Charles W Heffner | 2,776.39 | NOTE |
| Charlette I. Roman | 2,776.39 | NOTE |
| CMR Properties, LLC | 2,776.39 | NOTE |
| Concette J. West | 2,776.39 | NOTE |
| Cynthia Verasammy | 2,776.39 | NOTE |
| Dale T Abeling | 2,776.39 | NOTE |
| Dan & Debra Traxler | 2,776.39 | NOTE |
| David & Kathleen Frankeny | 2,776.39 | NOTE |
| David A Allen | 2,776.39 | NOTE |
| David C. George | 2,776.39 | NOTE |
| David J & Marjorie M Grotz Trust | 2,776.39 | NOTE |
| David P Warford | 2,776.39 | NOTE |
| David Ponsonby & James Key | 2,776.39 | NOTE |
| David Yazzetti | 2,776.39 | NOTE |
| Deborah McPartland | 2,776.39 | NOTE |
| Devinder R. & Krishna Chopra | 2,776.39 | NOTE |
| Don A Farquhar | 2,776.39 | NOTE |
| Donald E Simpson | 2,776.39 | NOTE |
| Donald M & Darleen J Marchetti | 2,776.39 | NOTE |
| Donald R & Carol L Hawley | 2,776.39 | NOTE |
| Edgar S & Rosario R Pasimio | 2,776.39 | NOTE |

| | | |
|---|---|---|
| Elite Ebony Investment Club | 2,776.39 | NOTE |
| Eric L. Tai | 2,776.39 | NOTE |
| Ernest Rea Nailor Jr. Revocable Living Trus | 2,776.39 | NOTE |
| Eugene R. Pantangco | 2,776.39 | NOTE |
| Evereth C. & Lina M. Henrickson | 2,776.39 | NOTE |
| Family Trust of Duane W. Falk | 2,776.39 | NOTE |
| Frank & Peggy Milo | 2,776.39 | NOTE |
| Frank & Sandra E. Markovich | 2,776.39 | NOTE |
| Frank M CoLabella | 2,776.39 | NOTE |
| Fred & Mary Kohrt | 2,776.39 | NOTE |
| Fred N Andreae Jr | 2,776.39 | NOTE |
| Gary A Fraternale | 2,776.39 | NOTE |
| Geoff Annis | 2,776.39 | NOTE |
| George A. Fortmuller | 2,776.39 | NOTE |
| George L. Gemina & Janet C. Wergenman | 2,776.39 | NOTE |
| Gerald J. Debien | 2,776.39 | NOTE |
| Gerard Inguagiato | 2,776.39 | NOTE |
| Glenn & Helen Schoenthaler Rev Living Tr | 2,776.39 | NOTE |
| Glenn M Poche | 2,776.39 | NOTE |
| Harry G & Gloria C Daub | 2,776.39 | NOTE |
| Howard W. Moody | 2,776.39 | NOTE |
| Interconnect Solutions Group | 2,776.39 | NOTE |
| Ivo Carl Watson | 2,776.39 | NOTE |
| J. D. & Faye L. Cameron | 2,776.39 | NOTE |
| J. Stephen & Marlene Cain | 2,776.39 | NOTE |
| Jack & Ruth C Lubin | 2,776.39 | NOTE |
| James A & Sally Anne Hall | 2,776.39 | NOTE |
| James B & Karen R Sterling | 2,776.39 | NOTE |
| James F & Marvell Brown | 2,776.39 | NOTE |
| James G. Brakke & Glenys E Brakke Lvg Tr | 2,776.39 | NOTE |
| James L & Dorothy G Lowder | 2,776.39 | NOTE |
| James P. Hill | 2,776.39 | NOTE |
| James R. Pegoraro | 2,776.39 | NOTE |
| James Tucker | 2,776.39 | NOTE |
| Jesse L Yarborough | 2,776.39 | NOTE |
| Jill D Corey | 2,776.39 | NOTE |
| Jimmy & Patricia Walker | 2,776.39 | NOTE |
| Jimmy & Susan Stenvers | 2,776.39 | NOTE |
| John & Elizabeth Mill | 2,776.39 | NOTE |
| John F. Kline | 2,776.39 | NOTE |
| John W. Stephens | 2,776.39 | NOTE |
| John Zucker | 2,776.39 | NOTE |
| Joseph & Deborah A. Mansueto | 2,776.39 | NOTE |
| Joseph C Cleary & R Starr Carson | 2,776.39 | NOTE |
| Joseph T Lasecki | 2,776.39 | NOTE |
| KBM International, Inc | 2,776.39 | NOTE |
| Kem & Cheryl Sisson | 2,776.39 | NOTE |

| | | |
|---|---|---|
| Kenneth W. & Kim D. Rice | 2,776.39 | NOTE |
| Keri J Faist-Kellert | 2,776.39 | NOTE |
| L. Wade & Gwen D. Drury Revocable Trust | 2,776.39 | NOTE |
| Larrell & Kennedy Thomas | 2,776.39 | NOTE |
| Larry A. Davenport | 2,776.39 | NOTE |
| Lawrence J. Zgoda | 2,776.39 | NOTE |
| Lawrence Silva | 2,776.39 | NOTE |
| Lee III & Diane  M. Shannon | 2,776.39 | NOTE |
| Lewis Morris | 2,776.39 | NOTE |
| Louis & Shirley M. Byrd | 2,776.39 | NOTE |
| Louis E Letsky | 2,776.39 | NOTE |
| Mark & Angie Streid | 2,776.39 | NOTE |
| Mark F. Peippo | 2,776.39 | NOTE |
| Matthew J. Crisci | 2,776.39 | NOTE |
| Matthew L. Fetter Revocable Trust | 2,776.39 | NOTE |
| Melody Chestnut | 2,776.39 | NOTE |
| Michael A Zellinger | 2,776.39 | NOTE |
| Michael E. & Pamela A. Nauert | 2,776.39 | NOTE |
| Michael J. Beuerlein | 2,776.39 | NOTE |
| Mitsunori Nishikawa | 2,776.39 | NOTE |
| Monticella Woodley | 2,776.39 | NOTE |
| Myra & Bruce Gregory | 2,776.39 | NOTE |
| Norman Shapiro | 2,776.39 | NOTE |
| Paul F. & Charlene Fitzpatrick | 2,776.39 | NOTE |
| Paul Larson | 2,776.39 | NOTE |
| Peggy Fowlkes | 2,776.39 | NOTE |
| Ralph H & Priscilla J Halvorson | 2,776.39 | NOTE |
| Raymond Murphy Family Trust | 2,776.39 | NOTE |
| Reginald L & Sally M Jardon | 2,776.39 | NOTE |
| Richard A. Polhamus | 2,776.39 | NOTE |
| Richard E Dohnke | 2,776.39 | NOTE |
| Richard H Roberts | 2,776.39 | NOTE |
| Richard J. Huyghebart | 2,776.39 | NOTE |
| Robert & Christie Desrosiers | 2,776.39 | NOTE |
| Robert E. & Darlene R. Wassertheur | 2,776.39 | NOTE |
| Robert L. Beck | 2,776.39 | NOTE |
| Robert Rathburn | 2,776.39 | NOTE |
| Robert W. Crooker | 2,776.39 | NOTE |
| Robert W. Mathers & Madeline M. Deisen | 2,776.39 | NOTE |
| Robert Warner | 2,776.39 | NOTE |
| Roberto & Cristina L. Vellanoweth | 2,776.39 | NOTE |
| Roger D. & Judy K. Stefan | 2,776.39 | NOTE |
| Ronald L & Suzanne A Hard | 2,776.39 | NOTE |
| Ronald Sewell | 2,776.39 | NOTE |
| Roy Kischell | 2,776.39 | NOTE |
| Roy Lowery | 2,776.39 | NOTE |
| Sandra M. Murphy | 2,776.39 | NOTE |

| | | |
|---|---|---|
| Sarah J Parker | 2,776.39 | NOTE |
| Scott D. & Trina L. Ent | 2,776.39 | NOTE |
| Scott F Parker | 2,776.39 | NOTE |
| Shannon B Lewis | 2,776.39 | NOTE |
| Sherwin R. & Carol F. Field | 2,776.39 | NOTE |
| Simon & Kristin Middleton | 2,776.39 | NOTE |
| Sinicola Living Trust | 2,776.39 | NOTE |
| Stephen M. Lewis | 2,776.39 | NOTE |
| Steve Moeller | 2,776.39 | NOTE |
| Stewart F. Taubitz Trust - TTEE | 2,776.39 | NOTE |
| T.C. Keith & Doris L. Faulkner | 2,776.39 | NOTE |
| Terry D. & Virginia Nelson | 2,776.39 | NOTE |
| The Chester M Myles Living Trust | 2,776.39 | NOTE |
| The David Adams Living Trust | 2,776.39 | NOTE |
| The Gary D & Judy A Dennett Family Rev T | 2,776.39 | NOTE |
| The Joanne Hannon Trust Agreement | 2,776.39 | NOTE |
| The William T Bertilacchi ILIT 1 Irrev Tr | 2,776.39 | NOTE |
| Thomas & Margaret Bermel | 2,776.39 | NOTE |
| Thomas Fox Living Trust | 2,776.39 | NOTE |
| Thomas J. Kellermann | 2,776.39 | NOTE |
| Thomas L. Boone | 2,776.39 | NOTE |
| Thomas M. & Lupe M. Castro | 2,776.39 | NOTE |
| Thomas R. & Mary J. Hopkins | 2,776.39 | NOTE |
| Timothy C. Livesay | 2,776.39 | NOTE |
| Timothy E. Jenkins & Tina Tang | 2,776.39 | NOTE |
| Tommy & Diana Cota | 2,776.39 | NOTE |
| Valerie Lewis | 2,776.39 | NOTE |
| Wendell Cowart | 2,776.39 | NOTE |
| Wilda N Miller | 2,776.39 | NOTE |
| William A Lonquist | 2,776.39 | NOTE |
| William G. Albertson | 2,776.39 | NOTE |
| Trinity Equipment, Inc. | 2,744.64 | AP |
| TIAA Bank | 2,727.29 | AP |
| Greystone Power Corporation | 2,707.61 | AP |
| US Foods- RSA | 2,702.07 | AP |
| Brampton Tech Ltd. | 2,629.40 | AP |
| Alabama Golf  Association | 2,625.00 | AP |
| Piedmont Coca Cola- Heddles | 2,601.70 | AP |
| John L. Herzog | 2,600.98 | NOTE |
| Ramos Oil Company | 2,559.56 | AP |
| A. M.Carroll Trustee  of 1993 revoc trust | 2,537.31 | NOTE |
| Alan Wills | 2,537.31 | NOTE |
| Charles Francis | 2,537.31 | NOTE |
| Equity Trust FBO Robert Cody 20035597 | 2,537.31 | NOTE |
| Equity Trust FBO Shane Crawford 200175: | 2,537.31 | NOTE |
| Equity Trust, FBO David Wilder 20017510! | 2,537.31 | NOTE |
| Eugene W. Agnew Jr. | 2,537.31 | NOTE |

| | | |
|---|---|---|
| Gary Baker | 2,537.31 | NOTE |
| Harold Rotary | 2,537.31 | NOTE |
| John & Nancy Woo | 2,537.31 | NOTE |
| John & Vicky Deplore | 2,537.31 | NOTE |
| Michael Crieghton | 2,537.31 | NOTE |
| Philip & Linda Lane | 2,537.31 | NOTE |
| Phillip Madden | 2,537.31 | NOTE |
| Randy & Ann Stutes | 2,537.31 | NOTE |
| Ronald Steele | 2,537.31 | NOTE |
| Thomas & Pamela Rinehart | 2,537.31 | NOTE |
| Vinh Nguyen | 2,537.31 | NOTE |
| William Hall | 2,537.31 | NOTE |
| Burrtec Waste & Recycling Svcs | 2,535.23 | AP |
| Stewart & Stevenson | 2,522.38 | AP |
| Stephen C. Ausplund | 2,498.75 | NOTE |
| Susan Van Dyke | 2,498.75 | NOTE |
| Elizabeth Ann Cotner | 2,477.06 | NOTE |
| Linda Susan Kerver | 2,477.06 | NOTE |
| Robert Mills Ashton | 2,477.06 | NOTE |
| William Thomas Ashton | 2,477.06 | NOTE |
| IRA Resourcs, Inc | 2,446.00 | NOTE |
| Jody Cook | 2,439.14 | NOTE |
| Rodney M Cook Jr | 2,439.14 | NOTE |
| Laura H Cook | 2,439.13 | NOTE |
| Youngblood Oil Co., Inc. | 2,434.66 | AP |
| Reyff Electric Inc. | 2,425.00 | AP |
| James R. Tucker Revocable Living Trust | 2,359.93 | NOTE |
| Scott H. Wylie | 2,359.93 | NOTE |
| Asheville Oil Company | 2,295.21 | AP |
| Crown Meat & Provisions | 2,281.78 | AP |
| Shamrock Foods Company- 003 | 2,223.08 | AP |
| TravisMathew LLC | 2,164.58 | AP |
| Blossman | 2,160.53 | AP |
| ATOZPRINTING | 2,114.06 | AP |
| William J. & Joanne M. Byrne | 2,082.30 | NOTE |
| Residex LLC | 2,074.00 | AP |
| Alfred A. Heidler | 2,067.33 | NOTE |
| Beverly M Baetge | 2,067.33 | NOTE |
| Carol Roberts | 2,067.33 | NOTE |
| Charles W Lindop | 2,067.33 | NOTE |
| Earl L Weller | 2,067.33 | NOTE |
| Equity Trust as Custodian | 2,067.33 | NOTE |
| Equity Trust FBO Douglas White 170775 | 2,067.33 | NOTE |
| Equity Trust FBO Edward W. Speirs 17555! | 2,067.33 | NOTE |
| John & Janet Pomann | 2,067.33 | NOTE |
| Michael Monks | 2,067.33 | NOTE |
| Randy L Mawhirter | 2,067.33 | NOTE |

| | | |
|---|---|---|
| Richard B & Virginia V Leoni | 2,067.33 | NOTE |
| Robert C. Rathburn | 2,067.33 | NOTE |
| Sterling Trust, FBO Carol Simone 164789 | 2,067.33 | NOTE |
| Walter L Bloom | 2,067.33 | NOTE |
| Ecolab Pest Elimination Division | 2,037.20 | AP |
| Robert Holmes | 2,015.00 | NOTE |
| Smith Turf & Irrigation | 1,980.67 | AP |
| Charter Communications- Baneberry | 1,967.13 | AP |
| GT Golf Supplies | 1,946.13 | AP |
| Bharat M & Peggy Persad | 1,943.48 | NOTE |
| FBO - Gregory L Simpson | 1,943.48 | NOTE |
| Gay M Walker | 1,874.07 | NOTE |
| Holly M Salzman | 1,874.07 | NOTE |
| IRA Resources, Inc - FBO James Tucker | 1,804.66 | NOTE |
| Joseph J. Dolan | 1,804.66 | NOTE |
| Nelson Fowlkes | 1,804.66 | NOTE |
| North Carolina alcohol bev control comiss | 1,800.00 | AP |
| Two Rivers Cooperative | 1,765.04 | AP |
| West Coast Sand & Gravel Inc. | 1,746.64 | AP |
| VGM Club | 1,716.00 | AP |
| Duke Energy Progress- Heddles | 1,714.22 | AP |
| Jefferson County Trustee | 1,699.00 | AP |
| Hendrik Schoeman | 1,665.84 | NOTE |
| Linda J Saulter | 1,665.84 | NOTE |
| Bumgarner Oil Company, Inc. | 1,644.14 | AP |
| First Choice Coffee Services | 1,641.94 | AP |
| Darrell Bond | 1,625.61 | NOTE |
| IRA Resources, Inc - FBO Clifford P Gray | 1,625.61 | NOTE |
| Paul E. & Joanne Hannon | 1,625.61 | NOTE |
| The GLD Separate Property Trust | 1,625.61 | NOTE |
| Colonial Fuel and Lubricant Services, Inc | 1,608.76 | AP |
| Ace Hardware | 1,586.07 | AP |
| Fedex | 1,582.10 | AP |
| Fusion | 1,569.17 | AP |
| Duke Energy Progress- Ole Still | 1,560.98 | AP |
| Stens The Parts Companuy | 1,557.85 | AP |
| Petrovich Security Systems | 1,554.40 | AP |
| Hussey Oil Co., LLC | 1,550.36 | AP |
| Kenneth W. & Karol D. Denby | 1,527.02 | NOTE |
| Brent McSwain | 1,523.19 | NOTE |
| Gate City Beverage | 1,497.40 | AP |
| Edwin McSwain | 1,478.39 | NOTE |
| Garry McSwain | 1,478.39 | NOTE |
| Braun Linen/Pomona | 1,465.90 | AP |
| King Soopers Customer Charges | 1,449.51 | AP |
| LoopNet | 1,432.26 | AP |
| Vulcan Construction Materials, LLC | 1,424.62 | AP |

| | | |
|---|---|---|
| Frontier | 1,420.33 | AP |
| Carquest Auto Parts | 1,403.82 | AP |
| US Foods- Reems Creek | 1,399.33 | AP |
| Abelardo L Estacion & Dortha Lamb | 1,388.20 | NOTE |
| Andy Seltzer | 1,388.20 | NOTE |
| David Cavner | 1,388.20 | NOTE |
| David G. Leonard | 1,388.20 | NOTE |
| David G. Leonard ASA 401K PSP | 1,388.20 | NOTE |
| Dennis J. Bielicki | 1,388.20 | NOTE |
| Gonzalo Gonzalez | 1,388.20 | NOTE |
| Janae Cook Richards | 1,388.20 | NOTE |
| John W Migdal | 1,388.20 | NOTE |
| Luis & Paula Delgadillo | 1,388.20 | NOTE |
| Mary Muoth | 1,388.20 | NOTE |
| Michael D Hamilton | 1,388.20 | NOTE |
| Nicholas & Cynthia Batson | 1,388.20 | NOTE |
| Paul D. Henry | 1,388.20 | NOTE |
| Rose A Mauri | 1,388.20 | NOTE |
| Spencer S. Sisson | 1,388.20 | NOTE |
| Steven Seltzer | 1,388.20 | NOTE |
| White Sands, Inc | 1,388.20 | NOTE |
| US Foods- Heddles | 1,353.38 | AP |
| Richard Dohnke | 1,334.71 | NOTE |
| Ware Disposal | 1,292.18 | AP |
| Interstate All Battery Center | 1,285.75 | AP |
| Amason's | 1,278.00 | AP |
| TD Auto Finance | 1,267.93 | AP |
| Southern Agricultural Insecticides, Inc. | 1,265.73 | AP |
| Pukka | 1,245.88 | AP |
| Gerard Inguagiato & Judith Rodriguez | 1,226.18 | NOTE |
| US Foods- Baneberry | 1,208.56 | AP |
| Birmingham Bridal Directory | 1,200.00 | AP |
| Windstream Enterprise | 1,178.77 | AP |
| US Foods- King's Creek | 1,147.71 | AP |
| Environmental Rebuild | 1,128.83 | AP |
| St Johns County Utility Department | 1,125.98 | AP |
| R.W. Davis Oil Co., Inc. | 1,111.23 | AP |
| WITT Utiltity District | 1,107.37 | AP |
| Rippey Auto & Industrial Supply | 1,100.18 | AP |
| Charter Communications | 1,092.24 | AP |
| Advanced Auto Parts- BGL | 1,090.51 | AP |
| Five9, Inc. | 1,080.00 | AP |
| Tri-State Pump & Control, Inc. | 1,078.63 | AP |
| FIS Outdoor | 1,066.47 | AP |
| SoCalGas | 1,064.33 | AP |
| Jerry Pate Turf & Irrigation | 1,061.58 | AP |
| Alsco | 1,057.56 | AP |

| | | |
|---|---|---|
| Morrow Insurance Agency, Inc. | 1,025.00 | AP |
| Sanford Distributing Co. Inc. | 1,020.00 | AP |
| Jackson Sand | 1,017.22 | AP |
| Republic Services #693 | 1,014.40 | AP |
| O'Reilly- Ole Still | 1,012.38 | AP |
| Republic Services- Heddles | 1,008.25 | AP |
| Paulette Milton | 999.43 | NOTE |
| Napa auto parts desert | 997.31 | AP |
| Desert Fire Extinguisher Co., Inc. | 983.32 | AP |
| Christopher L & Kelli M. Mahr | 971.74 | NOTE |
| Robert Murphy | 971.74 | NOTE |
| Imperial Professional Dry Cleaners | 971.00 | AP |
| Hammer Plumbing & Pumping, Inc. | 958.00 | AP |
| U. S. Postmaster | 945.00 | AP |
| Napa Auto- RSA | 944.49 | AP |
| Comcast -Lakota | 930.82 | AP |
| Robin Koontz | 925.93 | NOTE |
| ClareM Destoppelaire | 925.46 | NOTE |
| Julie S WIntermeier | 925.46 | NOTE |
| Lowere M Ostrom | 925.46 | NOTE |
| Patricia A Schoen | 925.46 | NOTE |
| Stephanie Schoen | 925.46 | NOTE |
| Susan H Moore-Wester | 925.46 | NOTE |
| Revels Turf & Tractor, LLC | 909.56 | AP |
| Duck River Electric Membership Corp | 893.70 | AP |
| Amerigas | 877.77 | AP |
| Airgas National Carbonation | 875.54 | AP |
| Comcast | 868.32 | AP |
| Mediacom | 868.32 | AP |
| Waste Management | 857.00 | AP |
| MMA Golf | 850.00 | AP |
| Time Warner Cable- Asheboro | 845.36 | AP |
| Alsco- Rio Vista | 842.58 | AP |
| Jefferson Cocke County Utility District | 838.79 | AP |
| Beasley Power Equipment | 834.73 | AP |
| Gregory L Simpson | 832.92 | NOTE |
| DMV | 804.00 | AP |
| Affordable Turf & Specialty Tire | 802.09 | AP |
| Parman Energy Group | 795.64 | AP |
| Eversoft | 794.89 | AP |
| Coca Cola Bottling Co. - Reems | 788.98 | AP |
| Safety-Kleen Systems, Inc. | 786.90 | AP |
| Dickens Turf and Landscape Supply | 785.25 | AP |
| Irvine Ranch Water District | 775.39 | AP |
| Waste Industries | 769.92 | AP |
| Fletcher ABC Board | 745.60 | AP |
| Contractors Rental Co. | 743.44 | AP |

| | | |
|---|---|---|
| O'Reilly | 739.07 | AP |
| Ace Hardware- BGL | 727.59 | AP |
| Bay Alarm Company | 727.09 | AP |
| JRM, Inc. | 726.88 | AP |
| BelKorp AG | 714.92 | AP |
| Champion Brands, Inc. | 705.80 | AP |
| Florida State Golf Association | 704.50 | AP |
| Potestio Brothers Equipment | 696.83 | AP |
| Dynamic Brands | 696.11 | AP |
| Donald & Nancy Lee | 694.10 | NOTE |
| Stephen F Smith | 694.10 | NOTE |
| Cintas Corporation #746 | 690.76 | AP |
| Carolinas Golf Association | 690.00 | AP |
| Rain Bird International, Inc. | 667.88 | AP |
| New VBB, LLC | 663.87 | AP |
| A.M. Buckler & Associates, Inc. | 660.00 | AP |
| Town of New Castle | 659.30 | AP |
| Lowe's | 655.37 | AP |
| Don Morgan | 650.24 | NOTE |
| Charter Communications- Whispering | 646.68 | AP |
| Gear For Sports | 641.55 | AP |
| Iowa Golf Association | 640.00 | AP |
| Strate Welding Supply Co., Inc. | 638.42 | AP |
| Triangle Chemical Company | 635.71 | AP |
| JMS Hoods | 627.85 | AP |
| Alert 360 | 627.50 | AP |
| Kimball Midwest | 616.81 | AP |
| BMW Financial | 608.11 | AP |
| Otelco | 601.82 | AP |
| Fred Thomen | 600.00 | AP |
| Coca Cola Bottling Co. - Limestone | 587.63 | AP |
| Prestige Flag | 566.83 | AP |
| Peter A. Mazzetti | 555.28 | NOTE |
| Thomas L Carroll | 555.28 | NOTE |
| Sam's Club | 548.86 | AP |
| R&D Products, LLC | 534.00 | AP |
| Heritage Propane | 519.70 | AP |
| The Cincinnati Insurance Companies | 497.00 | AP |
| Sno-White Linen/Uniform | 487.30 | AP |
| Mad Ave Quik Shop | 484.44 | AP |
| Woodlands Homeowners Association | 480.00 | AP |
| Pella Area Community & Economic Alliance | 470.00 | AP |
| The St. Augustine Record | 465.00 | AP |
| OC Shredding Co Inc. | 450.00 | AP |
| Asheville Security Systems | 444.00 | AP |
| Royal Cup Coffee | 444.00 | AP |
| Palm Springs Baking Company | 441.68 | AP |

| | | |
|---|---|---|
| Miller Supply Inc. | 431.48 | AP |
| Protection 1/ ADT | 430.23 | AP |
| First Class A/C LLC | 430.00 | AP |
| Jack Calhoun Tire Company | 428.46 | AP |
| Wilbur-Ellis Company LLC | 419.52 | AP |
| Johnson Control Security Solutions | 417.84 | AP |
| Van Wall Equipment | 417.16 | AP |
| Gene J. Grossman | 416.46 | NOTE |
| Napa Auto- Lakota | 413.46 | AP |
| Southern Pump & Control | 402.50 | AP |
| Guardian Pest Solutions, Inc. | 395.90 | AP |
| Asheville Fire Protection Co., Inc. | 394.16 | AP |
| City of Asheville | 389.39 | AP |
| Range Mart | 388.53 | AP |
| General Produce Company | 381.10 | AP |
| SRC Pumping | 375.00 | AP |
| Sun Mountain | 367.39 | AP |
| Weathers Ace Hardware of Oneonta | 358.70 | AP |
| Burkhardt Distributing Co. | 355.55 | AP |
| Napa Auto | 350.68 | AP |
| Colorado Golf Association | 350.00 | AP |
| Epoch Eyewear | 349.04 | AP |
| The L.L. Johnson Distributing Company | 337.01 | AP |
| Farmer Bros. Co. | 336.67 | AP |
| Brennan Golf Sales | 331.95 | AP |
| Coca Cola Bottling Co. - Ole Still | 331.75 | AP |
| Ruby E Weiner | 330.39 | NOTE |
| Cooperative Financial Solutions | 325.71 | AP |
| Partsmaster | 325.52 | AP |
| Charter Communications- Ole | 314.93 | AP |
| Southwest Reps LLC | 313.66 | AP |
| The Southern Democrat, Inc. | 300.00 | AP |
| Best Buy Restaurant Equipment | 295.42 | AP |
| Latasi Group | 291.41 | AP |
| Jefferson Farmers Coop | 290.48 | AP |
| Orkin | 288.00 | AP |
| Gas South | 287.53 | AP |
| Armstrong Growers | 279.29 | AP |
| Napa Auto- BGL | 265.69 | AP |
| Merrill Jerome Edwards | 260.10 | NOTE |
| Burrtec Environmental | 259.51 | AP |
| Triad Golf Today | 250.00 | AP |
| Auto-Chlor | 248.07 | AP |
| D&S Press | 237.88 | AP |
| Us Foods- Asheboro | 236.44 | AP |
| A&B Portable Toilets Inc | 233.79 | AP |
| Ventura Kuehn & Associates, Inc. | 231.88 | AP |

| | | |
|---|---|---|
| Able Rent-A-Jon & Able Waste Services | 228.95 | AP |
| US Foods- Wolf Creek | 227.85 | AP |
| Cross Company | 227.49 | AP |
| Waste Pro-Birmingham | 226.77 | AP |
| Dan's Plumbing, Inc. | 222.11 | AP |
| Alsco- Broadmoor | 208.89 | AP |
| Charter Communications- King's Creek | 202.68 | AP |
| Wildstyle LLC | 200.00 | AP |
| Frank S Alimento | 198.62 | NOTE |
| Chilton Turf Center | 195.49 | AP |
| Caraway Fire Equipment LLC | 195.00 | AP |
| STANA Inc. | 195.00 | AP |
| Coca Cola Bottling Co. - Wolf Creek | 194.84 | AP |
| Par West Turf Services | 194.02 | AP |
| Thrasher Golf Inc | 192.40 | AP |
| Massey Services, Inc. | 191.70 | AP |
| AP Systems, Inc. | 190.80 | AP |
| Keeling Co- Franklin | 189.66 | AP |
| Zimco Supply Co. | 185.11 | AP |
| DMV Renewal | 183.00 | AP |
| Alabama Professional Services, Inc. | 180.00 | AP |
| Golf Association Services ofthe Carolinas | 180.00 | AP |
| Quality Alarm Systems | 180.00 | AP |
| Terminix Company | 174.50 | AP |
| ReStockIt.com | 172.52 | AP |
| Henderson County | 169.36 | AP |
| City of Atlanta | 168.32 | AP |
| Dennis Jacobs | 160.00 | AP |
| Kirkland's Pest Control LLC | 160.00 | AP |
| Jimmy's Equipment & Turf Supplies | 156.57 | AP |
| KC's Lawnmower Shop, LLC | 156.27 | AP |
| Georgia GCSA | 150.00 | AP |
| Septic Solutions, Inc | 150.00 | AP |
| United Security Services, Inc | 150.00 | AP |
| USGA Club Membership | 150.00 | AP |
| Worldwide Alarm Services, Inc. | 150.00 | AP |
| Srixon/ Cleveland Golf/ XXIO | 148.00 | AP |
| Mountain Valley Spring Water | 146.41 | AP |
| Georgia Department of Revenue | 145.23 | AP |
| J.C. Ehrlich | 145.00 | AP |
| SiteOne Landscaping Supply, LLC | 144.96 | AP |
| Budweiser of Asheville | 144.00 | AP |
| Benjamin Kao | 138.82 | NOTE |
| Valley Lock & Safe | 134.60 | AP |
| Murrell Burglar Alarms | 132.00 | AP |
| Greenville Turf & Tractor Inc. | 130.97 | AP |
| MCI Comm Service | 129.83 | AP |

| | | |
|---|---|---|
| Carolina Water Service Inc of NC | 125.53 | AP |
| Gaudette Electric, Inc. | 125.00 | AP |
| Mountain Beverage Company | 123.20 | AP |
| Tom Regan | 120.00 | AP |
| Birmingham Budweiser Distributing | 115.50 | AP |
| Napa Auto- Baneberry | 115.45 | AP |
| State of California | 113.93 | AP |
| CenturyLink | 113.81 | AP |
| Mahaska | 110.03 | AP |
| United Rentals | 106.33 | AP |
| FP Mailing Solutions | 100.05 | AP |
| Cal Works Safety | 100.00 | AP |
| So Cal Gas Co. | 99.01 | AP |
| Modular 1 Golf Systems, Inc. | 91.44 | AP |
| US Foods- Bos Landen | 91.23 | AP |
| ADT Security Services | 90.63 | AP |
| U.S. Boiler & Plumbing Co. | 89.00 | AP |
| URTD Enterprises | 85.60 | AP |
| Stravers True Value | 84.00 | AP |
| Kaman Industrial Technologies | 81.78 | AP |
| Control Systems Incorporated | 75.00 | AP |
| Skyline Pest Control | 70.00 | AP |
| Mountain Waste & Recycling | 64.18 | AP |
| Colorado Pool + Spa Scenes | 59.37 | AP |
| BWI Companies, Inc. | 56.92 | AP |
| Matilde Garcia | 56.00 | AP |
| Pella Cooperative Electric | 55.57 | AP |
| Advanced Auto Parts | 53.65 | AP |
| Alabama Department of Revenue | 50.00 | AP |
| Denise Toland | 50.00 | AP |
| Florida Department of State | 50.00 | AP |
| Nike USA, Inc. | 48.51 | AP |
| Corbin Turf & Ornamental Supply, Inc. | 41.85 | AP |
| Dixie Welding Supply Company, Inc. | 39.96 | AP |
| City of Hickory | 34.73 | AP |
| Dutch Mill Supply, Inc. | 33.17 | AP |
| Torrence's Farm Implements | 32.56 | AP |
| FSGA | 27.50 | AP |
| City of Oneonta | 12.00 | AP |
| Albert Drlicka | - | NOTE |
| Alex Horwitz | - | NOTE |
| Boyce & Martha Bridges | - | NOTE |
| Boyce E. & Martha K. Bridges | - | NOTE |
| Cameron L Detty | - | NOTE |
| Charles B & Janet H Kocornik Living Trust | - | NOTE |
| Charles G. & Phyllis J. Frazier | - | NOTE |
| Charles McGuire & Mike McGuire (POA) | - | NOTE |

| | | |
|---|---|---|
| Charles Schwab & Co., - FBO Fred Vannatt | - | NOTE |
| Daniel & Sarah Howard | - | NOTE |
| Daniel Carroll | - | NOTE |
| David B. Hallock Trust | - | NOTE |
| David Bielawski | - | NOTE |
| David or Diane Kolb | - | NOTE |
| Diego & Marie Furnari | - | NOTE |
| Douglas White | - | NOTE |
| Entrust Admin, Inc FBO Tammy Manning 2 | - | NOTE |
| Equity Trust FBO  Malinda Bates 188065 | - | NOTE |
| Equity Trust FBO  Michael B.Cole 172944 | - | NOTE |
| Equity Trust FBO  Roger Milton 168920 | - | NOTE |
| Equity Trust FBO  Thomas Whitworth | - | NOTE |
| Equity Trust FBO Barbara  House 173187 | - | NOTE |
| Equity Trust FBO Edward Dwier 175802 | - | NOTE |
| Equity Trust FBO Henri J. Aspen 175582 | - | NOTE |
| Equity Trust FBO Lawrence McNair 17204: | - | NOTE |
| Equity Trust FBO William House 174328 | - | NOTE |
| Equity Trust, FBO A. Menard Jr. 20033539 | - | NOTE |
| Equity Trust, FBO Alexander Wattay 1831( | - | NOTE |
| Equity Trust, FBO Alfred Menard 189357 | - | NOTE |
| Equity Trust, FBO Arthur Crenshaw 18191 | - | NOTE |
| Equity Trust, FBO David Smith 184937 | - | NOTE |
| Equity Trust, FBO Donald Wikoff 184884 | - | NOTE |
| Equity Trust, FBO George West 177091 | - | NOTE |
| Equity Trust, FBO Lawrence McNair 17204 | - | NOTE |
| Equity Trust, FBO Michael B Cole 172944 | - | NOTE |
| Equity Trust, FBO Michael Cole 172944 | - | NOTE |
| Equity Trust, FBO Nino Crisafulli | - | NOTE |
| Equity Trust, FBO Randy Divan 186350 | - | NOTE |
| Equity Trust, FBO Robert Beck 183406 | - | NOTE |
| Equity Trust, FBO Robert Steuart | - | NOTE |
| Equity Trust, FBO Robert Steuart 167604 | - | NOTE |
| Equity Trust, FBO Ronald Cook 185231 | - | NOTE |
| FBO William P Leschinsky 157439 | - | NOTE |
| Fred Downs | - | NOTE |
| Fred Vannatta | - | NOTE |
| Fred W. Vannatta | - | NOTE |
| Glenn R. Smith | - | NOTE |
| Gordon & Louise Collins | - | NOTE |
| Harnish Family Trust DTD 8-19-94 | - | NOTE |
| Harry Robert & A June Glass | - | NOTE |
| IRA | - | NOTE |
| IRA Resources  FBO Steve Dietrich 21345 | - | NOTE |
| IRA Resources Inc, Custodian | - | NOTE |
| IRA Resources, FBO Clark E Morton #5137 | - | NOTE |
| IRA Resources, FBO Clark E. Morton 3434: | - | NOTE |

| | | |
|---|---|---|
| IRA Resources, FBO O.J. Stoutner 32363 | - | NOTE |
| IRA Resources, Inc - FBO David Kolb | - | NOTE |
| IRA Resources, Inc - FBO John Roberts | - | NOTE |
| IRA Resources, Inc - FBO Joseph Thomas | - | NOTE |
| IRA Resources, Inc - FBO Lawrence J Ranch | - | NOTE |
| IRA Resources, Inc - FBO Rick D Henry | - | NOTE |
| IRA Resources, Inc - Linda C Dexter | - | NOTE |
| IRA Resources, Inc -FBO James Rhinebarge | - | NOTE |
| IRA Resources, Inc -FBO Steven E Dietrich | - | NOTE |
| IRA Resources, Inc -FBO William L Parrott | - | NOTE |
| IRA Resources, Inc FBO Kenneth E Cross | - | NOTE |
| IRA Resources, Inc-FBO Edwin N Parkhurst | - | NOTE |
| IRA Resources, Inc-FBO Frances J Dietrich | - | NOTE |
| IRA Resources, Inc-FBO Glenn Schoenthale | - | NOTE |
| IRA Resources, Inc-FBO William L Parrott | - | NOTE |
| IRA Resources,Inc. FBO Kenneth H Crew | - | NOTE |
| James F. Scearce Trust, David Michael Upt | - | NOTE |
| Jimmy C & Sonya P. Pettyjohn Fam Trust | - | NOTE |
| John & Cynthia Davis Family Trust | - | NOTE |
| John & Geraldine M. Fuduric | - | NOTE |
| John & Gerry Fuduric | - | NOTE |
| John A Davis | - | NOTE |
| John A. & Geraldine Fuduric | - | NOTE |
| John A. Davis | - | NOTE |
| Juanita A & Victor E. Kaiser | - | NOTE |
| Judith K Cecil Trust | - | NOTE |
| Larry Hamann | - | NOTE |
| Marion & Joan Gaham Joint Rev. Trust | - | NOTE |
| Marlene Van Wingerden | - | NOTE |
| Mearl & Valerie Lewis | - | NOTE |
| Millennium Trust, Inc FBO Mark Roisen Rc | - | NOTE |
| Patricia L. Cap | - | NOTE |
| Pensco Trust Co. FBO: Carol J. Urdahl Acc: | - | NOTE |
| Phyllis Larsen | - | NOTE |
| Ralph Crommett | - | NOTE |
| Ralph L & Richard C Crommett | - | NOTE |
| Riley G Stewart | - | NOTE |
| Robert Black | - | NOTE |
| Robert or Shirley Black | - | NOTE |
| Rosanne N. Downard Trust | - | NOTE |
| Salvador or Patricia Magallanez | - | NOTE |
| Salvador S & Patricia S Magallanez | - | NOTE |
| Samuel E Boswell & William E Gholston | - | NOTE |
| Sterling Trust FBO James M. Heintz | - | NOTE |
| Sterling Trust FBO Robert A Black | - | NOTE |
| Sterling Trust FBO Robert E. Steuart 167 | - | NOTE |
| Sterling Trust, FBO Kent P Schneider | - | NOTE |

| | | |
|---|---|---|
| Sterling Trust, FBO Kent P. Schneider | - | NOTE |
| Sterling Trust, FBO V. Avallone 158310 | - | NOTE |
| Sterling Trust, FBO Vincent Avallone | - | NOTE |
| The Ortiz Family Trust | - | NOTE |
| The Rinehart Family Trust, dated Novemb | - | NOTE |
| Vera Graham | - | NOTE |
| Vincent Avallone | - | NOTE |
| Wilfred M Luoto | - | NOTE |
| William or Phyllis Dowd | - | NOTE |
| US Foods- Lakota | (26.96) | AP |
| Everest National Insurance Company | (115.64) | AP |

## Schedule 4.9

Taxes

None

## Schedule 5.4

Maintenance of Properties; Permits

None, other than any defaults arising by the filing of the Chapter 11 bankruptcy petitions.

## Schedule 6.4

Release Price

| Course / Property Name | Location | Release Price |
|---|---|---|
| Asheboro Country Club | Asheboro, NC | $150,000 |
| Baneberry Golf & Resort | Baneberry, TN | $150,000 |
| Heddles Hideaway | Spartanburg, SC | $250,000 |
| Kings Creek Golf club | Spring Hill, TN | $400,000 |
| Limestone Springs Golf Club | Oneonta, AL | $350,000 |
| Ole Still Golf Club | Hickory, NC | $150,000 |
| Reems Creek Golf Club | Weaverville, NC | $250,000 |
| Royal St. Augustine | St Augustine, FL | $500,000 |
| Whispering Woods | Whispering Pines, NC | $100,000 |
| Wolf Creek Country Club | Atlanta, GA | $350,000 |
| ATV Development | Reche Canyon, CA | $450,000 |
| Cimarron Golf Resort | Cathedral City, CA | $700,000 |
| Broadmoor Golf Links | Fletcher, NC | $300,000 |
| Marion Oaks Golf Club | Ocala, FL | No release price, Debtors can use 100% of net proceeds |
| Huntington Golf Club | Ocala, FL | No release price, Debtors can use 100% of net proceeds |
| Lakota Canyon Ranch Golf Club | New Castle, CO | No release price, Debtors can use 100% of net proceeds |
| The Club at Rio Vista | Vista, CA | No release price, Debtors can use 100% of net proceeds |
| Bos Landen Golf Club | Pella, Iowa | No release price, Debtors can use 100% of net proceeds |
| Warrior Custom Golf, Inc. | | Release price is full amount of outstanding Obligations |

## Schedule 9.4(e)

Collateral Locations

15 Mason, Suite A, Irvine, California 92618

200 acres of land located on Moreno Valley, California

Marion Oaks Golf Club, Ocala, Florida

Huntington Golf Club, Ocala, Florida

Broadmoor Golf Links, Fletcher, North Carolina

Lakota Canyon Ranch Golf Club, New Castle, Colorado

The Club at Rio Vista, Rio Vista, California

Bos Landen Golf Club, Pella, IA

Limestone Springs Golf Club, Oneonta, AL

Reems Creek Golf Club, Weaverville, NC

Heddles Hideaway Golf Club, Spartanburg, SC

Cimarron Golf Resort, Cathedral City, CA

Royal St. Augustine Golf Club, St Augustine FL

Asheboro Country Club, Asheboro, NC

Whispering Woods Golf Club, Whispering Pines, NC

Baneberry Golf and Country Club, Baneberry, TN

Wolf Creek Golf Course, Atlanta, GA

King's Creek Golf Club, Springhill, TN

Ole Still Golf Club, Hickory, NC